## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

VERTRUE INCORPORATED,

            Plaintiff,

v.

ALEXANDER B. MESHKIN,

            Defendant.

M.A. 06-_____

(Pending in the United States District Court for the District of Connecticut—Docket No. 05-CV-1809-PCD)

## PLAINTIFF VERTRUE INCORPORATED'S
## MOTION TO ENFORCE A SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45(e), Vertrue Incorporated f/k/a MemberWorks Incorporated ("Vertrue"), the plaintiff in an action pending before the United States District Court for the District of Connecticut (the "Connecticut Action"), moves this Court to enforce a subpoena served on the Santora CPA Group that was issued by this Court in connection with the Connecticut Action.

In support of its motion, Vertrue submits the accompanying memorandum of law.

**WHEREFORE**, Vertrue Incorporated respectfully requests that the Court:

1. Enter an order finding Santora CPA Group in contempt for failing to respond to the Subpoena served upon it;

2. Enter an order compelling Santora CPA Group to produce all documents responsive to request nos. 1-17 of the Subpoena served upon it within three (3) business days of the date of the order;

3. Award Vertrue its reasonable costs in this action; and

4. Award such other and further relief as this Court deems proper.

DATED: August 15, 2006

**EDWARDS ANGELL PALMER & DODGE LLP**

Denise Seastone Kraft (DE Bar No. 2778)
Joseph B. Cicero (DE Bar No. 4388)
919 North Market Street, Suite 1500
Wilmington, DE  19801
(302) 777-7770
(302) 777-7263 (fax)

*Of Counsel*

Steven M. Cowley, Esq.
Mark B. Dubnoff, Esq.
**Edwards Angell Palmer & Dodge LLP**
111 Huntington Ave.
Boston, MA 02199
(617) 239-0100
(617) 227-4420 (fax)

*Attorneys for Plaintiff Vertrue Incorporated*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERTRUE INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER B. MESHKIN,<br><br>Defendant. | M.A. 06-_____<br><br>(Pending in the United States District Court for the District of Connecticut—Docket No. 05-CV-1809-PCD) |

## PLAINTIFF VERTRUE INCORPORATED'S MEMORANDUM IN SUPPORT OF ITS MOTION TO ENFORCE A SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45(e), Vertrue Incorporated f/k/a MemberWorks Incorporated ("Vertrue"), the plaintiff in an action pending before the United States District Court for the District of Connecticut (the "Connecticut Action"), submits this memorandum of law in support of its motion to enforce a subpoena served on Santora CPA Group ("Santora Group") that was issued in this jurisdiction in connection with the Connecticut Action ("Subpoena" or the "Santora Group Subpoena," a copy of which is attached hereto as Ex. "A").

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Vertrue's Connecticut Action Against Alexander Meshkin

The Connecticut Action is the third of five separate proceedings between related parties arising out of a similar series of transactions and events.[1]  As set forth in the Complaint filed in

---

[1]  A lawsuit filed by Nutzz.com, LLC and its principal, Alexander Meshkin ("Meshkin" or the "Defendant"), in the Delaware Court of Chancery (the "Delaware Lawsuit") was the first action. On August 4, 2005, Nutzz.com initiated an arbitration proceeding pursuant to Section 13 of a July 16, 2004 agreement between MemberWorks Incorporated and Nutzz.com (the "Agreement"), and Vertrue subsequently filed counterclaims and a third party claim against a Nutzz.com Affiliate in that proceeding. The Connecticut Action was initiated on November 1,

the Connecticut Action (a copy of which is attached hereto as Ex. "B"), Vertrue's claims arise out of a series of fraudulent misrepresentations and material failures to disclose by Meshkin, the Chief Executive Officer and principal owner (ultimately) of both Nutzz.com, LLC ("Nutzz.com") and its affiliate Bang Racing, LLC ("Bang Racing") (collectively, the "Companies"), to Vertrue concerning his personal financial status and the assets, marketing capabilities, business prospects, and finances of the Companies. Vertrue also contends that Meshkin's failure to respect the corporate form of Nutzz.com and Bang Racing and his use of those entities as his alter ego justifies piercing the corporate veil and holding him personally liable for the liabilities of both. As a result of Meshkin's misrepresentations and omissions, among other things, Vertrue was induced into entering into the Agreement with Nutzz.com and Bang Racing and to providing Nutzz.com an advance of $1.25 million in anticipation of money it would earn if it performed the advertising and marketing obligations set forth in the Agreement.

Only when Nutzz.com and Bang Racing failed to perform their contractual obligations did Vertrue learn that Meshkin had intentionally misrepresented his personal background and the Companies' ability to perform such obligations when, in fact, they would not be able do so. Only at the end of their relationship did Vertrue learn that Meshkin, Nutzz.com and Bang Racing were in dire financial condition, directly contrary to Meshkin's representations to Vertrue to induce it to enter into and continue performing under the Agreement with Nutzz.com. Had Vertrue known the truth about Meshkin, Nutzz.com and Bang Racing, it never would have entered into the Agreement with Nutzz.com, advanced Nutzz.com $1.25 million, or accepted

---

2005 in the Connecticut Superior Court and removed to the Federal District Court on November 28, 2005 pursuant to 28 U.S.C. § 1441(b). The fourth action is a Bill of Discovery pursuant to *Connecticut Practice Book* § 13-9 (Docket No. FST-CV-05-400688-S) against Mary Ann Meshkin, one of the principals in the Nutzz.com family of companies. The fifth is a petition to appoint a receiver to oversee Nutzz.com and Bang Racing filed in the Delaware Court of Chancery. *Vertrue Incorporated v. Nutzz.com, LLC and Bang Racing, LLC*, C.A. No. 1719-N.

2

Bang Racing as Nutzz.com's guarantor under the Agreement. Moreover, had Meshkin disclosed the true financial condition of his Companies and their inability to carry on operations, Vertrue would not have expended significant additional sums in the good faith, but erroneous, belief that the Agreement would be performed.

On March 17, 2006, Vertrue served Meshkin with his First Requests for Production of Documents in the Connecticut Action ("Plaintiff's First Requests," attached hereto as Ex. "C.") Meshkin did not serve his Responses to Plaintiff's First Requests ("Responses," attached hereto as Ex. "D") upon Vertrue until April 20, 2006 -- one day after the deadline for timely service of such a response. By May 4, 2006, when Meshkin had still produced no documents in response to Plaintiff's First Requests, Vertrue filed an Emergency Motion to Compel Discovery in the Connecticut Action. ("Motion to Compel," attached hereto as Ex. "E.") That Court granted Vertrue's Motion to Compel, ordering Meshkin to produce documents by May 12, 2006. (Ruling on Plaintiff's Emergency Motion to Compel, "May 10, 2006 Order," attached hereto as Ex. "F.") When Meshkin failed to comply with the Connecticut District Court's May 10, 2006 Order, Vertrue filed an Emergency Motion Seeking Sanctions on June 12, 2006. ("Emergency Motion," attached hereto as Ex. "G.") In response, the Court again ordered Meshkin to comply with its May 10, 2006 Order by providing complete production. ("June 12, 2006 Order," attached hereto as Ex. "H.") But Meshkin still failed to fully comply. Therefore, on June 19, 2006, in response to Vertrue's Second Emergency Motion Seeking Sanctions ("Second Emergency Motion," attached hereto as Ex. "I"), the Connecticut District Court again ordered Meshkin to fully comply with the May 10, 2006 Order or he would be deemed in default ("June 19, 2006 Order," attached hereto as Ex. "J"). To this date, Meshkin has still failed to fully

comply with the District of Connecticut's three outstanding orders and has failed to produce all financial documents Vertrue has requested.

## II.     **Vertrue's Subpoena To The Santora Group**

During Meshkin's deposition on June 16, 2006, counsel for Vertrue learned that the Santora Group -- an accounting firm -- had been engaged to prepare tax returns for Nutzz.com and Bang Racing (among other affiliated Meshkin companies, the "Bang Affiliates") covering the tax years 2003 to at least 2005. (Transcript of the Meshkin June 16, 2006 deposition 188:21-191:7, attached in relevant portion as Ex. "K.") Vertrue assumes that some or all of the requested, but still not produced, financial records likely were provided to the Santora Group in order for it to prepare those returns. Accordingly, on June 27, 2006, Vertrue issued a Subpoena to the Santora Group pursuant to Rule 45 of the Federal Rules of Civil Procedure, seeking the financial records that Nutzz.com and the Bang Affiliates supplied and any that the Santora Group created in connection with that work.

Specifically, the Subpoena requests communications between the Santora Group and individuals or entities that have played a part, or have some knowledge of, the financial assets of Meshkin, Nutzz.com, or the Bang Affiliates or the representations Meshkin made to Vertrue to induce Vertrue into signing the Agreement. (Ex. "A", Request Nos. 1-2, Sched. A at 8.) The Subpoena also requests documents that would provide direct information regarding the financial assets of Meshkin, Nutzz.com, or the Bang Affiliates, including documents: (1) concerning the financial records of Meshkin, and Mary Ann Meshkin, Nutzz.com, Bang Racing, the Bang Affiliates; (2) concerning any funds paid by Vertrue in connection with the Agreement; (3) concerning any investments in Nutzz.com, Bang Racing, or any of the Bang Affiliates; (4) identifying any accountant or bookkeeper who has prepared certain financial statements or tax

4

returns for Meshkin, Mary Ann Meshkin, Nutzz.com, or any of the Bang Affiliates; (5) concerning loans or other financing agreements with Southtrust Bank or any other financial institution; (6) concerning the sponsorship of any racing team affiliated with Meshkin, Mary Ann Meshkin, Nutzz.com, or any of the Bang Affiliates; (7) concerning any transfer of assets by Nutzz.com or any Bang Affiliate or any other entity to or on behalf of Meshkin or Mary Ann Meshkin; (8) concerning any transfer of assets by Meshkin or Mary Ann Meshkin; (9) concerning any agreement between the Santora Group and Meshkin, Mary Ann Meshkin, Nutzz.com, or any of the Bang Affiliates; and (10) concerning all amounts owed at any time between January 1, 2000 and the present by Meshkin, Mary Ann Meshkin, Nutzz.com, or any of the Bang Affiliates. (Ex. "A", Request Nos. 3-17, Sched. A at 8-12.)

The Subpoena ordered all of these documents to be produced by July 7, 2006. The Santora Group never responded to the Subpoena and has produced no documents to Vertrue.

### III.    Untimely Response By Meshkin

A copy of the Santora Group Subpoena was served on Meshkin's counsel on June 27, 2006. Only when counsel for Vertrue contacted the Santora Group after the Subpoena's deadline had passed to inquire about its production of documents did Vertrue's counsel learn that counsel for Meshkin had instructed the Santora Group not to produce documents in response to its Subpoena. At the time, the only assumption Vertrue could make was that the reason for this instruction was that an employee of the Santora Group also serves as an expert for Nutzz.com in the arbitration. Therefore, counsel for Vertrue sent a letter to Meshkin's counsel explaining that the documents requested in the Subpoena did not, and were not intended to, include expert disclosure. (*See* Aug. 2, 2006 letter to Felice, attached hereto as Ex. "L".) Rather, as stated in

Vertrue's letter, the Santora Group was served with the Subpoena in its capacity as a fact witness who was in possession of financial records of Meshkin, Nutzz.com, and the Bang Affiliates.

Vertrue's counsel requested that the instruction to the Santora Group be withdrawn and asked to be informed of Meshkin's intentions in response to this letter. Meshkin's counsel indicated in an email that day that it would respond by letter. (*See* Aug. 2, 2006 email from Felice, attached hereto as Ex. "M.") Rather than respond to Vertrue's letter, however, Meshkin's counsel filed a pleading entitled "Objection To The Issuance Of A Subpoena Directed To Santora Group." ("Objection," attached hereto as Ex. "N.") Judge Dorsey, of the District of Connecticut, has a courtroom rule requiring motions to be served, and all responsive pleadings collected, before the entire package is filed with the Court for the first time. Meshkin's counsel filed the Objection as unopposed, presenting a Certificate of Service attesting that he had served a copy of the Objection on Vertrue's counsel on July 7, 2006 -- *i.e.*, the date a response to the Subpoena was due from the Santora Group.

In fact, Meshkin's Objection to the Santora Group Subpoena had never been served on any one of the five Vertrue attorneys identified in that pleading's July 7 Certificate of Service. When that fact was raised with Meshkin's counsel, the Objection as filed on August 2 was withdrawn, but then immediately served again on August 3 (but not filed, as would be contemplated for a pleading to be filed in Judge Dorsey's courtroom).[2] Meshkin's counsel explained the erroneous Certificate of Service by representing that he attempted to serve, but not immediately file, the Objection pursuant to Judge Dorsey's rule on July 7, but, unknown to him, an unidentified staff person failed to carry out that instruction. Meshkin's counsel asked, as an

---

[2] Counsel for the Defendant made no attempt to meet and confer with counsel for Vertrue prior to serving the Objection, as required by both District of Delaware Local Rule 7.1.1 and District of Connecticut Local Rule 37(a)(2).

accommodation, that Vertrue accept the Objection as served on August 2, file any response, and litigate the issues raised in the Objection in the District of Connecticut.

The problem with that request and Meshkin's excuse for the overly late filing of an Objection to a subpoena requiring a response almost a month earlier is that the Objection was not drafted to be filed in the District of Connecticut. Rather, all aspects of the pleading prior to the July 7 certificate of service page were prepared with the intention of the pleading being filed in Delaware -- *e.g.*, the caption is for a miscellaneous docket action in this Court that was not commenced at the time, not the Connecticut caption; the text of the Objection describes the "Connecticut Action" as if it were a different proceeding; and the signature line for counsel is set up for a Delaware filing, not Connecticut.

Vertrue's counsel attempted to inquire to counsel for Meshkin regarding the representations made in the Objection and the ambiguous way in which it was set up for filing, but got no response. Now, Vertrue is in the awkward and difficult position of not knowing in which court, if any, Meshkin's counsel intends to file its Objection to the Subpoena. In fact, the false certificate of service in the original document filed in the District of Connecticut; the ambiguity in the caption, signature lines, and references to the Court; and the fact that Meshkin's counsel has provided no explanation for the questionable aspects of the document leave Vertrue to question Meshkin's intentions regarding the Objection as a whole. Meanwhile, the Subpoena continues to go unanswered while Vertrue waits for the Santora Group to produce documents it should have produced by July 7. For these reasons, and because the Santora Group remains obligated to respond to its Subpoena, Vertrue found it necessary to file this Motion seeking an immediate response from the Santora Group.

## **ARGUMENT**

**I.    The Santora Group Is Obligated To Produce All Documents Responsive To Its Subpoena**

A party served with a subpoena pursuant to Rule 45 is obligated to produce all responsive documents that are within its possession, custody or control. *See* Fed. R. Civ. P. 45; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005); *H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, No. Civ. 3:02-CV-2259, 2003 WL 22305148, *2 (D. Conn. Aug. 10, 2003). The scope of discovery permitted by the Federal Rules is broad: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). *See also* Wright and Miller, Federal Practice and Procedure, § 2008 (noting that the present standard is a very broad one). As noted by the Supreme Court, under Rule 26, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

The crux of Vertrue's fraud, civil theft, conversion, unjust enrichment and CUTPA claims in the Connecticut Action is that Meshkin engaged in a scheme to defraud Vertrue by misrepresenting or concealing, among other things, the following: (1) Meshkin's personal track record as a successful entrepreneur, having already built an Internet-based company called Surfbuzz.com that he sold for millions of dollars to a company called MyPoints.com; (2) the financial situation of Nutzz.com and Bang Racing; (3) the Companies' sponsors and advertising and marketing capabilities; (4) the loss of key members of the Bang Racing racing team that were necessary for the Companies to perform their marketing responsibilities; (5) the true nature

8

of Meshkin's own financial resources and other marketing abilities; and (6) substantial negative developments within the Companies. But for these misrepresentations, Vertrue would not have entered into the Agreement with Nutzz.com and Bang Racing and would not have advanced Nutzz.com $1.25 million.

The documents sought from the Santora Group relate to Vertrue's claims against Meshkin in the Connecticut Action. Specifically, Document Request Nos. 1-2 seek communications between the Santora Group and individuals or entities that have played a part, or have some knowledge of, the financial assets of Meshkin, Nutzz.com, or the Bang Affiliates or the representations Meshkin made to Vertrue to induce Vertrue into signing the Agreement. These requests read as follows:

> **REQUEST NO. 1**    All documents constituting, concerning or referring to any correspondence or communication between you and Nutzz, Meshkin, or any Bang Affiliate, including but not limited to any email you sent to or received from Nutzz, Meshkin, Mary Ann Meshkin, or any Bang Affiliate.

> **REQUEST NO. 2**    All documents constituting, concerning, or referring to any communication or correspondence with, including any email, sent to or received from (i) Mary Ann Meshkin; (ii) any investor, directly or indirectly, in any Bang Affiliate; (iii) Walters; (iv) Joint Marketing Group; (v) Joint Marketing Group Media; (vi) Kvapil; (vii) McReynolds; (viii) Spencer; (ix) Great Barrier Reef; (x) Coffin; (xi) Blacker; (xii) Burnett; (xiii) Ducoin; (xiv) Masik; (xv) Peru; (xvi) Line-X; (xvii) Southtrust Bank; (xviii) Colley; or (xix) Adalio.

Further, Request Nos. 3-17 seek documents relating to the financial status, assets, and liabilities of Meshkin, Mary Ann Meshkin (another principal in the Bang family of companies), Nutzz.com, and the Bang Affiliates. These requests read as follows:

> **REQUEST NO. 3**    All documents constituting, concerning, or referring to the financial records of Nutzz, including, but not limited to, income statements, profit and loss statements, balance sheets, audit reports, payroll records, tax returns, revenue data, expense data, cash flow reports, bank statements, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

**REQUEST NO. 4**    All documents constituting, concerning, or referring to the financial records of each Bang Affiliate, including, but not limited to, income statements, profit and loss statements, balance sheets, audit reports, payroll records, tax returns, revenue data, expense data, cash flow reports, bank statements, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

**REQUEST NO. 5**    All documents constituting, concerning or referring to Meshkin's financial records, including, but not limited to, income statements, profit and loss statements, balance sheets, audit reports, revenue data, income data, expense data, cash flow reports, bank statements, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, net worth, assets, liabilities, income, cash flow, or results from investments from January 1, 2000 to the present.

**REQUEST NO. 6**    All documents constituting, concerning or referring to Mary Ann Meshkin's financial records, including, but not limited to, income statements, profit and loss statements, balance sheets, audit reports, revenue data, income data, expense data, cash flow reports, bank statements, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, net worth, assets, liabilities, income, cash flow, or results from investments from January 1, 2000 to the present.

**REQUEST NO. 7**    All documents constituting, concerning, or referring to any funds paid, advanced or otherwise transferred by Vertrue pursuant to or in connection with the Agreement, including, but not limited to, (a) documents identifying the recipient of such funds, (b) what bank account (including its name, number and location) that money was originally deposited into, (c) documents identifying or referring to all subsequent transfers of that money, (d) all other bank accounts (including their name, number and location) into which any portion of those funds were transferred, and (e) the identity of all persons and entities who received, held, holds, used for any purpose, or had possession of any portion of those funds.

**REQUEST NO. 8**    All documents constituting, concerning, or referring to any monetary or non-monetary investments in Nutzz or any of the Bang Affiliates, including, but not limited to, all documents identifying each person or entity who invested in, or otherwise obtained any legal, equitable, membership, partnership or other interest in Nutzz or any Bang Affiliate and all documents showing the value of each such transaction, the nature of the interest obtained, the value of the interest, and all correspondence, communications and agreements concerning each such transaction.

**REQUEST NO. 9**    All documents that identify any accountant or bookkeeper who has, in whole or in part, prepared any personal financial statement for Meshkin or Mary Ann Meshkin, any personal tax return for Meshkin or Mary Ann Meshkin, or any financial statement or tax return for Nutzz or any Bang Affiliate.

**REQUEST NO. 10**    All documents constituting, concerning, or referring to any loan, financing, or other credit application or agreement between (i) Meshkin; (ii) Mary Ann Meshkin; (iii) Nutzz; or any (iv) Bang Affiliate and Southtrust Bank or any other bank, lender, or other financial institution, including, but not limited to, any memo, email, or other correspondence or communication concerning or referring to such application or agreement.

**REQUEST NO. 11**    All documents constituting, concerning, or referring to any correspondence or communication, including any email, between you and any person or entity concerning or referring to any loan, financing or other credit application or agreement submitted to Southtrust Bank or any other bank, lender, or other financial institution by Meshkin, Mary Ann Meshkin, Nutzz, or any Bang Affiliate.

**REQUEST NO. 12**    All documents constituting, concerning, or referring to any applications; statements; admissions; income statements; profit and loss statements; balance sheets; revenue data; expense data; cash flow reports; results from operations; tax returns; budgets; forecasts; business plans; any documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations; or any other documents submitted in connection with any loan, financing or other credit application or agreement by, or on behalf of, Meshkin, Mary Ann Meshkin, Nutzz, or any Bang Affiliate.

**REQUEST NO. 13**    All documents constituting, concerning, or referring to the sponsorship, or possibility of sponsorship, of any racing team owned, controlled by, or affiliated with Meshkin, Mary Ann Meshkin, Nutzz, or any Bang Affiliate, including, but not limited to, sponsorship by Line-X, Toyota, or Valvoline.

**REQUEST NO. 14**    All documents constituting, concerning, or referring to any monetary or non-monetary transfer of assets or payments by Nutzz, any Bang Affiliate, or any other person or entity, directly or indirectly to, on behalf of, or at the request of, Meshkin or Mary Ann Meshkin, including, but not limited to, all documents identifying each person or entity who made or caused any such transfer to be made and all documents showing the value of each such transaction, the date of each such transaction, the nature of the interest obtained or transferred, the value of the interest, and all correspondence, communications and agreements concerning each such transaction.

**REQUEST NO. 15**    All documents constituting, concerning, or referring to any monetary or non-monetary transfer of assets or payments by Meshkin or Mary Ann Meshkin including, but not limited to, all documents identifying each person or entity who made or caused any such transfer to be made and all documents showing the value of each such transaction, the date of each such transaction, the nature of the interest obtained or transferred, the value of the interest, and all correspondence, communications and agreements concerning each such transaction.

**REQUEST NO. 16**    All documents constituting, concerning or referring to any agreement between you and Meshkin, Mary Ann Meshkin, Nutzz or any Bang Affiliate including, but not limited to, all correspondence and communications, including email, concerning or referring to the termination of any such agreement.

**REQUEST NO. 17**    All documents identifying, calculating, concerning or referring to all amounts owed any time between January 1, 2000 and the present to any person or entity by Meshkin, Mary Ann Meshkin, Nutzz or any Bang Affiliate, including, but not limited to, all documents referring to or identifying each person or entity to whom money was or is owed.

Before Vertrue and Nutzz.com entered into their Agreement, Meshkin, on his own behalf and on behalf of Nutzz.com and Bang Racing, made representations to Vertrue during the negotiations that he was a wealthy and successful entrepreneur, that Nutzz.com and Bang Racing were financially stable, and that Nutzz.com and Bang Racing would have sufficient resources to perform all of their various obligations under the terms of the parties' Agreement. For example, Nutzz.com agreed to perform substantial development on its website to create a members-only area and to build the necessary functions to allow its members to participate in online auctions -- work that would take a significant number of employees with advanced technical skills. Nutzz.com also agreed to develop and implement four separate and distinct distribution channels -- online, retail, trackside, and television -- for its goods and services, another task that would require skilled marketing personnel and a significant investment of time, money, and resources. Developing and implementing the trackside channel in particular would be especially intensive as it would require Nutzz.com to have a significant marketing presence -- including a racing

team -- at NASCAR races throughout the racing season. Moreover, Nutzz.com agreed to do all of this while also operating its own NASCAR racing team, an undertaking that Meshkin should have known from experience would require its own full compliment of employees and financial and other resources. Implicit in Nutzz.com's agreement to undertake all of these substantial responsibilities was a representation that Meshkin, Nutzz.com, and Bang Racing, had access to the financial, intellectual, and human resources necessary to do so successfully.

Request Nos. 1-17 of the Santora Group Subpoena seek discovery aimed at demonstrating that Meshkin, Nutzz.com, and Bang Racing did not have the financial wherewithal that Meshkin claimed. The requested documents will also provide insight into what exactly Meshkin did with Vertrue's money and any other money his Companies received during the course of the Agreement. If, for example, Nutzz.com did not have the appropriate resources or diverted its resources and intentionally refused to commit them to the tasks it undertook under the Agreement -- which will be demonstrated in the requested financials -- such evidence will provide strong support to an argument that Meshkin, Nutzz.com, and Bang Racing never intended to perform as Meshkin promised to Vertrue when inducing Vertrue to pay his Companies $1.25 million. The financial documents requested would also support Vertrue's claim that Meshkin concealed the financial ruin of his Companies, further supporting the fact that Nutzz.com and Bang Racing never would have been able to perform as obligated under the Agreement, in January of 2005.

As well as providing information relating to the financial status of Meshkin and his Companies, the personal financial records of Meshkin and Mary Ann Meshkin would provide support for Vertrue's claims that Meshkin held himself out as the alter ego of his Companies. Meshkin routinely made extraordinary transfers of funds from one company to another,

including a company called One Angel Enterprises that was owned by his mother and was opened at his direction. Tracking the routes of these funds is essential to demonstrating that Meshkin co-mingled his personal funds with those of his Companies in an intentional effort to defraud Vertrue.

Importantly, the District of Connecticut has repeatedly found that the financial records of the Meshkins, Nutzz.com, and Bang Affiliates are relevant. In Meshkin's Responses to Plaintiff's First Request, Meshkin objected to, among other things, Vertrue's Request Nos. 17, 18, 32, 54, and 55 (Ex. "D" at 8, 12, 17), which mirror Request Nos. 4, 5, 8, 9, and 10, respectively, in the Santora Group Subpoena (Ex. "A", Sched. A at 9-10), and which request documents relating to the financial status, assets, and liabilities of Meshkin, Nutzz.com, and the Bang Affiliates. Over Meshkin's objections, however, and in response to Plaintiff's Emergency Motion to Compel Discovery, the District of Connecticut ordered Meshkin to produce the documents in response to those requests, among others. (*See* May 12, 2006 Order, Ex. "F.") The court found the documents requested were "relevant to, or could lead to evidence relevant to, claims at issue in this litigation." (Ex. "F" at 10.)

In addition, on July 31, 2006, the District of Connecticut denied Mary Ann and Shahram Meshkin's Motion for a Protective Order regarding the production of and inquiry into Meshkin's financial information, including Meshkin's and Mary Ann Meshkin's personal bank accounts. (*See* Ruling on Mary Ann and Shahram Meshkin's Motion for Protective Order, "July 31, 2006 Order," attached hereto as Ex. "O.") The court found that the bank records for which the Defendant had moved for a protective order "would help [Vertrue] establish fraudulent intent." (Ex. "O" at 6.) The same documents were requested in request nos. 5 and 6 of the Santora Group Subpoena. (Ex. "A", Sched. A at 9.) Further, on August 9, 2006, the District of Connecticut

14

denied Meshkin's Motion for a Protective Order concerning the disclosure of information related to his personal assets and net worth. (Ruling on Defendant's Motion for a Protective Order, "August 9, 2006 Order" attached hereto as Ex. "P.") The court found that "Defendant's personal financial information is relevant to Plaintiff's claims of fraud, misrepresentation, conversion, and alter-ego liability." (Ex. P at 5.)

The documents requested in the Santora Group Subpoena are relevant to Vertrue's claims against Meshkin in the Connecticut Action, and the Santora Group is obligated by the Federal Rules of Civil Procedure to produce them. As such, this Court should order the Santora Group to respond to its Subpoena and produce documents responsive to Request Nos. 1-17 immediately, or within three business days.

## II.    The Santora Group Has Not Timely Filed An Objection

The Santora Group, as the producing party, has not objected to its Subpoena. Nevertheless, Meshkin's counsel has instructed the Santora Group not to produce documents in response to its Subpoena. The Federal Rules do not provide for such an action. The Rules merely provide that a requesting party may not be permitted to document production if an objection is made by the person commanded to produce documents, except pursuant to a court order. Fed. R. Civ. P. 45(c)(2). A party filing a motion to quash a subpoena of a third party, however, cannot prevent the production of documents unless and until the court grants the motion. *See* Fed. R. Civ. P. 45(c)(3). Over thirty days have now passed since the deadline for Santora's response to its Subpoena, and even if the Santora Group were to file an objection now, it would not be timely. Therefore, the Defendant has no grounds to prevent the Santora Group from responding to its Subpoena.

The Santora Group is under a legal and affirmative obligation to produce those documents pursuant to the Subpoena and has raised no objection, legitimate or otherwise, to the production of those documents within its possession, custody, or control. This Court should, therefore, order the Santora Group to respond to its Subpoena and produce documents in response to Request Nos. 1-17 immediately, or within three business days.

### III.    Defendant Has Not Timely Filed A Motion To Quash

Assuming the Defendant's Objection could be characterized as a motion to quash, as such a motion is called by the Federal Rules, the Defendant has not even filed a timely motion to quash the Subpoena. The Santora Group was required to produce documents by July 7, 2006. Counsel for the Defendant was served with the Subpoena on June 27, 2006, and had 10 days to file a motion to quash before the response date, but for some reason chose not to do so. Instead, the Defendant waited until nearly a month after the response was due to serve its "Objection" on Vertrue. As such, Defendant's motion, regardless of how it was characterized, was not timely. *See* Fed. R. Civ. P. 45(c)(3)(A). Although Meshkin may intend to argue that his counsel attempted to serve, but not file, the Objection on July 7, for the reasons described above, the pleading itself suggests that is not the case.

Meanwhile, the Defendant has instructed the Santora Group to violate the Subpoena served upon it in the mere anticipation that his motion to quash will be both filed and ordered by a court. In addition, Vertrue is unjustifiably being put to unnecessary expense and has been forced to wait over a month to receive documents that should have been produced on July 7. Therefore, this Court should order the Santora Group to respond to its Subpoena as requested.

## CONCLUSION

For the reasons stated above, Vertrue requests that the Santora Group be ordered to respond to the Subpoena served upon it and produce all documents in response to Request Nos. 1-17 of the Subpoena immediately, or within three business days of the date of the order. Vertrue further requests that this Court issue an order finding the Santora Group in contempt for failing to obey the Subpoena.

DATED: August 15, 2006                     **EDWARDS ANGELL PALMER & DODGE LLP**

Denise Seastone Kraft (DE Bar No. 2778)
Joseph B. Cicero (DE Bar No. 4388)
919 North Market Street, Suite 1500
Wilmington, DE 19801
(302) 777-7770
(302) 777-7263 (fax)

*Of Counsel*

Steven M. Cowley, Esq.
Mark B. Dubnoff, Esq.
**Edwards Angell Palmer & Dodge LLP**
111 Huntington Ave.
Boston, MA 02199
(617) 239-0100
(617) 227-4420 (fax)

*Attorneys for Plaintiff Vertrue Incorporated*

Exhibit A

AO 88 (Delaware Rev. 7/00) Subpoena in a Civil Case

**Issued by the**
**UNITED STATES DISTRICT COURT**

**DISTRICT OF DELAWARE**

VERTRUE INCORPORATED,

v.

ALEXANDER B. MESHKIN,

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: <u>05-CV-1809-PCD</u>
<u>(Litigation Pending in the</u>
<u>District of Connecticut)</u>

TO:    Santora CPA Group
Christiana Executive Campus
220 Continental Drive, Suite 112
Newark, DE 19713-4309

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case. The deposition shall be recorded by sound-and-visual and/or stenographic means and will take place before an officer authorized by law to administer oaths.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

■  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):   **SEE ATTACHED SCHEDULE A**

| PLACE | DATE AND TIME |
|---|---|
| Edwards Angell Palmer & Dodge LLP | July 7, 2006 |
| 919 N. Market Street, 15th Floor | At 4:00 p.m. (EST) |
| Wilmington, DE 19801 | |
| Phone:  (302) 777-7770 | |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _~~~~~~~~~_ , Attorney for Vertrue Incorporated | June 27, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joseph B. Cicero, Esquire
Edwards Angell Palmer & Dodge LLP
919 N. Market Street, 15th Floor
Wilmington, DE 19801
(302) 425-7115

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | 6/28/06 | 220 CONTINENTAL DR. NEWARK, DE |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| SANTORA CPA GROUP | ACCEPTED BY   KATHIE SKINNER |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| DENORRIS BRITT | PROCESS SERVER |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on        6/28/06
                         DATE

SIGNATURE OF SERVER
**BRANDYWINE PROCESS SERVERS, LTD.**
**P.O. BOX 1360**
**WILMINGTON, DE 19899-1360**
**302-475-2600**

Rule 45, Federal Rules of Civil Procedure, Parts C & D-

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need notappearin person atthe place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materialsorof the premises. If objection is made, the partyserving the subpoenashall not be entitled to inspectand copymaterials; or inspectthe premises except pursuantto an order of the court by which the subpoena was issued. If objection has been made, the partyserving the subpoena may, upon notice to the person commanded to produce, move at any time for an orderto compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court bywhich asubpoenawas issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer ofa partyto travel to a place more than 1 00 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matterand no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 1 00 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows asubstantial need forthe testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged orsubjectto protection astrial preparation materials, the claim shall be made expresslyand shall be supported bya description of the natureof the documents, communications, orthings not produced that is sufficienttoenable the demanding party to contest the claim.

# Schedule A

**Attachment A**

I.    <u>**INSTRUCTIONS**</u>

1.    All information is to be divulged that is in your possession, custody or control or that of your attorneys (current or former), investigators, agents or other representatives. In answering, you must furnish all information and documents available.

2.    If you cannot respond to a document request in full and you have exercised thorough diligence in an attempt to secure the document(s) requested, then you must so state. You must also explain to the fullest extent possible the specific facts concerning your inability to respond to the document request and supply whatever information or knowledge you have concerning any document request to which you fail to respond.

3.    If you contend that any document (as defined herein) requested is privileged, in whole or in part, or if you object to producing any document requested based on a claim that the document is not subject to discovery, in whole or in part, provide a privilege log that (i) describes the document, including the type and general subject matter of the document; (ii) identifies the author(s) and recipient(s) and anyone else who had access to the document; (iii) identifies the date(s) the document was created and modified in any way; and (iv) describes in detail the privilege asserted and the basis(es) for the claim of privilege.

4.    Where an individual document request calls for a document or set of documents that would be voluminous or which would involve more than one part, the documents should be produced in an organized manner so that each document is separately identifiable.

5.    These document requests are intended as continuing document requests. If you, your agents, attorneys, or other representatives acquire or become aware of other documents

- 1 -

responsive to any of these document requests following the service of your original responses thereto, you are required to supplement your responses accordingly.

6.    Each request that seeks information relating in any way to communications to, from, or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents, or servants of the business or corporate entity.

7.    Your knowledge and information, and documents in your possession, shall include knowledge, information, or documents in the possession of your agents, representatives, and, unless a claim of privilege is asserted pursuant to paragraph 3, attorneys.

8.    As used herein, all singular terms, unless specified otherwise, shall include the plural, and all plural terms shall include the singular.

## II.    DEFINITIONS

9.    As used herein, the terms "you," "your" and "yourself" refers to Santora CPA Group, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

10.    As used herein, the terms "and" and "or" shall be construed either disjunctively or conjunctively, in order to bring within the scope of these interrogatories any information which might otherwise be considered to be beyond their scope.

11.    As used herein, the term "communication(s)" shall mean every method and manner of oral and written communication including, but not limited to, correspondence, telephone conversations, in-person conversations and electronic mail communications.

- 2 -

12. As used herein, the term "document" shall mean all physical or electronic things of any kind communicating thoughts, impressions, or ideas in whatever form, including the originals and all non-identical copies and drafts, whether different from the originals by reason of any notation made on such copies or otherwise, and including, but not limited to, correspondence, memoranda, notes, diaries, calendars, statistics, letters, telegrams, minutes, financial records, accounts, ledgers, agreements, records of receipts and expenditures; budgets, appraisals, projections, contracts, reports, studies, checks, wire transfers, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversations or telephone calls or meetings or other communications, bulletins, policies, printed matter, computer printouts, teletypes, telefaxes, invoices, electronic files and all drafts, alterations, modifications, changes, and amendments of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, records, motion pictures) and electronic, mechanical or electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings).

13. As used herein, the term "all documents" shall mean every document (as defined above) which is known to you, within your possession, custody or control or that of your attorneys (former or current), investigators, agents or other representatives, or can be located or discovered by reasonably diligent efforts.

14. As used herein, the terms "concerning," "constituting," "reflecting," and "referring to" shall mean showing, describing, regarding, evidencing, relating to, arising from, connected with, commenting on, responding to, analyzing, relating to, with respect to, or in connection with.

- 3 -

15. As used herein, the term "person" shall mean any natural person, corporation, partnership, joint venture, limited liability company, proprietorship, association, franchise, organization, trust and any other form of entity or group of persons.

16. "Identify" as used herein with respect to a "document" shall be read to require a statement of all of the following information relative to such document: (a) title; (b) nature and subject matter; (c) date; (d) author; (e) addressee; (f) file number or other identifying mark or code; (g) identification of custodian; and (h) location of original.

17. "Identify" as used herein with respect to any "individual" shall be read to require a statement of all of the following information pertaining to such individual: (a) full legal name; (b) present or last known home address; (c) present or last known home telephone number; (d) present or last known employer; (e) present or last known business address; (f) present or last known business telephone number; (g) present or last known title; and (h) present or last known job description.

18. "Identify" as used herein with respect to the any "entity other than an individual" shall be read to require a statement of all of the following information relating to such entity: (a) full current legal name; (b) principal place of business or other activity; (c) place of incorporation or formation (if applicable); (d) date of formation; (e) names of any predecessor or successor corporations or other business entities, together with all doing business as names and trade names; (f) nature or type of entity; and (g) principal business or other activity.

19. "Identify" as used herein with respect to any "communications" shall be read to require you to state all of the following information relating to such communications: (a) the method of communication; (b) the date on which it occurred; (c) the place at which it occurred or, in the case of a telephone communication, the location of each party; (d) the identity of each

- 4 -

and every person who was present or who participated; (e) the substance of the statements by each person; and (f) the identity of all notes, memoranda or other documents memorializing, referring to or relating to the subject matter of the statement.

20. The term "including" as used herein means including but not limited to.

21. The term "Nutzz" as used herein refers to Nutzz.com, LLC, its officers, directors, members, agents, employees, attorneys, representatives, parents, subsidiaries and affiliates, including, but not limited to, Bang Holdings, LLC and Bang Racing, LLC.

22. The term "Bang Affiliates" as used herein refers to any of the following, whether individually or in combination with any other of the following: Bang Holdings, LLC; Bang, LLC; Bang! LLC; Bang Racing, LLC; Bang! Racing LLC; Key Age Ventures, LLC; MCS Racing Ventures, LLC; Bang Technology LLC; Bang! Technology LLC; Artsmen, LLC; Bang Properties, LLC; Bang Racing-NCTS, LLC; Bang Racing-NNCS, LLC; Bang Promotions, LLC; Bang Seed Investment Group; and GP&C, and any of their officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

23. The term "Vertrue" as used herein refers to Vertrue Incorporated f/k/a MemberWorks Incorporated, its officers, directors, employees, agents, attorneys, representatives, parents, subsidiaries and affiliates.

24. The term "Meshkin" as used herein refers to Defendant Alexander Meshkin, Key Age Ventures, LLC, his agents, representatives, partners, current or former attorneys, accountants, consultants, and their respective predecessors, successors, or assigns.

25. The term "Adalio" as used herein refers to John Adalio, his agents, attorneys, and representatives.

26. The term "Mary Ann Meshkin" as used herein refers to Mary Ann Meshkin, One Angel Enterprises, her agents, attorneys and representatives or One Angel Enterprises' officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

27. The term "Blacker" as used herein refers to George Blacker, his agents, attorneys and representatives.

28. The term "Burnett" as used herein refers to Michael Burnett, his agents, attorneys and representatives.

29. The term "Ducoin" as used herein refers to Edward Ducoin, his agents, attorneys and representatives.

30. The term "Masik" as used herein refers to John Masik, his agents, attorneys and representatives.

31. The term "Peru" as used herein refers to Carl Peru, his agents, attorneys and representatives.

32. The term "Coffin" as used herein refers to James L. Coffin, his agents, attorneys and representatives.

33. The term "Colley" as used herein refers to Melissa Colley, her agents, attorneys and representatives.

34. The term "Tousi" as used herein refers to Cameron Tousi, his agents, attorneys and representatives.

35. The term "Walters" as used herein refers to John Walters, his agents, attorneys and representatives.

- 6 -

36. The term "Joint Marketing Group" as used herein refers to Joint Marketing Group, LLC, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

37. The term "Joint Marketing Group Media" as used herein refers to Joint Marketing Group Media, LLC, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

38. The term "Key Age Ventures" refers to Key Age Ventures, LLC, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

39. The term "MCS Racing Ventures" refers to MCS Racing Ventures, LLC, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

40. The term "McReynolds" as used herein refers to Larry McReynolds, his agents, attorneys and representatives.

41. The term "Great Barrier Reef" as used herein refers to Great Barrier Reef, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

42. The term "Line-X" as used herein refers to Line-X Franchise Development Corp., its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

43. The term "Spencer" as used herein refers to Jimmy Spencer; Spencer Motorsports Ventures, Inc.; and their officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

- 7 -

44. The term "Southtrust Bank" as used herein refers to Southtrust Bank, now known as Wachovia, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

45. The term "Agreement" as used herein refers to the July 16, 2004 agreement between MemberWorks Incorporated and Nutzz.

46. The term "Kvapil" as used herein refers to Travis Kvapil, Travis Kvapil Racing, LLC, and their officers, directors, members, agents, employees, representatives, parents, subsidiaries, affiliates and representatives.

## III.    DOCUMENTS TO BE PRODUCED

**REQUEST NO. 1.**    All documents constituting, concerning or referring to any correspondence or communication between you and Nutzz, Meshkin, or any Bang Affiliate, including but not limited to any email you sent to or received from Nutzz, Meshkin, Mary Ann Meshkin, or any Bang Affiliate.

**REQUEST NO. 2.**    All documents constituting, concerning, or referring to any communication or correspondence with, including any email, sent to or received from (i) Mary Ann Meshkin; (ii) any investor, directly or indirectly, in any Bang Affiliate; (iii) Walters; (iv) Joint Marketing Group; (v) Joint Marketing Group Media; (vi) Kvapil; (vii) McReynolds; (viii) Spencer; (ix) Great Barrier Reef; (x) Coffin; (xi) Blacker; (xii) Burnett; (xiii) Ducoin; (xiv) Masik; (xv) Peru; (xvi) Line-X; (xvii) Southtrust Bank; (xviii) Colley; or (xix) Adalio.

**REQUEST NO. 3.**    All documents constituting, concerning, or referring to the financial records of Nutzz, including, but not limited to, income statements, profit and loss statements, balance sheets, audit reports, payroll records, tax returns, revenue data, expense data, cash flow reports, bank statements, results from operations, budgets, forecasts, business plans, or

any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

**REQUEST NO. 4.**   All documents constituting, concerning, or referring to the financial records of each Bang Affiliate, including, but not limited to, income statements, profit and loss statements, balance sheets, audit reports, payroll records, tax returns, revenue data, expense data, cash flow reports, bank statements, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

**REQUEST NO. 5.**   All documents constituting, concerning or referring to Meshkin's financial records, including, but not limited to, income statements, profit and loss statements, balance sheets, audit reports, revenue data, income data, expense data, cash flow reports, bank statements, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, net worth, assets, liabilities, income, cash flow, or results from investments from January 1, 2000 to the present.

**REQUEST NO. 6.**   All documents constituting, concerning or referring to Mary Ann Meshkin's financial records, including, but not limited to, income statements, profit and loss statements, balance sheets, audit reports, revenue data, income data, expense data, cash flow reports, bank statements, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, net worth, assets, liabilities, income, cash flow, or results from investments from January 1, 2000 to the present.

**REQUEST NO. 7.**   All documents constituting, concerning, or referring to any funds paid, advanced or otherwise transferred by Vertrue pursuant to or in connection with the Agreement, including, but not limited to, (a) documents identifying the recipient of such funds,

- 9 -

(b) what bank account (including its name, number and location) that money was originally deposited into, (c) documents identifying or referring to all subsequent transfers of that money, (d) all other bank accounts (including their name, number and location) into which any portion of those funds were transferred, and (e) the identity of all persons and entities who received, held, holds, used for any purpose, or had possession of any portion of those funds.

**REQUEST NO. 8.**    All documents constituting, concerning, or referring to any monetary or non-monetary investments in Nutzz or any of the Bang Affiliates, including, but not limited to, all documents identifying each person or entity who invested in, or otherwise obtained any legal, equitable, membership, partnership or other interest in Nutzz or any Bang Affiliate and all documents showing the value of each such transaction, the nature of the interest obtained, the value of the interest, and all correspondence, communications and agreements concerning each such transaction.

**REQUEST NO. 9.**    All documents that identify any accountant or bookkeeper who has, in whole or in part, prepared any personal financial statement for Meshkin or Mary Ann Meshkin, any personal tax return for Meshkin or Mary Ann Meshkin, or any financial statement or tax return for Nutzz or any Bang Affiliate.

**REQUEST NO. 10.**    All documents constituting, concerning, or referring to any loan, financing, or other credit application or agreement between (i) Meshkin; (ii) Mary Ann Meshkin; (iii) Nutzz; or any (iv) Bang Affiliate and Southtrust Bank or any other bank, lender, or other financial institution, including, but not limited to, any memo, email, or other correspondence or communication concerning or referring to such application or agreement.

**REQUEST NO. 11.**    All documents constituting, concerning, or referring to any correspondence or communication, including any email, between you and any person or entity

concerning or referring to any loan, financing or other credit application or agreement submitted to Southtrust Bank or any other bank, lender, or other financial institution by Meshkin, Mary Ann Meshkin, Nutzz, or any Bang Affiliate.

REQUEST NO. 12.   All documents constituting, concerning, or referring to any applications; statements; admissions; income statements; profit and loss statements; balance sheets; revenue data; expense data; cash flow reports; results from operations; tax returns; budgets; forecasts; business plans; any documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations; or any other documents submitted in connection with any loan, financing or other credit application or agreement by, or on behalf of, Meshkin, Mary Ann Meshkin, Nutzz, or any Bang Affiliate.

REQUEST NO. 13.   All documents constituting, concerning, or referring to the sponsorship, or possibility of sponsorship, of any racing team owned, controlled by, or affiliated with Meshkin, Mary Ann Meshkin, Nutzz, or any Bang Affiliate, including, but not limited to, sponsorship by Line-X, Toyota, or Valvoline.

REQUEST NO. 14.   All documents constituting, concerning, or referring to any monetary or non-monetary transfer of assets or payments by Nutzz, any Bang Affiliate, or any other person or entity, directly or indirectly to, on behalf of, or at the request of, Meshkin or Mary Ann Meshkin, including, but not limited to, all documents identifying each person or entity who made or caused any such transfer to be made and all documents showing the value of each such transaction, the date of each such transaction, the nature of the interest obtained or transferred, the value of the interest, and all correspondence, communications and agreements concerning each such transaction.

- 11 -

**REQUEST NO. 15.** All documents constituting, concerning, or referring to any monetary or non-monetary transfer of assets or payments by Meshkin or Mary Ann Meshkin including, but not limited to, all documents identifying each person or entity who made or caused any such transfer to be made and all documents showing the value of each such transaction, the date of each such transaction, the nature of the interest obtained or transferred, the value of the interest, and all correspondence, communications and agreements concerning each such transaction.

**REQUEST NO. 16.** All documents constituting, concerning or referring to any agreement between you and Meshkin, Mary Ann Meshkin, Nutzz or any Bang Affiliate including, but not limited to, all correspondence and communications, including email, concerning or referring to the termination of any such agreement.

**REQUEST NO. 17.** All documents identifying, calculating, concerning or referring to all amounts owed any time between January 1, 2000 and the present to any person or entity by Meshkin, Mary Ann Meshkin, Nutzz or any Bang Affiliate, including, but not limited to, all documents referring to or identifying each person or entity to whom money was or is owed.

Exhibit B

RETURN DATE: NOVEMBER 1, 2005

| | |
|---|---|
| VERTRUE INCORPORATED, | SUPERIOR COURT |
|         Plaintiff, | |
| | J.D. OF STAMFORD/NORWALK |
|   -against- | AT STAMFORD |
| ALEXANDER B. MESHKIN, | |
|         Defendant. | OCTOBER 13, 2005 |

## COMPLAINT

Plaintiff Vertrue Incorporated ("Vertrue"), as and for its complaint herein, alleges as follows:

## NATURE OF THE COMPLAINT

1.    This action arises out of fraudulent misrepresentations to Vertrue by two companies owned, controlled and operated by Defendant Alexander Meshkin ("Meshkin"). Upon information and belief, Meshkin is the Chief Executive Officer, principal owner, principal shareholder and director of both Nutzz.com, LLC ("Nutzz.com") and its parent company, Bang Racing, LLC ("Bang Racing"). Acting as the alter ego of Nutzz.com and Bang Racing, Meshkin engaged in a scheme to defraud Vertrue by misrepresenting and concealing Nutzz.com's and Bang Racing's marketing capabilities (or lack thereof) and Meshkin's, Nutzz.com's and Bang Racing's dire financial status in order to induce Vertrue to enter into an agreement with Nutzz.com and provide it with an advance of $1.25 million to fund its advertising and promotional obligations under that agreement. Bang Racing acted as Nutzz.com's guarantor under the agreement. Only when Nutzz.com and Bang Racing failed to perform their contractual

obligations did Vertrue learn that Meshkin had intentionally misrepresented his personal background and his two companies' ability to perform such obligations when, in fact, neither company would be able do so. Further, Vertrue learned that Meshkin, Nutzz.com and Bang Racing were in dire financial condition, directly contrary to Meshkin's representations to Vertrue to induce it to enter into the agreement with Nutzz.com. Had Vertrue known the truth about Meshkin, Nutzz.com and Bang Racing, it never would have entered into the agreement with Nutzz.com, advanced Nutzz.com $1.25 million, or accepted Bang Racing as Nutzz.com's guarantor. Moreover, had Meshkin disclosed the true financial condition of his companies and their inability to carry on operations, Vertrue would not have expended significant additional sums in the good faith, but erroneous, belief that the Agreement would be performed.

## PARTIES

2.     Plaintiff Vertrue is the successor in interest to MemberWorks Incorporated ("MemberWorks") for all purposes herein, and is a publicly traded corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 680 Washington Boulevard, Stamford, Connecticut. MemberWorks markets and sells consumer membership discount programs in such areas as healthcare, shopping, travel, entertainment and personal security (the "Programs").

3.     Upon information and belief, Defendant Alexander Meshkin ("Meshkin") is the Chief Executive Officer, principal owner, principal shareholder and director of Nutzz.com, a Delaware limited liability company with its last-known principal place of business at 160 Gasoline Alley, Mooresville, North Carolina. Upon information and belief, Nutzz.com is controlled entirely by Meshkin and serves as Meshkin's alter ego. Upon information and belief,

-2-

BOS_505004_2/

Meshkin personally controlled, directed and performed virtually all of Nutzz.com's and Bang Racing's business with Vertrue. Upon information and belief, Meshkin resides at 8545 Townley Road, Apartment 2H, Huntersville, North Carolina. Meshkin transacted business with Vertrue in Connecticut. Moreover, as alleged below, Meshkin also committed tortious acts within the Connecticut and/or committed tortious acts outside of Connecticut that caused injury to Vertrue within Connecticut. Finally, by reason of the acts and/or omissions set forth below, Meshkin expected or should reasonably have expected said acts and/or omissions to have consequences in Connecticut.

## JURISDICTION

4.      This Court has jurisdiction over this matter pursuant to Conn. Gen. Stat. §52-59b.

5.      Venue is proper pursuant to Conn. Gen. Stat. §51-345.

## FACTUAL HISTORY

### The MemberWorks and Nutzz.com Agreement

6.      On or about May 20, 2004, Alex Meshkin met with representatives of Vertrue, including Douglas Weiss, in Stamford, Connecticut. At that meeting, Meshkin represented that he was a successful entrepreneur, having already built an Internet-based company called Surfbuzz that he sold for millions of dollars to a company called MyPoints.

7.      Meshkin further represented that he was owner of a NASCAR® race team that was a $15 million business and raced two trucks in various NASCAR® events. Meshkin claimed his racing team had significant sponsors, including Toyota, Line-X and Valvoline. Meshkin also represented that Nutzz.com had access to one billion eBay impressions (advertising slots) that

BOS_505004_2/

could be devoted to marketing and promoting a membership program that he proposed Vertrue should run.

8.    Meshkin also represented that his organization had significant marketing and Internet development capabilities and support, in facilities in the United States and overseas.

9.    Based on Meshkin's representations, on or about July 16, 2004, MemberWorks and Nutzz.com entered into an Agreement (the "Agreement") to work together to develop a "customized and branded Elite Membership Fan Club", which came to be known as "Nutzz Elite." After the Agreement was executed, MemberWorks changed its name to Vertrue Incorporated in October 2004. A copy of the Agreement is attached hereto as Exhibit A and incorporated herein by reference.

10.    Consistent with Meshkin's representations, the Agreement provided that Nutzz.com was "an online Internet marketplace" with a variety of promotional techniques. The Agreement contemplated that together Nutzz.com and Vertrue, would support and promote a fee-generating membership program that allowed members to obtain benefits provided by both.

11.    In the Agreement, Nutzz.com, through Meshkin, promised to perform certain obligations concerning the development, promotion and servicing of the Nutzz Elite program. For example, within 90 days after entering the Agreement — by October 14, 2004 — Meshkin agreed that Nutzz.com would:

(1)    produce a website promoting the Nutzz Elite Club (the "Club");

(2)    have a full marketing plan in place for trackside marketing and commence marketing the Club through trackside channels;

(3)    have a Nutzz.com auction launched and operational on eBay for users to be able to redeem Nutzz.com "currency"; and

- 4 -

BOS_505004_2/

(4)    commence on-line advertising for the Nutzz Elite program, consisting of delivering a total of one billion eBay impressions advertising the Nutzz Elite program by the end of 2004, composed of 900,000,000 banner advertisements and 100,000,000 email advertisements.

12.    Bang Racing, a Meshkin-controlled affiliate of Nutzz.com, guaranteed performance of Nutzz.com's contractual obligations. Upon information and belief, Bang Racing is controlled entirely by Meshkin and serves as Meshkin's alter ego. Upon information and belief, Meshkin personally controlled, directed and performed virtually all of Bang Racing's business with Vertrue.

13.    The Agreement provided that the parties would share the revenues generated by sales of memberships in the Nutzz Elite program. Exhibit E to the Agreement sets forth the details of a revenue sharing relationship for first year and subsequent year membership fees from customers who joined Nutzz Elite.

14.    As an initial investment in the program, Vertrue agreed to, and did, give Nutzz.com an advance of $1.25 million (the "Advance"), which amount was to be paid back by Nutzz.com from the amounts it was to earn under the Agreement. Essentially, Vertrue paid Nutzz.com $1.25 million in advance to fund the advertising and promotional activities Nutzz.com was obligated to perform, including, but not limited to, placing one billion eBay impressions to promote Nutzz Elite and undertaking marketing by year's end through Bang Racing, a NASCAR® race team that Meshkin held out as an affiliate entity of Nutzz.com.

15.    Under the Agreement, Vertrue was to keep the entire amount to be earned in first year membership fees from the first 20,000 customers. For membership sales after the first 20,000, Vertrue was to keep 70% of the first year membership fees and Nutzz.com was to

BOS_505004_2/

receive the remaining 30%. The agreed-upon split for renewal (second or later) year membership fees was to be 60% for Vertrue and 40% for Nutzz.com.

### Nutzz.com Fails To Perform Under the Agreement

16.    Nutzz.com and Bang Racing failed in numerous ways to perform their contractual obligations under the Agreement with respect to the Nutzz Elite program, including, at a minimum:

(a)    Nutzz.com's and Bang Racing's software engineers had trouble designing a properly functioning Nutzz Elite link from the general Nutzz.com membership landing page. The problems were ongoing and were not resolved prior to the termination of the Agreement by Vertrue. The problems prevented Nutzz.com general members from becoming paying Nutzz Elite members, which would have allowed the pay down of the $1.25 million advanced to Nutzz.com by Vertrue and additional revenues to be split between Nutzz.com and Vertrue;

(b)    The one billion eBay impressions required to be run in 2004 under the Agreement were to be pre-approved by Vertrue and were to relate to the Nutzz Elite program specifically, not just the standard, free Nutzz.com program. However, impressions that ran during 2004 were not the Vertrue pre-approved banners; instead they were related to the Nutzz.com standard, free program only rather than the Nutzz Elite program; and despite several requests to demonstrate that the proper amount of one billion impressions were running by the end of 2004, Nutzz.com and Bang Racing never provided such information;

(c)    The only redemption channel for a member's earned online "currency" was through a Nutzz.com online auction. However, Nutzz.com and Bang Racing were not able to get that online auction up and running until well beyond the October 14, 2004 deadline, as was required under the Agreement. Even then, Nutzz.com and Bang Racing did not complete the work necessary to tie the Nutzz.com "points" system for its online auction to the members' activity in the Nutzz Elite benefits provided by Vertrue;

(d)    Nutzz.com and Bang Racing failed to produce the 100 million email solicitations for the Nutzz Elite program within the time required under the Agreement;

(e)    Nutzz.com and Bang Racing failed to produce a trackside marketing plan ("Trackside Marketing Plan") for the promotion of the Nutzz Elite program, as required in the Agreement;

BOS_505004_2/

(f)    Nutzz.com and Bang Racing failed to deliver NASCAR®-related benefits for the Nutzz Elite program, including online motorsports content which the Nutzz Elite program was relying on to be aligned with the agreed upon NASCAR® positioning;

(g)    Nutzz.com and Bang Racing failed to create and maintain distribution channels, including, but not limited to, relationships with other websites, retail channels, trackside channels and television channels, as required under the Agreement;

(h)    Nutzz.com and Bang Racing misrepresented material information concerning Nutzz.com's and Bang Racing's marketing services, sponsorship of a car racing team for a trackside marketing program and relationships with eBay and Yahoo for marketing impressions; and

(i)    Nutzz.com and Bang Racing apparently ceased all operations, abandoning all performance of their obligations.

17.    Vertrue repeatedly demanded that Nutzz.com and Bang Racing comply with their contractual deadlines and obligations and for Meshkin, their principal, to send the Trackside Marketing Plan that Vertrue was entitled to under the Agreement. However, Nutzz.com and Bang Racing did not comply with their contractual obligations by their respective deadlines despite Vertrue's demands that they do so, and Meshkin never forwarded Vertrue the Trackside Marketing Plan. Ultimately, Meshkin refused to even show up for a meeting with Vertrue representatives to discuss those defaults and, for all intents and purposes, disappeared, leaving Vertrue with no means to contact him.

**Nutzz.com Shuts Down Its Business Operations**

18.    Bang Racing is an affiliate of Nutzz.com; both are run by Meshkin. Bang Racing was the entity Meshkin used to market sponsorship opportunities in motorsports -- specifically, NASCAR®. A significant portion of the Nutzz Elite advertising was to be carried out by and through the Bang Racing NASCAR® team, as evidenced by its guaranty of the Nutzz.com obligations detailed in the Agreement relating to the Nutzz Elite program website, advertising on

- 7 -

BOS_505004_2/

eBay, development of the Trackside Marketing Plan, marketing the Nutzz Elite program through trackside channels and launching the on-line auction promotions.

19.    Meshkin and Bang Racing continue to operate a website (the "Bang Racing Website") displaying sponsors, including, Line-X Racing ("Line-X"). However, contrary to Meshkin's representations to Vertrue and to the general public, Nutzz.com and Bang Racing experienced significant business and financial problems during the latter part of 2004 and beginning of 2005, fired or lost their employees and ceased their business operations. In addition, although Line-X still is listed as a Bang Racing sponsor on the Bang Racing Website, Meshkin has admitted that Line-X did not renew its 2005 sponsorship of Bang Racing.

20.    Similarly, although Meshkin and Bang Racing maintain a web site holding out Travis Kvapil as the driver for its race team, on information and belief, Travis Kvapil quit, or was fired from, the race team in or about January 2005, and has even commenced litigation against a Bang Racing affiliate also controlled by Meshkin arising out of the breakdown of that relationship.

21.    Meshkin, Bang Racing and Nutzz.com operated out of property located at 160 Gasoline Alley, Mooresville, North Carolina, 28117 (the "Property"). On information and belief, the Property is owned by Jimmy Spencer ("Spencer") and Spencer Motorsports Ventures, Inc. ("SMV"). Meshkin, Bang Racing and Nutzz.com rented the Property on a month-by-month basis. Upon information and belief, Meshkin, Bang Racing and Nutzz.com failed to pay several months rent and were ultimately evicted by Spencer in January 2005. As a result, on January 25, 2005, Meshkin, on behalf of Bang Racing, signed a Settlement Agreement and release stating that he would quit the premises that same day. Within the Settlement Agreement, Meshkin also

- 8 -

BOS_595004_2/

transferred Bang Racing's entire stock of racing vehicles, fuel cells and equipment to SMV. For all practical purposes, when Meshkin signed the Settlement Agreement with Spencer and SMV on January 25, 2005, he gave up all of Bang Racing's known assets and operations and the company ceased operations. Nutzz.com also ceased operations, at least at that address, and it left no forwarding address or other way to contact it.

22.     As a consequence of Meshkin's financial ruin, after stringing Vertrue along for months by withholding information about the true state of its operations, Meshkin finally informed Vertrue that Nutzz.com and Bang Racing could no longer meet their obligations under the Agreement at the end of January 2005. Through a series of email correspondence between Meshkin and Vertrue on or about January 31, 2005, in which Vertrue, through its employee Carl Peru ("Peru"), inquired about the status of Nutzz.com and repayment of the $1.25 million Advance, Meshkin expressed a desire to transfer ownership of Nutzz.com to Vertrue. Vertrue rejected that proposal.

23.     Pursuant to the Agreement, Vertrue advanced $1.25 million to Nutzz.com in anticipation of fees Nutzz.com would earn by providing marketing and other services required of it in the Agreement. For the reasons discussed above, however, Nutzz.com and Bang Racing breached the Agreement by failing to provide the required services. As a result, Nutzz.com and its guarantor Bang Racing (and Meshkin as the alter ego of those two companies, as described more fully below), are obligated to repay Vertrue the approximately $1.25 million Advance.

24.     On February 1, 2005, Vertrue attempted, unsuccessfully, to obtain repayment of the $1.25 million due. Attached as Exhibit B is a February 1, 2005 email from Peru to Meshkin demanding payment of the $1.25 million to Vertrue. Despite repeated demands for the

- 9 -

BOS_505004_2/

approximately $1.25 million, however, to date Meshkin, Nutzz.com and Bang Racing have all failed to repay that money to Vertrue.

**Nutzz.com's and Bang Racing's Fraud**

25.    As a result of information obtained primarily through discovery in litigation commenced by Meshkin and Nutzz.com in Delaware Chancery Court (the "Delaware Action") and a related investigation, it has become obvious to Vertrue that Meshkin had lied and concealed his companies' marketing inabilities and dire financial status to induce Vertrue to enter into the Agreement and, once in the Agreement, to continue investing in a program that Nutzz.com and Bang Racing had no ability to support.

26.    Meshkin's many lies to Vertrue included, but were not limited to, the following:

(a)    On or about May 20, 2004, Meshkin represented to Vertrue's Doug Weiss that he was a successful entrepreneur who built an Internet-based company called Surfbuzz.com and sold it to another Internet-based company called MyPoints for millions of dollars. During his deposition in the Delaware Action, however, Meshkin denied selling Surfbuzz.com to MyPoints and, inexplicably, refused to identify the name of the company that he claims acquired Surfbuzz.com. Accordingly, on information and belief, Meshkin did not have the personal wealth he claimed and was not in a position to financially support the obligations Nutzz.com and Bang Racing undertook in the Agreement;

(b)    During the May 20, 2004 meeting, Meshkin represented that Bang Racing and/or Nutzz.com had an agreement with Larry McReynolds, a well-known figure in NASCAR® and a Fox Television announcer that would provide credibility for Nutzz Elite within the NASCAR® circuit and significant, high-profile promotional opportunities. Meshkin failed to disclose to Vertrue that Mr. McReynolds had a falling out with Meshkin later that summer, and he ceased any affiliation with Bang Racing and/or Nutzz.com;

(c)    During the May 20, 2004 meeting, Meshkin represented that Nutzz.com had a significant Network Operations Center in Herndon, Virginia, as well as two off-shore software development centers capable of providing significant Internet development and marketing services. On information and belief, Nutzz.com, in fact, had few, if any, employees other than Meshkin;

- 10 -

(d)    Meshkin withheld the loss of Bang Racing's driver, Travis Kvapil in or about January 2005 (in fact, Meshkin and Bang Racing continue to falsely hold out Kvapil as the driver on the race team's website);

(e)    Meshkin withheld the fact that he had lost the Line-X sponsorship of Bang Racing for the 2005 racing season (in fact, Meshkin and Bang Racing continue to falsely hold out Line-X as a sponsor on the race team's website);

(f)    Meshkin withheld the fact that Bang Racing was essentially dissolved and that Nutzz.com and Bang Racing were essentially evicted from their offices in January 2005; and

(g)    Meshkin withheld the fact that he transferred all of Bang Racing's assets, including the entire stock of Bang Racing's vehicles, fuel cells and equipment, as part of a January 25, 2005 Settlement Agreement with Spencer and SMV, leaving Nutzz.com and Bang Racing without the assets through which they were to perform their trackside marketing obligations for the Nutzz Elite program.

27.    In short, Meshkin fraudulently induced Vertrue to enter the Agreement, based on intentional misrepresentations concerning Nutzz.com and Bang Racing, and then continued that fraud and induced Vertrue to spend significant additional amounts to continue performing under the Agreement by withholding material information concerning their true financial condition and marketing capabilities.

28.    Had Vertrue known the truth about Meshkin, Nutzz.com and Bang Racing, it never would have entered into the Agreement with Nutzz.com, paid Nutzz.com the $1.25 million Advance, accepted Bang Racing as Nutzz.com's guarantor under the Agreement, or invested significant additional funds in an attempt to develop and market the Nutzz Elite program, given that Nutzz.com and Bang Racing were not actually capable of supporting that program. Meshkin's fraud proximately caused Vertrue's substantial damages.

BOS_505004_2/

**Vertrue's Termination of the Agreement**

29.     Based on Vertrue's inability to locate Nutzz.com's and Bang Racing's operations; a February 7, 2005 Business Week/Online article stating that Bang Racing was no longer operational (the "Business Week/Online Article"); and Bang Racing's January 25, 2005 sale of its entire stock of racing vehicles, fuel cells and equipment, Vertrue believe that Nutzz.com and Bang Racing are no longer in business.   A copy of the Business Week/Online Article, questioning the truth of many of Meshkin's representations to Vertrue and others, is attached hereto as Exhibit C and incorporated by reference.

**Meshkin Is the Alter Ego of Nutzz.com and Bang Racing**

30.     Defendant Meshkin so controlled and dominated both Nutzz.com and Bang Racing that justice requires liability to be imposed upon Meshkin personally, as the real party responsible for the breaches of contract and related tortious actions at issue in this case.

31.     Meshkin exercised complete control and domination over every aspect of Nutzz.com and Bang Racing, which control and domination directly related to the scheme to defraud Vertrue.   Upon information and belief, Meshkin was the Chief Executive Officer, principal (if not sole) owner, principal (if not sole) shareholder, and principal (if not sole) director of both Nutzz.com and Bang Racing.

32.     Meshkin failed to keep separate books and records for Nutzz.com and, on information and belief, he commingled assets of his various interests and used them to serve his personal interests as if they were his personal assets.

BOS_505004_2/

33.    Acting as Nutzz.com's and Bang Racing's Chief Executive Officer, Meshkin negotiated the Agreement with Vertrue on behalf of Nutzz.com, and negotiated the guaranty on behalf of Bang Racing, guaranteeing Nutzz.com's obligations under the Agreement.   Both the Agreement and the guaranty were signed by Meshkin as Nutzz.com's and Bang Racing's Chief Executive Officer.

34.    In negotiating the Agreement with Vertrue as Nutzz.com's and Bang Racing's Chief Executive Officer and convincing Vertrue to advance \$1.25 million to be earned off by Nutzz.com from amounts it was to earn under the Agreement, Meshkin exercised complete control and dominance over Nutzz.com's and Bang Racing's finances and operations.  Meshkin was the sole person from Nutzz.com and Bang Racing with whom Vertrue had contact in negotiating the Agreement, and Meshkin held himself out to be the sole person within Nutzz.com and Bang Racing who could negotiate the Agreement's terms.

35.    In addition, in negotiating the Agreement with Vertrue, Meshkin made representations about Nutzz.com's and Bang Racing's finances as they related to the Agreement. Meshkin alone negotiated for Nutzz.com to receive the Advance from Vertrue and represented that the Advance was necessary to fund the advertising and promotional obligations of Nutzz.com, including, but not limited to, placing one billion eBay impressions to promote the Nutzz Elite program and undertaking trackside and related marketing through Bang Racing.

36.    Upon information and belief, Meshkin alone controlled and decided how Nutzz.com and Bang Racing should spend their funds.

- 13 -

BOS_505004_2/

37.    At the time of negotiating and entering into the Agreement with Vertrue, the corporate entities of Nutzz.com and Bang Racing had no separate mind, will or existence of their own because of Meshkin's complete dominance over the two companies he alone controlled.

38.    On information and belief, Meshkin did not respect the independent corporate existence of Nutzz.com and Bang Racing, failing to hold board meetings and/or shareholder meetings.   Instead, Meshkin used the corporate forms of Nutzz.com and Bang Racing as an artifice to avoid creditors and commit a fraud or wrong upon, at a minimum, Vertrue.

39.    Upon information and belief, Nutzz.com and Bang Racing did not employ separate employees; rather, the same employees worked for both companies.

40.    For the reasons described above, there is such a unity of interest between Meshkin, on the one hand, and Nutzz.com and Bang Racing, on the other, that it would defeat both equity and justice to recognize the fiction of separate identities between Meshkin and the two companies he controls. Accordingly, the corporate structure of Nutzz.com and Bang Racing should be disregarded and Meshkin, who controls the finances and business practices of the two companies, should be held liable for all of the damages suffered by Vertrue on account of Nutzz.com's and Bang Racing's conduct.

### AS AND FOR A FIRST CLAIM FOR RELIEF
#### (Pierce the Corporate Veil - Alter Ego Liability)

41.    Vertrue repeats and realleges each of the allegations contained in paragraphs 1-40 as if fully set forth herein.

42.    Meshkin personally dominated and controlled the operations of Nutzz.com and Bang Racing.  On information and belief, he failed to maintain or respect the independent legal

BOS_505004_2/

identities of his companies. Instead, he used them as shells to carry out his own personal business.

43. On information and belief, Meshkin did not maintain separate corporate books and records for Nutzz.com and/or Bang Racing. To the extent that the companies employed any officers or directors, they employed overlapping officers and directors who served solely at the discretion of Meshkin.

44. It would be manifestly unfair and unjust to allow Meshkin to misuse the corporate firms of Nutzz.com and Bang Racing for his own personal profit while, at the same time, using them to keep assets beyond the reach of creditors, such as Vertrue. Accordingly, Vertrue is entitled to pierce their corporate veils and hold Meshkin personally liable for the debt incurred by Nutzz.com and Bang Racing to Vertrue.

45. Nutzz.com and Bang Racing are the alter egos of Meshkin. Accordingly, Vertrue is entitled to hold Meshkin personally liable for repayment of Nutzz.com's and Bang Racing's debt under the Agreement.

### AS AND FOR A SECOND CLAIM FOR RELIEF
(Fraud, Including Fraud in the Inducement)

46. Vertrue repeats and realleges each of the allegations contained in paragraphs 1-45 as if fully set forth herein.

47. Meshkin engaged in a scheme to defraud Vertrue by misrepresenting and concealing Nutzz.com's and Bang Racing's marketing inabilities; lack of staff and operational support; Meshkin's, Nutzz.com's and Bang Racing's dire financial situation; and the loss of key members of the Bang Racing racing team that were necessary for Nutzz.com and Bang Racing to perform their marketing responsibilities. Meshkin undertook his scheme in order to induce

- 15 -

BOS_505004_2/

Vertrue to enter into the Agreement and, once in the Agreement, to continue investing in a program that Nutzz.com and Bang Racing were incapable of supporting.

48.    Meshkin's representations concerning his financial resources and Nutzz.com's and Bang Racing's operations and marketing capabilities were untrue, and his failures to disclose negative developments at Nutzz.com and Bang Racing rendered other representations materially misleading. Meshkin knew his representations to be untrue, and his material failures to disclose to be misleading, at the time he made them to Vertrue.

49.    Vertrue relied to its detriment upon Meshkin's misrepresentations and material failures to disclose essential information.

50.    As a result of Meshkin's fraud, Vertrue has suffered, and continues to suffer significant damages.

### AS AND FOR A THIRD CLAIM FOR RELIEF
#### (Civil Theft)

51.    Vertrue repeats and realleges each of the allegations contained in paragraphs 1-50 as if fully set forth herein.

52.    Through his misrepresentations and intentional failures to disclose material information, Meshkin deprived Vertrue of the $1.25 million Advance it made to Nutzz.com, a company Meshkin controlled for his own benefit.

53.    Vertrue has been damaged as a result of Meshkin's civil theft.

54.    In accordance with Conn. Gen. Stat. §52-564, Vertrue is entitled to recover treble damages.

- 16 -

### AS AND FOR A FOURTH CLAIM FOR RELIEF

#### (Conversion)

55.     Vertrue repeats and realleges each of the allegations contained in paragraphs 1-54 as if fully set forth herein.

56.     Through his misrepresentations and intentional failure to disclose material information, Meshkin induced Vertrue to pay Nutzz.com the $1.25 million Advance.

57.     Meshkin has assumed and exercised the rights of ownership and control over Vertrue's $1.25 million Advance.

58.     Meshkin and the companies he controls have refused to repay Vertrue the $1.25 million Advance, thereby causing Vertrue to suffer damage.

### AS AND FOR A FIFTH CLAIM FOR RELIEF

#### (Unjust Enrichment)

59.     Vertrue repeats and realleges each of the allegations contained in paragraphs 1-58 as if fully set forth herein.

60.     Through his misrepresentations and intentional failure to disclose material information, Meshkin induced Vertrue to enter into the Agreement and deprived Vertrue of the $1.25 million Advance it made to Nutzz.com, a company Meshkin controlled for his own benefit.

61.     Meshkin received a benefit from Vertrue and the parties intended and expected that Meshkin, or the companies he controls, would pay Vertrue for bestowing that benefit.

62.     Meshkin and the companies he controls unjustly failed to pay Vertrue for the benefit he received.  As a result, Vertrue has suffered damages.

BOS_505004_2/

63.    Under the circumstances, it would be wholly inequitable for Meshkin and the companies he controls for his own purposes to retain the benefit he obtained from Vertrue through his fraudulent misrepresentations and concealment of material facts.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
**(Connecticut Unfair Trade Practices Act
Conn. Gen. Stat. Ann. §42-110a, *et. seq.*)**

64.    Vertrue repeats and realleges each of the allegations contained in paragraphs 1-63 as if fully set forth herein.

65.    Meshkin's actions were undertaken in the conduct of trade or commerce in Connecticut, as defined in Conn. Gen. Stat. §42-110a(4).

66.    Meshkin's actions described above, including, but not limited to, his intentional fraud and failures to disclose material information, constitute an intentional and wanton violation of Vertrue's rights; unfair or deceptive acts or practices in their conduct of trade and commerce in Connecticut; and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a, *et. seq.* ("CUTPA").

67.    Meshkin's actions were immoral, oppressive, unscrupulous and violative of public policy, entitling Vertrue to an award of punitive damages.

68.    As a consequence of Meshkin's unfair or deceptive acts or practices, Vertrue has experienced, and continues to experience, ongoing financial losses that amount to a substantial harm.

**WHEREFORE,** Plaintiff Vertrue Incorporated demands judgment against Defendant Alexander Meshkin as follows:

- 18 -

(a)     On the first claim for relief to pierce the corporate veils of Nutzz.com and Bang Racing and hold Meshkin liable as their alter ego, awarding Vertrue compensatory damages;

(b)     On the second claim for relief for fraud, awarding Vertrue compensatory damages;

(c)     On the third claim for relief for civil theft, awarding Vertrue compensatory damages, trebled pursuant to Conn. Gen. Stat. §52-564;

(d)     On the fourth claim for relief for conversion, awarding Vertrue compensatory damages;

(e)     On the fifth claim for relief for unjust enrichment, awarding Vertrue compensatory damages;

(f)     On the sixth claim for relief for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §42-110a, *et. seq.*, awarding Vertrue compensatory and punitive damages;

(g)     Awarding Vertrue attorney's fees, interest and costs on all counts; and

(h)     Awarding Vertrue such other and further relief as the Court may deem just and proper.

Dated:   Hartford, Connecticut
         October 13, 2005

THE PLAINTIFF
Vertrue Incorporated

By _____
     William E. Murray, Esq.
     Edwards & Angell, LLP
     90 State House Square, 9th Floor
     Hartford, CT 06103
     (860) 525-5065
     (860) 527-4198 (fax)
     Juris Number 404401

     John Stretton, Esq.
     Edwards & Angell, LLP
     Three Stamford Plaza

BOS_505004_2/

- 20 -

301 Tresser Blvd.
Stamford, CT 06901
(203) 975-7505
(203) 975-7180 (fax)
Juris Number 421274

OF COUNSEL
Steven M. Cowley, Esq.
(BBO#554354)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
617.439.4444

BOS_506904_2/

Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VERTRUE INCORPORATED,

               Plaintiff,

v.

ALEXANDER B. MESHKIN,

               Defendant.

CIVIL ACTION NO.: 05-CV-1809-PCD

MARCH 17, 2006

## VERTRUE INCORPORATED'S FIRST REQUEST
## FOR THE PRODUCTION OF DOCUMENTS TO ALEXANDER B. MESHKIN

Pursuant to FED. R. CIV. P. 34, Plaintiff Vertrue Incorporated f/k/a MemberWorks, Incorporated ("Vertrue") requests that Defendant Alexander B. Meshkin ("Meshkin") produce the following documents for inspection and copying within thirty (30) days of service hereof.

## I.     INSTRUCTIONS

1.  Plaintiff adopts and incorporates by reference the rules of construction set forth D. CONN. L. CIV. R. 26 (d).

2.  All information is to be divulged that is in your possession, custody or control or that of your attorneys (current or former), investigators, agents or other representatives. In answering, you must furnish all information and documents available.

3.  If you cannot respond to a document request in full and you have exercised thorough diligence in an attempt to secure the document(s) requested, then you must so state. You must also explain to the fullest extent possible the specific facts concerning your inability to respond to the document request and supply whatever information or knowledge you have concerning any document request to which you fail to respond.

4.  If you contend that any document (as defined herein) requested is privileged, in whole or in part, or if you object to producing any document requested based on a claim that the document is not subject to discovery, in whole or in part, provide a privilege log that (i) describes the document, including the type and general subject matter of the document; (ii) identifies the author(s) and recipient(s) and anyone else who had access to the document; (iii) identifies the date(s) the document was created and modified in any way; and (iv) describes in detail the privilege asserted and the basis(es) for the claim of privilege.

5.  Where an individual document request calls for a document or set of documents that would be voluminous or which would involve more than one part, the documents should be produced in an organized manner so that each document is separately identifiable.

6.  These document requests are intended as continuing document requests.  If you, your agents, attorneys, or other representatives acquire or become aware of other documents responsive to any of these document requests following the service of your original responses thereto, you are required to supplement your responses accordingly.

7.  Each request that seeks information relating in any way to communications to, from, or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents, or servants of the business or corporate entity.

8.  Unless a specific document request identifies a different time period, these requests require production of documents dated, created, received or maintained between January 1, 2003 and the date of trial in this lawsuit.

## II.    DEFINITIONS

9.    Plaintiff adopts and incorporates by reference the definitions set forth D. CONN. L. CIV. R. 26 (c).

10. As used herein, the terms "you," "your" and "yourself" refers to Defendant Alexander B. Meshkin, Key Age Ventures, and your agents, representatives, partners, attorneys (former or current), accountants, consultants and their respective predecessors, successors, or assigns.

11. The term "including" as used herein means including but not limited to.

12. As used herein, the terms "constituting," "reflecting," and "referring to" shall mean showing, describing, regarding, evidencing, relating to, arising from, connected with, commenting on, responding to, analyzing, relating to, with respect to, or in connection with. The term "concerning" is defined by D. CONN. L. CIV. R. 26 (c)(7).

13. The term "Nutzz" as used herein refers to Nutzz.com, LLC, its officers, directors, members, agents, employees, attorneys, representatives, parents, subsidiaries and affiliates, including, but not limited to, Bang Holdings, LLC and Bang Racing, LLC.

14. The term "Bang Affiliates" as used herein refers to any of the following, whether individually or in combination with any other of the following:  Bang Holdings, LLC; Bang, LLC; Bang! LLC; Bang Racing, LLC; Bang! Racing LLC; Key Age Ventures, LLC; MCS Racing Ventures, LLC; Bang Technology LLC; Bang! Technology LLC; Artsmen, LLC; Bang Properties, LLC; Bang Racing-NCTS, LLC; Bang Racing-NNCS, LLC; Bang Promotions, LLC; Bang Seed Investment Group; Key Age Ventures, LLC; and GP&C, and any of their officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

15. The term "Vertrue" as used herein refers to Vertrue Incorporated f/k/a MemberWorks Incorporated, its officers, directors, employees, agents, attorneys, representatives, parents, subsidiaries and affiliates.

16. The term "Adalio" as used herein refers to John Adalio, his agents, attorneys, and representatives.

17. The term "Walters" as used herein refers to John Walters, his agents, attorneys, and representatives.

18. The term "McReynolds" as used herein refers to Larry McReynolds, his agents, attorneys, and representatives.

19. The term "Mary Ann Meshkin" as used herein refers to Mary Ann Meshkin, her agents, attorneys and representatives.

20. The term "Blacker" as used herein refers to George Blacker, his agents, attorneys and representatives.

21. The term "Burnett" as used herein refers to Michael Burnett, his agents, attorneys and representatives.

22. The term "Ducoin" as used herein refers to Edward Ducoin, his agents, attorneys and representatives.

23. The term "Masik" as used herein refers to John Masik, his agents, attorneys and representatives.

24. The term "Pero" as used herein refers to Carol Pero, his agents, attorneys and representatives.

25. The term "Coffin" as used herein refers to James L. Coffin, his agents, attorneys and representatives.

26. The term "Joint Marketing Group" as used herein refers to Joint Marketing Group, LLC, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

27. The term "Joint Marketing Group Media" as used herein refers to Joint Marketing Group Media, LLC, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

28. The term "Key Age Ventures" refers to Key Age Ventures, LLC, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

29. The term "MCS Racing Ventures" refers to MCS Racing Ventures, LLC, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

30. The term "eBay" refers to eBay Inc., its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

31. The term "Kvapil" as used herein refers to Travis Kvapil; Travis Kvapil Racing, LLC; and their officers, directors, members, agents, employees, representatives, parents, subsidiaries, affiliates and representatives.

32. The term "Great Barrier Reef" as used herein refers to Great Barrier Reef, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

33. The term "Spencer" as used herein refers to Jimmy Spencer; Spencer Motorsports Ventures, Inc.; and their officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

34. The term "Southtrust Bank" as used herein refers to Southtrust Bank, its officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

35. The term "Agreement" as used herein refers to the July 16, 2004 agreement between MemberWorks Incorporated and Nutzz.

## III.    DOCUMENTS TO BE PRODUCED

**REQUEST NO. 1:**    All documents constituting, concerning, referring or relating to the Agreement, including all drafts of the Agreement.

**REQUEST NO. 2:**    All documents constituting, concerning or referring to negotiation of or other communications leading to the Agreement.

**REQUEST NO. 3:**    All documents constituting, concerning or referring to any correspondence or communication between you and Vertrue.

**REQUEST NO. 4:**    All documents constituting, concerning or referring to any correspondence or communication between Nutzz and Vertrue.

**REQUEST NO. 5:**    All documents constituting, concerning or referring to any correspondence or communication between any of the Bang Affiliates and Vertrue.

**REQUEST NO. 6:**    All documents constituting, concerning or referring to any correspondence or communication between you and Peru.

**REQUEST NO. 7:**    All documents constituting, concerning or referring to any correspondence or communication between Nutzz and Peru.

**REQUEST NO. 8:**    All documents constituting, concerning or referring to any correspondence or communication between any of the Bang Affiliates and Peru.

**REQUEST NO. 9:**    All documents constituting, concerning or referring to any agreement between you and any of the Bang Affiliates.

**REQUEST NO. 10:**    All documents constituting, concerning or referring to any agreement between two or more of the Bang Affiliates.

**REQUEST NO. 11:**    All documents constituting, concerning or referring to any communication, correspondence or agreement between eBay and you or any of the Bang Affiliates.

**REQUEST NO. 12:**    All documents constituting, concerning or referring to any communication or correspondence between you, Nutzz or any other of the Bang Affiliates and: (i) Adalio; (ii) Walters; (iii) Joint Marketing Group; (iv) Joint Marketing Group Media; (v) Kvapil; (vi) McReynolds; (vii) Spencer; (viii) Great Barrier Reef; (ix) Coffin; (x) Blacker; (xi) Bennett; (xii) Ducoin; and (xiii) Masik.

**REQUEST NO. 13:**    All documents constituting, concerning or referring to any agreement between you, Nutzz or any other of the Bang Affiliates and: (i) Adalio; (ii) Walters; (iii) Joint Marketing Group; (iv) Joint Marketing Group Media; (v) Kvapil; (vi) McReynolds; (vii) Spencer; (viii) Great Barrier Reef; (ix) Coffin; (x) Blacker; (xi) Bennett; (xii) Ducoin; and (xiii) Masik.

**REQUEST NO. 14:**    All documents constituting, concerning or referring to all efforts by you, Nutzz, or any of the Bang Affiliates to perform any of the obligations set forth in the Agreement.

**REQUEST NO. 15:**    All documents constituting, concerning or referring to all efforts by Vertrue to perform any of the obligations set forth in the Agreement.

**REQUEST NO. 16:**  All documents constituting, concerning or referring to the financial records of Nutzz, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

**REQUEST NO. 17:**  All documents constituting, concerning or referring to the financial records of each of the Bang Affiliates, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

**REQUEST NO. 18:**  All documents constituting, concerning or referring to your financial records, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

**REQUEST NO. 19:**  All documents (including those dated, created or maintained prior to January 1, 2003) concerning or referring to Surfbuzz.com, including, but not limited to,, all documents identifying each holder of an equity interest in that company, your interests in or relationship to that company, and any agreement concerning or referring to the sale of that company or any of its assets.

**REQUEST NO. 20:**  All documents constituting, concerning or referring to any allegation that you, Nutzz or any of the Bang Affiliates misrepresented any fact, concealed any

of facts from any person or entity, breached any promise or failed to honor or perform any

agreement.

**REQUEST NO. 21:** All documents constituting, concerning or referring to marketing of

the Nutzz Elite Program, including, but not limited to, communications between you or Nutzz,

any website, retail channel, trackside channel, television channel, or other media or advertising,

promotion or other marketing activity.

**REQUEST NO. 22:** All documents constituting, concerning or referring to any

trackside marketing plan, relating to the Nutzz Elite Program, including, but not limited to any

draft of such a trackside marketing plan.

**REQUEST NO. 23:** All documents constituting, concerning, or referring to any work-

related issues, problems, concerns, or strikes by website consultants or any other employee,

consultant, or agent of Nutzz.

**REQUEST NO. 24:** All documents identifying each and every employee, consultant

and/or independent contractor of Nutzz or any of the Bang Affiliates, including, but not limited

to, all document identifying the responsibilities, title, years of employment, and last known

address of each employee, consultant, and/or independent contractor of Nutzz or any of the Bang

Affiliates.

**REQUEST NO. 25:** All documents constituting, concerning or referring to the

termination or resignation of employment of each and every employee, consultant and/or

independent contractor of Nutzz and of each of the Bang Affiliates, including, but not limited to,

all personnel and payroll records concerning each such employee, consultant or independent

contractor.

**REQUEST NO. 26:** All documents constituting, concerning, or referring to any efforts to design or modify any part of the Nutzz.com or the Itsnutzz.com websites.

**REQUEST NO. 27:** All documents concerning or referring to a Nutzz.com online auction, or efforts to create such an online auction.

**REQUEST NO. 28:** All documents constituting, concerning or referring to the sponsorship, or possibility of sponsorship, of any racing team owned or controlled by you or Nutzz, including, but not limited to, sponsorship by LINE-X Franchise Development Corp., Toyota, or Valvoline.

**REQUEST NO. 29:** All documents concerning the property at 160 Gasoline Alley, Mooresville, North Carolina 28117, including, but not limited to, documents constituting, concerning or relating to any lease or sublease of that property, rental payments made, rent owed, and all documents concerning or referring to the circumstances of any of the Bang Affiliates ending its lease or use of that property.

**REQUEST NO. 30:** All documents constituting, concerning or referring to any communication, correspondence or agreement between you or any of the Bang Affiliates and the owner, landlord, property manager or other person or entity claiming to represent the interests of the property of 8545 Townley Road, Huntersville, North Carolina, including, but not limited to, any lease or other agreement relating to that property, all correspondence referring to that property, any statement of rent paid or owed, any statement of past due rent owed, and any notice or request to quit or leave the property.

**REQUEST NO. 31:** All documents constituting, concerning, or referring to any funds paid, advanced or otherwise transferred by Vertrue pursuant to or in connection with the Agreement, including, but not limited to, (a) documents identifying the recipient of such funds,

(b) what bank account (including its name, number and location) that money was originally

deposited into, (c) documents identifying or referring to all subsequent transfers of that money,

(d) all other bank accounts (including their name, number and location) into which any portion of

those funds were transferred, and (e) the identity of all persons and entities who received, held,

holds, used or had possession of any portion of those funds for any purpose.

**REQUEST NO. 32:**  All documents constituting, concerning or referring to any

monetary or non-monetary investments in Nutzz or any of the Bang Affiliates, including, but not

limited to, all documents identifying each person or entity who invested in, or otherwise obtained

any legal, equitable, membership, partnership or other interest in Nutzz or any Bang Affiliate and

all documents showing the value of each such transaction, the nature of the interest obtained, the

value of the interest, and all correspondence, communications and agreements concerning each

such transaction.

**REQUEST NO. 33:**  All documents constituting, concerning, or referring to any

agreement settling, releasing, waiving, or otherwise addressing any claim or demand (whether

asserted formally in a lawsuit or arbitration, or only informally in a communication) by or

against you, Nutzz, or any of the Bang Affiliates.

**REQUEST NO. 34:**  All documents constituting, concerning, or referring to any

correspondence or communication leading up to or referring to any agreement referred to in

Request No. 33.

**REQUEST NO. 35:**  All documents concerning, supporting, contradicting, or on which

you rely in asserting any counterclaim or affirmative defense in the above-captioned proceeding.

**REQUEST NO. 36:**  To the extent that you claim that Vertrue breached Section 19 of

the Agreement by marketing the FastTrack Savings program to Nutzz Elite members and other

individuals during the initial term of the Agreement, all documents that evidence, support, or tend to negate this claim.

**REQUEST NO. 37:**  All documents concerning or relating to the marketing of the FastTrack Savings program.

**REQUEST NO. 38:**  To the extent that you claim that Vertrue breached Sections 3(a) and 5(d) of the Agreement by failing to promote the Nutzz Elite program to its own members and business partners, all documents that evidence, support, concern or refer to this claim.

**REQUEST NO. 39:**  All documents constituting, concerning or referring to the promotion of the Nutzz Elite program to any person or entity by or on behalf of you, Nutzz, any of the Bang Affiliates, or Vertrue.

**REQUEST NO. 40:**  To the extent that you claim that Vertrue breached Sections 3(c) and 7(a) of the Agreement and infringed Nutzz's common law and statutory trademark rights by the unauthorized use of service marks, logos, and/or other proprietary designations belonging to Nutzz in the marketing of the FastTrack Savings program, all documents that evidence, support, or tend to negate this claim.

**REQUEST NO. 41:**  All documents constituting, concerning or referring to the service marks, logos, and/or other proprietary designations you contend belong to Nutzz or any of the Bang Affiliates.

**REQUEST NO. 42:**  To the extent that you claim that Vertrue violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. § 42-110b or the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531 et seq. by allegedly 1) misrepresenting to Nutzz Elite members that the FastTrack Savings program was an upgrade to the Nutzz Elite program; 2) misrepresenting to Nutzz Elite members that their Nutzz Points were no longer valid and the

Nutzz Auction was no longer available; 3) misrepresenting to Nutzz Elite benefit providers that it was changing the name of the Nutzz Elite membership program to FastTrack Savings because NASCAR® fans did not recognize it as a NASCAR® themed program; 4) disabling the link between the Nutzz.com website and the Nutzz Elite enrollment page; 5) modifying the Itsnutzz.com website to redirect Nutzz Elite members to the FastTrack Savings program benefits page; 5) misrepresenting to Nutzz the parties' obligations under the Agreement; 6) refusing to discuss with Nutzz the process for conveying that it needed to tie its points system to members' activity in the Nutzz Elite program; and 7) waiting to market the Nutzz Elite program until after it had decided to terminate the Agreement with Nutzz, all documents that evidence, support, or tend to negate these claims, including, but not limited to, the March 24, 2005 e-mail referenced in the August 4, 2005 Notice of Intention to Arbitrate.

**REQUEST NO. 43:**  All documents concerning or referring to the parties' obligations under the Agreement.

**REQUEST NO. 44:**  All documents constituting, concerning or referring to any effort to tie the Nutzz points system for the online auction to members' activity in the Nutzz Elite program.

**REQUEST NO. 45:**  To the extent that you claim that Vertrue infringed a trade secret under the Delaware Uniform Trade Secret Act, 6 Del. C. § 2001(s) and/or the Connecticut Uniform Trade Secret Act, § 35-51b, all documents that evidence, support, concern, or refer to this claim.

**REQUEST NO. 46:**  All documents constituting, concerning or referring to the trade secrets of Nutzz, or any Bang Affiliate that you contend Vertrue had any access to or otherwise

misused, including, but not limited to, all communications in which such trade secrets, in whole or in part, are discussed with or disclosed to any other person or entity.

**REQUEST NO. 47:**  To the extent that you claim that Vertrue breached Section 26 of the Agreement, all documents that evidence, support, or tend to negate this claim.

**REQUEST NO. 48:**  All documents constituting, concerning, or referring to any communication, correspondence, court or arbitration filing, or other disclosure of the existence of the Agreement, or any part of the Agreement, to person, entity, court, or tribunal not a party to the Agreement by or on behalf of you, Nutzz, or any Bang Affiliate.

**REQUEST NO. 49:**  All documents created, received, or maintained by you, Nutzz or any Bang Affiliate concerning, relating to, or as a result of the Agreement, or any person's or entity's effort to perform under the Agreement.

**REQUEST NO. 50:**  All documents created, received, or maintained by you, Nutzz, or any Bang Affiliate concerning, relating to, or as a result of any effort to create, staff, finance, maintain, sponsor, or obtain sponsorship for, or race a car, truck, driver and/or team in any NASCAR® race or series of races, including, but not limited to, all documents referring to the ability or inability of that team to race at any time.

**REQUEST NO. 51:**  All documents that identify every office, facility, or other location form which the operations of Nutzz and each Bang Affiliate has been performed, including, but not limited to, documents identifying the current address of Nutzz and each Bang Affiliate.

**REQUEST NO. 52:**  All documents constituting, concerning, or referring to any patent application or issued patent applied for in your name or the name of Nutzz or any Bang Affiliate.

**REQUEST NO. 53:**  All documents constituting, concerning, or referring to the assignment, license, sale, or transfer of any rights in any patent application or issued patent by or to you, Nutzz, or any Bang Affiliate.

**REQUEST NO. 54:**  All documents that identify any accountant or bookkeeper that has, in whole or in part, prepared any personal financial statement for you, any personal tax return for you, or any financial statement or tax return for Nutzz or any Bang Affiliate.

**REQUEST NO. 55:**  All documents constituting, concerning, or referring to any loan applications or other agreements, including, but not limited to, any communications or other documents concerning or referring to such agreements documents between Meshkin, Nutzz, or any Bang Affiliate and Southtrust Bank.


Dated at Hartford, Connecticut this 17th day of March, 2006.

THE PLAINTIFF,
VERTRUE INCORPORATED


BY _____
        William E. Lohnes, Esq. (ct24270)
        Edwards Angell Palmer & Dodge LLP
        90 State House Square, 9th Floor
        Hartford, CT 06103
        (860) 525-5065
        (860) 527-4198 (Fax)

        PRO HAC VICE
        Steven M. Cowley, Esq.
        Edwards Angell Palmer & Dodge LLP
        111 Huntington Ave.
        Boston, MA 02199
        (617) 239-0100
        (617) 227-4420 (fax)

        Its Attorneys

## CERTIFICATION OF SERVICE

This shall certify that a copy of the foregoing was served by fax and Federal Express on the 17th day of March, 2006 to the following:

**David A. Felice**
Cozen O'Connor-DE
Chase Manhattan Centre
1201 North Market Street
Suite 1400
Wilmington, DE 19801
302-295-2011
Fax: 302-295-2013
Email: dfelice@cozen.com

**Michael P. Foley, Jr.**
1120 South Main St., PO Box 814
Cheshire, CT 06410-0814
203-250-7212
Fax: 203-250-0363
Email: mpfesq@aol.com

**Sean J. Bellew**
Cozen O'Connor-DE
Chase Manhattan Centre
1201 North Market Street
Suite 1400
Wilmington, DE 19801
302-295-2026
Fax: 302-295-2013
Email: sbellew@cozen.com

William E. Lohnes

Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VERTRUE INCORPORATED, | : | |
| Plaintiff, | : | Civil No. 3:05cv1809 (PCD) |
| | : | |
| v. | : | |
| | : | |
| ALEXANDER B. MESHKIN, | : | |
| | : | April 20, 2006 |
| Defendant. | : | |

## DEFENDANT ALEX MESHKIN RESPONSES TO VERTRUE INCORPORATED'S REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to the Federal Civil Rules 26 and 34, Defendant Alex Meshkin ("Meshkin") responds to Vertrue Incorporated's ("Vertrue") First Request for Production of Documents as follows:

### GENERAL OBJECTIONS

Meshkin makes the following general objections, whether or not separately set forth in response to each document request, to each and every definition, instruction, and document request made in this set of document requests and these general objections are hereby incorporated into Meshkin's response to each and every request:

1. Meshkin objects to these requests insofar as they seek disclosure from Alex Meshkin in his capacity as an employee of Nutzz.com, LLC or any other affiliated company. By its own complaint, Vertrue asserts claims against Meshkin in his individual capacity. Meshkin will only conduct a search of potentially responsive documents as they might relate to his individual capacity.

2. Meshkin objects to these requests to the extent they seek information that is neither relevant to the claims or potential defenses asserted in this litigation nor reasonably

calculated to lead to the discovery of admissible evidence. Meshkin will only produce documents potentially responsive to his claimed defenses and counterclaims / additional claims when and if he is called upon to affirmatively plead those claims and defenses.

3.      Meshkin objects to the breadth of the requests to the extent they request a search of records from all "Bang Affiliates." Meshkin will only conduct a search of potentially responsive documents that are under his individual care, custody or control.

4.      Meshkin objects to these requests insofar as they seek disclosure of information that is privileged for any reason, including without limitation information that is protected by the attorney-client privilege, the work product doctrine, the right to financial privacy and/or any applicable privileges or protections against disclosure. Such information and documents will not knowingly be disclosed. The inadvertent disclosure of any such information or documents is not intended to and will not constitute a waiver of such privilege or immunity, or an agreement to produce such privileged or immune information or documents. Meshkin will produce, if requested, a privilege log identifying all of respective privileged documents it has withheld from production.

5.      Meshkin objects to these requests to the extent that they are unduly burdensome and oppressive, insofar as they seek information that is already in Vertrue's possession, that has already been made available to Vertrue, or is equally available to Vertrue from other sources that are more convenient, less burdensome and/or less expensive.

6.      Meshkin objects to these requests to the extent they seek the disclosure of information protected from disclosure by rights of privacy, or seek information protected by a non-party's right or privilege that prohibits Meshkin from producing such information. Meshkin

2

will only produce such information with the express authorization of the holder of the right or privilege.

7.      Meshkin objects to these requests to the extent they seek information outside of Meshkin's direct knowledge, custody or control.

8.      Meshkin objects to these requests to the extent they seek to impose upon Meshkin an obligation to investigate or to discover information or materials from third parties or services that are equally accessible to Vertrue. Meshkin will not undertake a search of or be responsible for providing information in the custody or control of any other person or non-parties.

9.      Meshkin objects to all definitions, instructions and requests to the extent they are not limited to a relevant time period.

10.     In agreeing to produce all documents in response to a particular request, Meshkin is not representing that such responsive documents in fact exist, that Meshkin actually possesses or can obtain the document or class of documents, or that Meshkin will produce literally all such responsive documents, but rather that Meshkin will produce all such unobjectionable, responsive, non-privileged documents that exist within Meshkin's possession, custody or control. Meshkin agrees to conduct a good faith, diligent search for each category of documents in the locations most likely to contain responsive materials.

11.     No incidental or implied admissions are intended by any response by Meshkin to any request. That Meshkin has responded to any request is not an admission that Meshkin accepts or admits the existence of any alleged facts set forth in or assumed by such request, or that the making of a response constitutes admissible evidence.

12.     Meshkin makes these responses subject to the reservation of its rights to object to the introduction into evidence, in this or any other action, of any information provided upon

3

grounds of confidentiality, relevance, materiality, hearsay and/or admissibility or other applicable grounds.

13.    The responses herein are based upon such information and documents as are currently available to Meshkin at this time.  Further, independent investigation, legal research and analysis by Meshkin or its counsel may supply additional facts or documents and/or add meaning to known facts or documents. *See* General Objection No. 2. The responses hereinafter set forth are given without prejudice to Meshkin's right to introduce evidence of any subsequently discovered or compiled facts or interpretation thereof, or to supplement, modify or otherwise change these responses.

14.    Meshkin reserves the right to object on any ground at any time to such other or supplemental document requests as Vertrue may at any time propound involving or relating to the subject matter of these requests.

## SPECIFIC RESPONSES TO DOCUMENT REQUESTS

1.    All documents constituting, concerning, referring or relating to the Agreement, including all drafts of the Agreement.

   **Response:**  Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

2.    All documents constituting, concerning or referring to negotiation of or other communications leading to the Agreement.

   **Response:**  Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

3.    All documents constituting, concerning or referring to any correspondence or communication between you and Vertrue.

WILM1\34414\1164566.000

**Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

4.    All documents constituting, concerning or referring to any correspondence or communication between Nutzz and Vertrue.

**Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

5.    All documents constituting, concerning or referring to any correspondence or communication between any of the Bang Affiliates and Vertrue.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents.

6.    All documents constituting, concerning or referring to any correspondence or communication between Nutzz and Peru.

**Response:** Meshkin objects to this interrogatory to the extent it seeks information protected by the work product doctrine. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents.

7.    All documents constituting, concerning or referring to any correspondence or communication between Nutzz and Peru.

**Response:** Meshkin objects to this interrogatory to the extent it seeks information potentially protected by the work product doctrine. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents.

8.    All documents constituting, concerning or referring to any correspondence or communication between any of the Bang Affiliates and Peru.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents.

9.    All documents constituting, concerning or referring to any agreement between you and any of the Bang Affiliates.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin further objects to this interrogatory to the extent it seeks information protected by the work product doctrine.

10.    All documents constituting, concerning or referring to any agreement between two or more of the Bang Affiliates.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin further objects to this interrogatory to the extent it seeks information protected by the work product doctrine.

11.    All documents constituting, concerning or referring to any communication, correspondence or agreement between eBay and you or any of the Bang Affiliates.

**Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

12.    All documents constituting, concerning or referring to any communication or correspondence between you, Nutzz or any other of the Bang Affiliates and: (i) Adalio: (ii) Walters; (iii) Joint Marketing Group: (iv) Joint Marketing Group Media; (v) Kvapil: (vi) McReynolds; (vii) Spencer; (viii) Great Barrier Reef; (ix) Coffin; (x) Blacker; (xi) Bennett; (xii) Ducoin; and (xiii) Masik.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents that are not otherwise publicly available.

13. All documents constituting, concerning or referring to any agreement between you, Nutzz or any other of the Bang Affiliates and: (i) Adalio: (ii) Walters; (iii) Joint Marketing Group: (iv) Joint Marketing Group Media; (v) Kvapil: (vi) McReynolds; (vii) Spencer; (viii) Great Barrier Reef; (ix) Coffin; (x) Blacker; (xi) Bennett; (xii) Ducoin; and (xiii) Masik.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents that are not otherwise publicly available.

14. All documents constituting, concerning or referring to all efforts by you, Nutzz or any of the Bang Affiliates to perform any of the obligations set forth in the Agreement.

**Response:** Any and all non-privileged documents responsive to this request have been or will be produced.

15. All documents constituting, concerning or referring to all efforts by Vertrue to perform any of the obligations set forth in the Agreement.

**Response:** Meshkin objects to this request to the extent that this material is equally accessible to Vertrue. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents.

16. All documents constituting, concerning or referring to the financial records of Nutzz, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

7

**Response:** Meshkin objects to this request to the extent it seeks information prior to the formation of Meshkin.com, LLC and is otherwise immaterial to the claims or defenses asserted in this litigation. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents.

17. All documents constituting, concerning or referring to the financial records of each of the Bang Affiliates, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

    **Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin will not search for documents potentially responsive to this request.

18. All documents constituting, concerning or referring to your financial records, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

    **Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin will not search for documents potentially responsive to this request.

19. All documents (including those dated, created or maintained prior to January 1, 2003) concerning or referring to Surfbuzz.com, including, but not limited to, all documents identifying each holder of an equity interest in that company, your interests in or relationship to that company, and any agreement concerning or referring to the sale of that company or any of its assets.

    **Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin will not search for documents potentially responsive to this request.

20.    All documents constituting, concerning or referring to any allegation that you, Nutzz or any of the Bang Affiliates misrepresented any fact, concealed any of facts from any person or entity, breached any promise or failed to honor or perform any agreement.

**Response:** Meshkin objects to this request to the extent it seeks information concerning misrepresentation of any fact and/or concealment of facts from any person or entity (including Meshkin personally and the other Bang Affiliates), as those allegations were not asserted as bases for Vertrue's unlawful termination of the Agreement. Meshkin will undertake a reasonable search for and produce non-privileged documents responsive to the balance of the request.

21.    All documents constituting, concerning or referring to marketing of the Nutzz Elite Program, including, but not limited to, communications between you or Nutzz and any website, retail channel, trackside channel, television channel, or other media or advertising, promotion or other marketing activity.

**Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

22.    All documents constituting, concerning or referring to any trackside marketing plan, relating to the Nutzz Elite Program, including, but not limited to any draft of such a trackside marketing plan.

**Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

23.    All documents constituting, concerning, or referring to any work-related issues, problems, concerns, or strikes by website consultants or any other employee, consultant, or agent of Nutzz.

**Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

24.    All documents identifying each and every employee, consultant and/or independent contractor of Nutzz or any of the Bang Affiliates, including, but not limited to, all document identifying the responsibilities, title, years of employment, and last known address of each employee, consultant, and/or independent contractor of Nutzz or any of the Bang Affiliates.

9

**Response:** Meshkin objects to this request as information concerning employees of the other Bang Affiliates is both irrelevant and immaterial to the claims or defenses asserted in this litigation.    Meshkin will undertake a reasonable search for and product non-privileged documents responsive to the balance of the request.

25. All documents constituting, concerning or referring to the termination or resignation of employment of each and every employee, consultant and/or independent contractor of Nutzz and of each of the Bang Affiliates, including, but not limited to, all personnel and payroll records concerning each such employee, consultant or independent contractor.

**Response:** Meshkin objects to this request to the extent it seeks disclosure of personnel and payroll records concerning various individuals. Meshkin further objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for non-privileged documents regarding the termination or resignation of any employee of Nutzz.com, LLC.

26. All documents constituting, concerning, or referring to any efforts to design or modify any part of the Nutzz.com or the Itsnutzz.com websites.

**Response:** Meshkin objects to this request to the extent it is overly broad and burdensome. Meshkin will not endeavor to search for programming or other associated technical records. Meshkin will or has already produced documents concerning the incorporation of the Nutzz.com website into the Nutzz Elite/ItsNuttz.com website and/or portal.

27. All documents concerning or referring to a Nutzz.com online auction, or efforts to create such an online auction.

**Response:** Meshkin objects to this request to the extent it is overly broad and burdensome. Meshkin will not endeavor to search for programming or other associated technical records.    Notwithstanding its general and specific objections, Meshkin will undertake a

10

reasonable search for responsive, non-privileged documents as to the non-objectionable aspects
of this request.

28.   All documents constituting, concerning or referring to the sponsorship, or possibility of
      sponsorship, of any racing team owned or controlled by you or Nutzz, including, but not
      limited to, sponsorship by LINE-X Franchise Development Corp., Toyota, or Valvoline.

      **Response:** Meshkin objects to this request as being immaterial, not likely to lead to the

discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation

as these issues were not asserted as bases for Vertrue's unlawful termination of the Agreement.

Meshkin will not search for documents potentially responsive to this request.

29.   All documents concerning the property at 160 Gasoline Alley, Mooresville, North
      Carolina 28117, including, but not limited to, documents constituting, concerning or
      relating to any lease or sublease of that property, rental payments made, rent owed, and
      all documents concerning or referring to the circumstances of any of the Bang Affiliates
      ending its lease or use of that property.

      **Response:** Meshkin objects to this request as being immaterial, not likely to lead to the

discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation.

Meshkin will not search for documents potentially responsive to this request.

30.   All documents constituting, concerning or referring to any communication,
      correspondence or agreement between you or any of the Bang Affiliates and the owner,
      landlord, property manager or other person or entity claiming to represent the interest of
      the property of 8545 Townley Road, Huntersville, North Carolina, including, but not
      limited to, any lease or other agreement relating to that property, all correspondence
      referring to that property, any statement of rent paid or owed, any statement of past due
      rent owed, and any notice or request to quit or leave the property.

      **Response:** Meshkin objects to this request as being immaterial, not likely to lead to the

discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation.

Meshkin will not search for documents potentially responsive to this request.

31.   All documents constituting, concerning, or referring to any funds paid, advanced or
      otherwise transferred by Vertrue pursuant to or in connection with the Agreement,

11

including, but not limited to, (a) documents identifying the recipient of such funds, (b) what bank account (including its name, number and location) that money was originally deposited into, (c) documents identifying or referring to all subsequent transfers of that money, (d) all other bank accounts (including their name, number and location) into which any portion of those funds were transferred, and (e) the identity of all persons and entities who received, held, holds, used or had possession of any portion of those funds for any purpose.

**Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

32.    All documents constituting, concerning or referring to any monetary or non-monetary investments in Nutzz or any of the Bang Affiliates, including, but not limited to, all documents identifying each person or entity who invested in, or otherwise obtained any legal, equitable, membership, partnership or other interest in Nutzz or any Bang Affiliate and all documents showing the value of each such transaction, the nature of the interest obtained, the value of the interest, and all correspondence, communications and agreements concerning each such transaction.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin will not search for documents potentially responsive to this request.

33.    Al documents constituting, concerning, or referring to any agreement settling, releasing, waiving or otherwise addressing any claim or demand (whether asserted formally in a lawsuit or arbitration, or only informally in a communication ) by or against you, Nutzz, or any of the Bang Affiliates.

**Response:** Meshkin objects to this request to the extent it seeks information addressing Meshkin personally or the companies affiliated with Meshkin and that Meshkin is precluded from disclosing this information absent a court order. Meshkin further objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin will not search for documents potentially responsive to this request.

34.    All documents constituting, concerning, or referring to any correspondence or communication leading up to or referring to any agreement referred to in Request No. 33.

**Response:** See response to Request No. 33.

35. All documents concerning, supporting, contradicting, or on which you rely in asserting any counterclaim or affirmative defense in the above-captioned proceeding.

    **Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

36. To the extent that you claim that Vertrue breached Section 19 of the Agreement by marketing the FastTrack Savings program to Nutzz Elite members and other individuals during the initial term of the Agreement, all documents that evidence, support or tend to negate this claim.

    **Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

37. All documents concerning or relating to the marketing of the FastTrack Savings program.

    **Response:** Meshkin objects to this request to the extent the information is equally accessible to Vertrue or otherwise in its possession. Notwithstanding the general and specific objections, Meshkin will produce any and all non-privileged, responsive documents.

38. To the extent that you claim that Vertrue breached Sections 3(a) and 5(d) of the Agreement by failing to promote the Nutzz Elite program to its own member sand business partners, all documents that evidence, support, concern or refer to this claim.

    **Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

39. All documents constituting, concerning or referring to the promotion of the Nutzz Elite program to any person or entity by or on behalf of you, Nutzz, any of the Bang Affiliates, or Vertrue.

    **Response:** Meshkin objects to this request to the extent it is overly broad and burdensome. Meshkin will only undertake a search for documents responsive to this request as required to in response to the balance of the non-objectionable requests contained herein.

13

40.    To the extent that you claim that Vertrue breached Sections 3(c) and 7(a) of the Agreement and infringed Nutzz's common law and statutory trademark rights by the unauthorized use of service marks, logos, and/or other proprietary designations belonging to Nutzz in the marketing of the FastTrack Savings program, all documents that evidence, support or tend to negate this claim.

**Response:**  Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

41.    All documents constituting, concerning or referring to the service marks, logos, and/or other proprietary designations you contend belong to Nutzz or any of the Bang Affiliates.

**Response:**  Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

42.    To the extent that you claim that Vertrue violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. § 42-110b or the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531 et seq. by allegedly 1) misrepresenting to Nutzz Elite members that the FastTrack Savings program was an upgrade to the Nutzz Elite program; 2) misrepresenting to Nutzz Elite members that their Nutzz Points were no longer valid an the Nutzz Auction was no longer available; 3) misrepresenting to Nutzz Elite benefit providers that it was changing the name of the Nutzz Elite membership program to FastTrack Savings because NASCAR® fans did not recognize it as a NASCAR® themed program; 4) disabling the link between the Nutzz.com website and the Nutzz Elite enrollment page; 5) modifying the Itsnutzz.com website to redirect Nutzz Elite members to the FastTrack Savings program benefits page; 5) misrepresenting to Nutzz the parties' obligations under the Agreement; 6) refusing to discuss with Nutzz the process for conveying that it needed to tie its points system to members' activity in the Nutzz Elite program; and 7) waiting to market the Nutzz Elite program until after it had decided to terminate the Agreement with Nutzz, all documents that evidence, support, or tend to negate these claims, including, but not limited to, the March 24, 2005 e-mail referenced in the August 4, 2005 Notice of Intention to Arbitrate.

**Response:**  Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

43.    All documents concerning or referring to the parties' obligations under the Agreement.

**Response:**  Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

44.     All documents constituting, concerning or referring to any effort to tie the Nutzz points system for the online auction to members' activity in the Nutzz Elite program.

**Response:**   Meshkin objects to this request to the extent it is overly broad and burdensome. Meshkin will not endeavor to search for programming or other associated technical records. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for non-privileged documents responsive to the balance of the request.

45.     To the extent that you claim that Vertrue infringed at trade secret under the Delaware Uniform Trade Secret Act, 6 Del. C. § 2001(s) and/or the Connecticut Uniform Trade Secret Act, § 35-51b, all documents that evidence, support, concern, or refer to this claim.

**Response:**   Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

46.     All documents constituting, concerning or referring to the trade secrets of Nutzz or any Bang Affiliate that you contend Vertrue had any access to or otherwise misused, including, but not limited to, all communications in which such trade secrets, in whole or in part, are discussed with or disclosed to any other person or entity.

**Response:**   Meshkin objects to this request to the extent this information is contained on computer files, and the specific factual information contained therein is irrelevant. Meshkin has produced or will produce or otherwise identify the categories of information collected that constitute protectable trade secrets.

47.     To the extent that you claim that Vertrue breached Section 26 of the Agreement, all documents that evidence, support, or tend to negate this claim.

**Response:**   Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

48.     All documents constituting, concerning, or referring to any communication, correspondence, court or arbitration filing, or other disclosure of the existence of the Agreement, or any part of the Agreement, to person, entity, court, or tribunal not a party to the Agreement by or on behalf of you, Nutzz, or any Bang Affiliate.

15

**Response:** Meshkin objects to this request to the extent it is unintelligible. To the extent Meshkin can ascertain what is being requested, it appears to be irrelevant and immaterial to the claims or defenses asserted in this litigation.

49.    All documents created, received, or maintained by you, Nutzz or any Bang Affiliate concerning, relating to, or as a result of the Agreement, or any person's or entity's effort to perform under the Agreement.

**Response:** Any and all non-privileged documents responsive to this request that are in Meshkin's possession solely in his individual capacity will be produced.

50.    All documents created, received, or maintained by you, Nutzz, or any Bang Affiliate concerning, relating to, or as a result of any effort to create, staff, finance, maintain, sponsor, or obtain sponsorship for, or race a car, truck, driver and/or team in any NASCAR® race or series of races, including, but not limited to, all documents referring to the ability or inability of that team to race at any time.

**Response:** Meshkin objects to this interrogatory as overly broad and burdensome. Meshkin will only undertake an investigation of documents responsive to this request to the extent they relate to Nutzz's performance under the Agreement.

51.    All documents that identify every office, facility, or other location from which the operations of Nutzz and each Bang Affiliate has been performed, including but not limited to, documents identifying the current address of Nutzz and each Bang Affiliate.

**Response:** Meshkin objects to this request as being immaterial. Notwithstanding its general and specific objections, Meshkin will undertake a reasonable search for responsive, non-privileged documents as it relates to Nutzz's performance under the Agreement.

52.    All documents constituting, concerning, or referring to any patent application or issued patent applied for in your name or the name of Nutzz or any Bang Affiliate.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin will not search for documents potentially responsive to this request. All documents

16

constituting, concerning, or referring to the assignment, license, sale, or transfer of any rights in

any patent application or issued patent by or to Meshkin, Meshkin, or any Bang Affiliate.

53.   All documents constituting, concerning, or referring to the assignment, license, sale, or transfer of any rights in any patent application or issued patent by or to you, Nutzz, or any Bang Affiliate.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the

discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation.

Meshkin will not search for documents potentially responsive to this request.

54.   All documents that identify any accountant or bookkeeper that has, in whole or in part, prepared any personal financial statement for you, any personal tax return for you, or any financial statement or tax return for Nutzz or any Bang Affiliate.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the

discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation.

Meshkin will not search for documents potentially responsive to this request.

55.   All documents constituting, concerning, or referring to any loan applications or other agreements, including, but not limited to, any communications or other documents concerning or referring to such agreements documents between Meshkin, Nutzz, or any Bang Affiliate and Southtrust Bank.

**Response:** Meshkin objects to this request as being immaterial, not likely to lead to the

discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation.

Meshkin will not search for documents potentially responsive to this request.

\*       \*       \*

/s/ Michael P. Foley, Jr.
Michael P. Foley, Jr.
Michael P. Foley, Jr., P.C.
1120 S. Main Street
P.O. Box 814
Cheshire, CT 06410
Telephone: (203) 250-7212
Fed Bar No. CT00172
    *Attorneys for Defendant*

Of Counsel:
Sean J. Bellew (PHV0884)
David A. Felice (PHV0883)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

18

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on April 20, 2006, I caused copies of the

forgoing to be delivered to the following counsel of record, as indicated:

*By First Class Mail*
William E. Murray, Esquire
Edwards Angell Palmer & Dodge LLP
90 State House Square, 9th Floor
Hartford, CT 06103


David A. Felice (PHV0883)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
E-mail: dfelice@cozen.com

Exhibit E

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERTRUE INCORPORATED, | CIVIL ACTION NO.: 05-CV-1809-PCD |
| Plaintiff, | |
| v. | |
| ALEXANDER B. MESHKIN, | |
| Defendant. | MAY 4, 2006 |

## **PLAINTIFF'S EMERGENCY MOTION TO COMPEL DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37(a) and D. Conn. L. Civ. R. 37(a)(3) ,

Plaintiff Vertrue Incorporated f/k/a MemberWorks Incorporated ("Vertrue") moves for an order

compelling Defendant Alexander B. Meshkin ("Meshkin") to provide documents in response to

Requests 9, 10, 17 through 19, 24, 29, 30, 32, 33, and 52 through 55 of Vertrue's First Request

For The Production Of Documents To Alexander B. Meshkin (the "Request") and, in producing

such documents, to produce them without regard to the capacity in which he purports to obtain

possession, custody, or control of them.

Meshkin has refused to produce documents that would confirm the accuracy of, or

establish the inaccuracy of, various representations he made to Vertrue and upon which Vertrue

**EXPEDITED ORAL ARGUMENT REQUESTED**

relied in entering into and performing an agreement with Nutzz.com, LLC ("Nutzz.com") and Bang Racing, LLC ("Bang Racing"). Meshkin has also refused to produce documents that would reveal the nature of the interconnected entities that are the Bang Affiliates[1], information that is central to Vertrue's bid to pierce the corporate veil and hold Meshkin personally liable for the $1.25 million advanced to Nutzz.com under the parties' Agreement. Meshkin is withholding such documents on the grounds that (1) he possesses such documents in a capacity other than the personal capacity in which he is a party to this suit and thus need not produce them, and (2) such information is not relevant to the issues before this Court. He does so, however, in the face of claims asserting that the Defendant, by misrepresenting his personal financial status and that of the companies that he controls, fraudulently induced Vertrue to enter into an agreement and advance $1.25 million to Defendant.

Vertrue seeks emergency treatment of this Motion because Meshkin is hiding behind these invalid objections in an effort to derail no less than seven depositions scheduled to take place around the country between March 15 and 25, 2006. The depositions in question are of Meshkin, insiders and agents of his various companies, and entities with which Meshkin and/or his companies have done business. At these depositions, Vertrue hopes to explore a number of topics related to the misrepresentations that form the basis for this action. For example, Vertrue intends to question Meshkin and his present and former colleagues concerning the past and present financial state of Nutzz.com, Bang Racing, and the Bang Affiliates. Without the benefit

---

[1] This term is defined in Vertrue's document requests to refer to any of the following, whether individually or in combination with any other of the following: Bang Holdings, LLC; Bang, LLC; Bang! LLC; Bang Racing, LLC; Bang! Racing LLC; Key Age Ventures, LLC; MCS Racing Ventures, LLC; Bang Technology LLC; Bang! Technology LLC; Artsmen, LLC; Bang Properties, LLC; Bang Racing-NCTS, LLC; Bang Racing-NNCS, LLC; Bang Promotions, LLC; Bang Seed Investment Group; Key Age Ventures, LLC; and GP&C, and any of their officers, directors, members, agents, attorneys, employees, representatives, parents, subsidiaries and affiliates.

HFD_534514_1

of the documents that Meshkin is refusing to produce, Vertrue will be unable to fully prepare for these depositions and will not be able to fully explore the necessary topics at the scheduled depositions. Vertrue will potentially, therefore, be required to revisit each and every deposition after it receives the documents. Such duplication would force the parties to incur unnecessary expense and would inject unnecessary delay into the proceedings.

Vertrue is adamantly opposed to rescheduling these deposition as its was a monumental task to get them scheduled in the first instance. Moreover, many of the witnesses are not within the control of Meshkin and their depositions may be difficult to reschedule in a timely fashion. Finally, as demonstrated by Meshkin's bad-faith objections and prior pattern of conduct, the primary motivation behind his litigation strategy is to delay resolution of the claims against him and thus continue to hold on to the $1.25 million that Vertrue advanced to him as long as possible. He should not be allowed to abuse the discovery process in this fashion.

Vertrue's counsel has conferred with Meshkin's counsel in a good faith effort to resolve by agreement the issues presented herein without the intervention of the Court, but has been unable to reach such a resolution. See Declaration of Steven M. Cowley in Support of Plaintiff's Emergency Motion to Compel, attached hereto as Exhibit A.

In support of its motion, Vertrue submits the accompanying memorandum of law.

HFD_534514_1

Dated at Hartford, Connecticut this 4th day of May, 2006.

THE PLAINTIFF,
VERTRUE INCORPORATED

BY _____

William E. Murray, Esq. (ct19717)
Edwards Angell Palmer & Dodge LLP
90 State House Square, 9th Floor
Hartford, CT 06103
(860) 525-5065
(860) 527-4198 (Fax)


OF COUNSEL
Steven M. Cowley, Esq.
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

Its Attorneys

- 4 -

HFD_534514_1

## CERTIFICATION OF SERVICE

This shall certify that a copy of the foregoing was sent via email, on the 4th day of May, 2006 to the following:

Michael P. Foley, Jr.
1120 South Main Street
P.O. Box 814
Cheshire, CT  06410-0814
(203)250-0363

Sean Bellew
David A. Felice
Cozen O'Connor
909 Third Avenue
New York, NY  10022
(302)295-2013

William E. Murray

HFD_534514_1

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERTRUE INCORPORATED, | CIVIL ACTION NO.: 05-CV-1809-PCD |
| Plaintiff, | |
| v. | |
| ALEXANDER B. MESHKIN, | |
| Defendant. | MAY 4, 2006 |

## DECLARATION OF STEVEN M. COWLEY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO COMPEL DISCOVERY

1. I am over the age of 18, and I understand the obligation of an oath.

2. I am counsel for Plaintiff Vertrue Incorporated ("Vertrue") in the above-captioned action.

3. I make this declaration pursuant to *Fed. R. Civ. P.* 37 and *D. Conn. L. Civ. R.* 37(a)(2) and in connection with Plaintiff's Emergency Motion to Compel Discovery (the "Motion").

4. The statements in this declaration are based upon my personal knowledge.

5. On Friday, April 28, 2006, I participated in a telephone conference with counsel for Defendant Alexander B. Meshkin ("Meshkin") as required by *Fed. R. Civ. P.* 37 (a) (2) (B) to attempt to resolve the disputes regarding Vertrue's First Request For The Production Of Documents To Alexander B. Meshkin (the "Discovery") that are presented in the Motion and the accompanying memorandum of law.

6.     Thereafter, I communicated with Meshkin's counsel in further attempts to resolve any disputes regarding the Discovery.   Despite the aforementioned attempts, I was unable to reach resolution of the disputes concerning the Discovery that are presented in the Motion and the accompanying memorandum of law.

7.     As set forth above, counsel for Vertrue has conferred with Meshkin's counsel in a good faith effort to resolve by agreement the disputes concerning the Discovery without the intervention of the Court but has been unable to reach such an agreement.

8.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated at Boston, Massachusetts this 4th day of May, 2006.

Steven M. Cowley

HFD_HFD_163502_1.DOC/WMURRAY

Exhibit F

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VERTRUE INCORPORATED,<br>　　　Plaintiff, | : | |
| | : | |
| | : | |
| 　　　　-vs- | : | Civil No.  3:05cv1809 (PCD) |
| | : | |
| ALEXANDER B. MESHKIN,<br>　　　Defendant. | : | |
| | : | |

### RULING ON PLAINTIFF'S EMERGENCY MOTION TO COMPEL

Plaintiff moves, pursuant to Federal Rule of Civil Procedure 37(a) and District of

Connecticut Local Civil Rule 37(a)(3), for an order compelling Defendant to provide documents

in response to Requests 9, 10, 17 through 19, 24, 29, 30, 33 and 52 through 55 of Plaintiff's First

Request for the Production of Documents and, in producing such documents, to produce them

without regard to the capacity in which he purports to obtain possession, custody or control of

them and for an order compelling Defendant to produce documents that his counsel retrieved

from Melissa Colley, Nutzz.com, LLC's bookkeeper, after Plaintiff had issued a subpoena duces

tecum requesting production of those very documents.

Defendant objects on the basis that: (1) Defendant cannot be compelled, in a personal

capacity, to produce documents of corporate entities for which he works and/or maintains an

ownership interest, arguing that even if the documents are discoverable, they are not his personal

documents to produce and Plaintiff cannot request them from him personally and (2) Plaintiff's

discovery requests are nothing more than a "fishing expedition" commenced in the hopes of

deflecting attention from Nutzz's claims against Plaintiff in the arbitration proceeding.

For the reasons set forth herein, Plaintiff's Emergency Motion to Compel Discovery

[Doc. No. 54] and Emergency Motion to Compel Production of Colley Documents [Doc. No. 56]

will be **granted**.

## I. BACKGROUND

The instant action is the third of five separate proceedings.[1] According to Plaintiff, it is

also the third action in which Plaintiff currently seeks to compel Defendant to produce

responsive documents. The facts relevant to this action were discussed at length in this Court's

Ruling on Defendant's Motion to Dismiss, see Vertrue Inc. v. Meshkin, No. 3:05cv1809 (PCD),

2006 U.S. Dist. LEXIS 24844, at *1-13 (D. Conn. Apr. 27, 2006), and accordingly, only those

facts relevant to these two motions will be discussed here.

Regarding Plaintiff's Emergency Motion to Compel Discovery, Plaintiff claims that it

served its First Requests for Production of Documents to Alexander B. Meshkin ("First Requests

for Production") upon Defendant's counsel on March 17, 2001 via facsimile and Federal

Express. See Pl's Mem. Supp. Mot. Compel [Doc. No. 55] at 4, Exh. A at 16. Defendant served

Meshkin's Responses to Plaintiff's First Request ("Responses") upon Plaintiff on April 20,

2006—one day after the deadline for timely service of such a response. See id., Exh. B at 19.

The parties' counsel conferred on April 28, 2006 to address Defendant's objections as set forth in

his Responses, however, they were unable to reach agreement on a number of issues.

---

[1]     A lawsuit filed in the Chancery Court in and for New Castle County, Delaware (the "Delaware
Lawsuit") was the first action. Subsequently, on August 4, 2005, Nutzz.com initiated an
arbitration proceeding pursuant to Section 13 of the Agreement between Memberworks
Incorporated (Vertrue's predecessor company) and Nutzz.com. The instant action was initiated in
this Court on November 28, 2005, with the filing of a Notice of Removal pursuant to 28 U.S.C. §
1441(b). The fourth action is a Bill of Discovery brought pursuant to *Practice Book* § 13-9
(Docket No. FST-CV-05-400688-S). The fifth and final action, filed in Delaware Chancery Court,
is a petition to appoint a receiver to oversee Nutzz.com and Bang Racing, Vertrue Inc. v.
Nutzz.com, LLC and Bang Racing, LLC, C.A. No. 1719-N.

Regarding Plaintiff's Emergency Motion to Compel Production of Colley Documents, Plaintiff asserts the following facts. In connection with the first action pending in Delaware Chancery Court, Plaintiff's counsel first requested production of Nutzz.com's financial statements on May 2, 2005. Pl's Mem. Supp. Mot. Compel [Doc. No. 58] at 4, Exh. A.  On April 24, 2005, Nutzz.com's counsel responded to the request by stating that "Nutzz will produce the documents responsive to this request that are currently in its possession." Id., Exh. B. Because Defendant and Nutzz.com had requested expedited discovery and an expedited hearing on their Motion for Preliminary Injunction, Plaintiff's counsel demanded immediate production of the financial statements or delay of the expedited hearing, representing to defense counsel that if one of the options was not agreed to, he would file a motion in Delaware Chancery Court seeking appropriate relief. Plaintiff represents that "[i]t was under that specific threat that Nutzz.com's counsel disclosed that Nutzz.com kept no financial records and thus could not and would not produce any." Id. at 5.  Faced with that representation, Plaintiff filed no motion to compel and proceeded with the expedited hearing on May 23, 2005.

Plaintiff filed a second action in Delaware Chancery Court on October 13, 2005, this time seeking to appoint a receiver to oversee the operations of Nutzz.com.  At the February 23, 2006 hearing on Nutzz.com's motion to dismiss that action, one of Plaintiff's principal arguments for the appointment of a receiver centered on Nutzz's failure to properly manage its operations, as evidenced by its apparent failure to maintain financial records. Plaintiff contends that at this hearing, Nutzz.com changed its position and stated that it did maintain financial records but had failed to produce them in connection with the Delaware litigation because it was not possible to do so within the time constraints of the expedited proceedings.  Id.

3

A similar exchange took place during this Court's March 13, 2006 hearing on Defendant's Motion to Dismiss. Plaintiff again noted Nutzz's failure to maintain financial records and defense counsel maintained that he had never made such a representation. Defendant's counsel represented that Nutzz.com did have financial records and that its failure to produce them in connection with the Delaware Chancery Court matter had been due to the expedited nature of the proceedings.

More recently, in April of 2006, Plaintiff became aware of another case filed against one of Defendant's entities in North Carolina by Travis Kvapil, a former driver for Defendant's NASCAR® racing team. Kvapil's counsel, Attorney Bray, informed Plaintiff's counsel that he had received production of Defendant's financial records in his action and directed Plaintiff to Melissa Colley, the bookkeeper for Nutzz.com.

In light of this information, on April 12, 2006, Plaintiff served a Notice of Deposition of Melissa Colley on counsel to Defendant and issued a Subpoena duces tecum on Ms. Colley seeking production of financial documents related to Defendant and his various companies. See id. at 6; Murray Decl. at Exh. 1. Defendant's counsel, however, contacted Ms. Colley on April 11, 2006 to reclaim from her all of Nutzz's and Meshkin's financial records. See Murray Decl. According to Ms. Colley, she informed Defendant's counsel that the financial records had been sent to Kinko's for copying and production in the Kvapil case and had not been reclaimed. She directed him to Kinko's for retrieval and authorized the retrieval. Ms. Colley also produced to Defendant's counsel all electronic copies of Defendant's companies books and records. Accordingly, Ms. Colley is not now in possession of the documents and is unable to produce them in anticipation of her May 18, 2006 deposition.

4

Plaintiff represents that Plaintiff's counsel has conferred with Defendant's counsel in a good faith effort to resolve the issued presented in this motion. See Murray Decl. On April 27, 2006, Plaintiff's counsel wrote to Defendant's counsel to set forth Plaintiff's concerns about the interception of the Colley documents and to request a conference on the issue. During a telephone conference on April 28, 2006, defense counsel orally agreed to produce all non-privileged Colley documents along with a privilege log on or before May 18, 2006. See id. ¶ 8. Plaintiff's counsel memorialized that agreement in an email dated April 29, 2006, however, Defendant's counsel failed to provide written confirmation. See id. ¶ 9. Plaintiff received Defendant's confirmation on May 5, 2006, however, in the confirmation, defense counsel agreed only to produce Colley documents that he deems "properly the subject of a discovery request," "discoverable" and "non-privileged." Id. ¶ 12. Defense counsel indicates that the documents will be produced on an unspecified date "in advance of Ms. Colley's deposition." Id. The confirmation does not mention a privilege log. Id.

In the arbitration proceeding, Nutzz has asserted claims against Plaintiff including, *inter alia*, numerous breaches of their Agreement, violations of Connecticut and Delaware statutes addressing unfair trade practices and misappropriation of trade secret information and seeks damages in excess of $10 million. Defendant asserts that since the beginning of the arbitration proceeding, Plaintiff "has pursued a defense strategy focused almost entirely on *ad hominem* attacks relating to Nutzz's founder, Chief Executive and owner," Defendant Meshkin. Def's Mem. Opp. at 3. Defendant asserts that Plaintiff, in the arbitration proceeding, served on Nutzz "wide-ranging document requests that called for production of, among other things, financial information and contracts of 17 non-party affiliated entities" as well as "highly sensitive personal

5

financial information of Meshkin." Id. at 4. Defendant asserts that these document requests were "identical" to the requests at issue here. Id. at 2. According to Defendant, the arbitration panel sustained Nutzz's objections to many of Plaintiff's discovery requests. Id. at 4 (citing Exh. E). Defendant contends that all that Plaintiff is attempting to do here is to obtain an order compelling the production of documents from Defendant that the arbitration panel would not allow Plaintiff to obtain from Nutzz. Id.

Plaintiff seeks emergency treatment of this motion due to the fact that there seven depositions scheduled to take place between May 15 and May 25, 2006. These depositions are of Defendant, insiders and agents of the various companies and entities with which Defendant and/or the companies have done business. At these depositions, Plaintiff intends to explore a number of topics related to the alleged misrepresentations that form the basis of this action. Plaintiff asserts that without the documents requested, it will be unable to fully prepare for the depositions and will not be able to fully explore the necessary topics at the scheduled depositions, possibly requiring the depositions to be performed again and/or rescheduled. According to Plaintiff, it was "a monumental task" to get the depositions scheduled in the first instance. See Pl's Mot. Compel [Doc. No. 54] at 2-3.

**I. DISCUSSION**

### A.    Timely Service of Responses

Plaintiff first argues that because Defendant's Responses were served one day later than the thirty days provided for by Federal Rule of Civil Procedure 34, all of Defendant's objections set forth therein should be stricken. As a general rule, when a party fails to timely file objections to document requests, that failure constitutes a waiver of any objections that party may have had

6

to the requests. See In re United States, 864 F.2d 1153, 1156 (5th Cir. 1989); Krewson v. City of

Quincy, 120 F.R.D. 6, 7 (D. Mass. 1988) (citing cases). Rule 34 gives a party thirty days in

which to prepare and serve their response to a request for the production of documents. Fed. R.

Civ. P. 34(b). Additionally, Rule 6 grants the party an additional three days if service is not

accomplished by hand delivery. Fed. R. Civ. P. 6(e); 5(b)(2). Because Plaintiff did not serve

Defendant by hand delivery, Defendant had thirty-three days to respond. Defendant served his

responses within thirty-four days. The responses were technically served late, however, in the

interest of fairness, Defendant's objections will be considered.

**B.    Whether Plaintiff is Entitled to the Production of Documents of Non-Party
        Corporate Entities from Defendant**

Defendant argues that he cannot, in an action where he is sued in his personal capacity, be

required to produce documents of companies with which he is involved, as doing so would

"ignore the distinct identities of the entities." Def's Mem. Opp. at 7. Federal Rule of Civil

Procedure 34 requires only the production of documents in the "possession, custody, or control"

of the person to whom the subpoena is directed. Defendant contends that the fact that he may

have *access* to the requested documents does not necessary mean that they are within his

"possession, custody or control." Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 821 (5th

Cir. 2004). "Control" has been regarded as the "relevant test" with regard to the production of

documents, such that regardless of possession, a party must produce documents that it has the

right, authority, or ability to obtain upon demand. Searock v. Stripling, 736 F.2d 650, 653 (11th

Cir. 1984); see also Scott v. Arex, Inc., 124 F.R.D. 39, 41 (D. Conn. 1989) (holding that the

defendant, the owner of a corporation, must produce the tax returns and payroll information of

7

that corporation in spite of his objection that he was representing only himself and not any corporations).

Plaintiff argues that Defendant's objection on this basis should be disregarded because "he has control over and is the alter ego of Nutzz.com and Bang Racing." Pl's Mem. Supp. Mot. Compel [Doc. No. 55] at 5. Defendant maintains that to force him to produce the documents would, in effect, require a ruling from this Court that Defendant is the alter ego of the entities at issue, a conclusion that cannot be made without a fully-developed record.

Although Nutzz.com and Bang Racing are not parties to this action, Plaintiff asserts that Defendant is the only known representative of the companies and is believed, as principal shareholder and Chief Executive Officer, to exercise exclusive control over their corporate records. One way to ascertain whether the Defendant has control over and is the alter ego of the companies is by examining the documents of these companies. Defendants' argument that he cannot be compelled to produce documents for corporate entities with which he is associated is without merit. Because this Court finds that Defendant has the "right, authority, or ability" to produce the documents requested, he is hereby ordered to do so.

**C.    Relevance of the Documents Requested by Plaintiff to its Claims**

Defendant objected to Plaintiff's Requests 9, 10, 17 through 19, 24, 29, 30, 32, 33 and 52 through 55, stating:

> Meshkin objects to this request as being immaterial, not likely to lead to the discovery of admissible evidence, nor relevant to any claim or defense asserted in this litigation. Meshkin will not search for any documents potentially responsive to this request.

Pl's Mem. Supp. Mot. Compel [Doc. No. 55] at 10-13, Exh. B. Plaintiff argues, however, that

8

the documents sought in those requests "relate directly to representations made by Defendant upon which Plaintiff relied in entering into the agreement with Nutzz.com and Bang Racing or would reveal the nature of the interconnected entities that represent Defendant's companies." Id. at 8.

"[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir.1992) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome . . . [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). An order compelling discovery may be tailored to the circumstances of the case. Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir.1996).

Document Requests 17, 18, 29, 30, 32, 33, 52, 53, 54 and 55 all seek documents relating to the financial status, assets and liabilities of Meshkin, Nutzz.com and the Bang Affiliates and specifically seek evidence demonstrating that Meshkin, Nutzz.com and the Bang Affiliates did not have the financial wherewithal that Defendant claimed. Plaintiff also believes that the documents requested may provide insight into exactly what happened to Plaintiff's $1.25 million

9

advance and any other money the companies took in during the course of the Agreement. Based on a review of the document requests at issue and Plaintiff's representations, this Court finds that the documents requested are relevant to, or could lead to evidence relevant to, claims at issue in this litigation. Accordingly, Defendant is hereby ordered to produce documents in response to Requests 9, 10, 17 through 19, 24, 29, 30, 32, 33 and 52 through 55 of Plaintiff's First Requests for Production.

### D.    Production of Colley Documents

A party served with a subpoena duces tecum pursuant to Federal Rule of Civil Procedure 45 is obligated to produce all responsive documents within their "possession, custody or control." Fed. R. Civ. P. 45(a)(1)(C). The documents sought from Ms. Colley—i.e., all financial records, general ledgers, profit and loss statements, cash flow statements and balance sheets relating to Defendant and the companies—are clearly relevant to Plaintiff's claims in this action. Moreover, the evidence shows that before Defendant's counsel obtained these documents from Ms. Colley, they were within her possession, custody and control and therefore, she would have been obligated to produce them pursuant to the subpoena. Plaintiff has also requested and been unable to obtain these documents from Defendant in the related actions. Regardless of the reasons why Defendant's counsel retrieved the documents from Ms. Colley, it is clear that they are now in Defendant's "possession, custody or control" and are relevant to the claims in this lawsuit. Accordingly, Plaintiff's Motion to Compel is granted and Defendant is hereby ordered to produce said documents in their entirety so as to allow the deposition of Ms. Colley to go forward as intended.

## II. CONCLUSION

10

For the foregoing reasons, Plaintiff's Motion to Compel Discovery [Doc. No. 54] and

Motion to Compel Production of Colley Documents [Doc. No. 56] are **granted**.  Defendant shall

produce the documents referenced herein on or before Friday, May 12, 2006.[2]

SO ORDERED.

Dated at New Haven, Connecticut, May 10, 2006.

/s/_____

Peter C. Dorsey
United States District Judge

---

[2]     Although this does require immediate production, Defendant's counsel was informed several times
in the preceding week that if this Court were to grant Plaintiff's motions and require production,
production would be required on or before May 12 in light of the scheduled depositions.

11

Exhibit G

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERTRUE INCORPORATED, | CIVIL ACTION NO.: 05-CV-1809-PCD |
| Plaintiff, | |
| v. | |
| ALEXANDER B. MESHKIN, | |
| Defendant. | JUNE 12, 2006 |

### PLAINTIFF'S EMERGENCY MOTION SEEKING SANCTIONS

Pursuant to Federal Rule of Civil Procedure 37(b) and D. Conn. L. Civ. R. 37(a)(3) ,

Plaintiff Vertrue Incorporated ("Vertrue") moves for an order imposing sanctions on Defendant

Alexander B. Meshkin ("Meshkin") for his failure to fully comply with an Order of this Court

dated May 10, 2006 (the "May 10 Order"), which granted Plaintiff's Emergency Motion to

Compel Discovery dated May 4, 2006.

Meshkin has engaged in a pattern of delaying tactics designed to frustrate Plaintiff's

attempts to obtain relevant documents to which it has a right. Meshkin's direct violation of an

Order of this Court is only the latest and boldest example of his bad faith regarding document

production. Subsequent to receiving the May 10 Order, Meshkin provided Plaintiff with a

supplemental document production. This production fell far short of the requirements of the

May 10 Order. Meshkin was required to produce certain financial information pertaining to a)

**EXPEDITED ORAL ARGUMENT REQUESTED**

- 1 -

himself, and b) his various affiliated corporate entities, by May 12, 2006. Of particular interest

for the purpose of Meshkin's upcoming deposition, Meshkin was required to produce documents

responsive to Request 17 and Request 18 of Plaintiff's First Request For The Production Of

Documents To Alexander B. Meshkin dated March 17, 2001:

> **REQUEST NO. 17:** All documents constituting, concerning or referring to the
> financial records of each of the Bang Affiliates, including, but not limited to,
> income statements, profit and loss statements, balance sheets, revenue data,
> expense data, cash flow reports, results from operations, budgets, forecasts,
> business plans, or any other documents reflecting financial status, assets,
> liabilities, income, cash flow, or results from operations from January 1, 2000 to
> the present.

> **REQUEST NO. 18:** All documents constituting, concerning or referring to your
> financial records, including, but not limited to, income statements, profit and loss
> statements, balance sheets, revenue data, expense data, cash flow reports, results
> from operations, budgets, forecasts, business plans, tax returns, or any other
> documents reflecting financial status, assets, liabilities, income, cash flow, or
> results from operations from January 1, 2000 to the present.

The date range in these two requests, confirmed by the May 10 Order, were from January 1,

2000 to the present. Instead, Meshkin only produced certain classes of documents (general

ledgers) for certain of his corporate entities (the "Bang Affiliates" mentioned in Request No. 17),

with no documents predating July 16, 2004. Meshkin has not produced *any* financial documents

respecting his personal finances in response to the May 10 Order.

Meshkin's deposition, already rescheduled once, is due to take place on June16, 2006.

Without the financial documents that this Court ordered Meshkin to produce, Plaintiff will be

unable to conduct a complete deposition. An order of sanctions likely is the only way to

convince Meshkin to comply with this Court's Order. To that end, Plaintiff is seeking sanctions

in the form of a penalty of $1,000 per day for each day beyond this Court's previously imposed

-2-

May 12 deadline to be levied against Meshkin, until such time as Meshkin produces all of the documents required by the May 10 Order. Plaintiff additionally seeks its attorneys costs and fees associated with the making of this Motion.

Plaintiff seeks emergency treatment of this Motion because Meshkin's deposition is supposed to take place on June 16, and Plaintiffs are unable to fully prepare without the documents that Meshkin has withheld in a direct violation of a clear Order of this Court.

Vertrue's counsel has conferred with Meshkin's counsel in a good faith effort to resolve by agreement the issues presented herein without the intervention of the Court, but has been unable to reach such a resolution. See Letter dated June 2, 2006, from counsel for Plaintiff to counsel for Meshkin, attached hereto as Exhibit A.

In support of its motion, Vertrue submits the accompanying memorandum of law.

Dated at Hartford, Connecticut this 12th day of June, 2006.

THE PLAINTIFF,
VERTRUE INCORPORATED

BY _____

William E. Murray, Esq. (ct19717)
Edwards Angell Palmer & Dodge LLP
90 State House Square, 9th Floor
Hartford, CT 06103
(860) 525-5065
(860) 527-4198 (Fax)

PRO HAC VICE
Steven M. Cowley, Esq. (ct20505)
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

Its Attorneys

- 4 -

## CERTIFICATION OF SERVICE

This shall certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on the 12th day of June, 2006 to the following:

**David A. Felice**
Cozen O'Connor-DE
Chase Manhattan Centre
1201 North Market Street
Suite 1400
Wilmington, DE 19801
Phone: 302-295-2011
Fax: 302-295-2013
Email: dfelice@cozen.com

**Sean J. Bellew**
Cozen O'Connor-DE
Chase Manhattan Centre
1201 North Market Street
Suite 1400
Wilmington, DE 19801
Phone: 302-295-2026
Fax: 302-295-2013
Email: sbellew@cozen.com

**Kevin F. Berry**
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
Phone: 215-665-4611
Fax: 215-701-2343
Email: kberry@cozen.com

**Michael P. Foley, Jr.**
1120 South Main St., P.O. Box 814
Cheshire, CT 06410-0814
Phone: 203-250-7212
Fax: 203-250-0363
Email: mpfesq@aol.com

**Russ A. Brinson**
Cozen O'Connor
301 South College Street, Suite 2100
Charlotte, NC 28202
Phone: 704-376-3400
Fax: 704-334-3351
E-mail: rbrinson@cozen.com

William E. Murray

**Exhibit H**

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

VERTRUE INCORPORATED,      :
    Plaintiff,           :
                             :
       -vs-           :     Civil No.  3:05cv1809 (PCD)
                             :
ALEXANDER B. MESHKIN,   :
    Defendant.         :

### ORDER

Plaintiff moves, pursuant to Federal Rule of Civil Procedure 37(b) and District of

Connecticut Local Rule 37(a)(3), for an order imposing sanctions on Defendant for his failure to

comply with an Order of this Court dated May 10, 2006 (the "May 10 Order"), which granted

Plaintiff's Emergency Motion to Compel Discovery.  Plaintiff's Emergency Motion Seeking

Sanctions [Doc. No. 87] is **granted in part** and **denied in part**.

Accepting Plaintiff's representations as true and in light of the deposition scheduled for

Friday, June 16, 2006, this Court hereby orders Defendant to provide the full compliance flagged

in Plaintiff's motion to be lacking on or before Wednesday, June 14, 2006 at 5:00 p.m.[1]

Defendant should file with the Clerk, on or before June 14, 2006 at 5:00 p.m., a certification of

compliance, absent which the sanctions sought in Plaintiff's Emergency Motion will be

considered without a further motion.

SO ORDERED.

Dated at New Haven, Connecticut, June 12, 2006.

---

[1]    Plaintiff represents that Defendant has failed to produce all documents responsive to Requests 17 and 18 of Plaintiff's First Request for Production, and specifically, has failed to produce any financial documents regarding his personal finances in response to the May 10 Order. (Pl's Mot. Sanctions 2.)

/s/

Peter C. Dorsey, U.S. District Judge
District of Connecticut

2

**Exhibit I**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERTRUE INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER B. MESHKIN,<br><br>Defendant. | CIVIL ACTION NO.: 05-CV-1809-PCD<br><br><br><br><br><br>JUNE 16, 2006 |

### PLAINTIFF'S EMERGENCY MOTION SEEKING SANCTIONS

Pursuant to Federal Rule of Civil Procedure 37(b) and D. Conn. L. Civ. R. 37(a)(3),

Plaintiff Vertrue Incorporated ("Vertrue") moves for an order imposing sanctions on Defendant

Alexander B. Meshkin ("Meshkin") and Meshkin's counsel for the failure to fully comply with

multiple Orders of this Court. First, Meshkin has failed to comply with this Court's May 10,

2006 Order (the "May 10 Order"), which granted Plaintiff's Emergency Motion to Compel

Discovery dated May 4, 2006. Meshkin has now failed to comply with this Court's June 12,

2006 Order (the "June 12 Order"), which ordered Meshkin to fully comply with the May 10

Order on or before June 14, 2006. Meshkin's counsel has facilitated Meshkin's non-compliance.

Meshkin has engaged in a pattern of delaying tactics designed to frustrate Plaintiff's

attempts to obtain relevant documents to which it has a right. Meshkin's direct violation of the

June 12 Order of this Court is only the latest and boldest example of his bad faith regarding

**EXPEDITED ORAL ARGUMENT REQUESTED**

HFD_541563_1

document production. Subsequent to receiving the original May 10 Order, Meshkin provided

Plaintiff with a supplemental document production. This production fell far short of the

requirements of the May 10 Order. Meshkin was required to produce certain financial

information pertaining to a) himself, and b) his various affiliated corporate entities, by May 12,

2006. When Meshkin failed to comply, Plaintiff filed an Emergency Motion Seeking Sanctions,

which resulted in the June 12 Order commanding Meshkin to produce documents in compliance

with the May 10 Order. In response to that June 12 Order, Meshkin produced a single bank

statement from May 2006 and IRS forms 4506-T requesting tax returns from 2000 to 2005.

      Meshkin has still failed to fully comply with this Court's May 10 and June 12 Orders. Of

particular interest for the purpose of Meshkin's deposition that is occurring today, Meshkin was

required to produce documents responsive to Requests 16, 17, and 18 of Plaintiff's First Request

for the Production of Documents to Alexander B. Meshkin dated March 17, 2001:

> **REQUEST NO. 16:** All documents constituting, concerning or referring to the financial records of Nutzz, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

> **REQUEST NO. 17:** All documents constituting, concerning or referring to the financial records of each of the Bang Affiliates, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

> **REQUEST NO. 18:** All documents constituting, concerning or referring to your financial records, including, but not limited to, income statements, profit and loss statements, balance sheets, revenue data, expense data, cash flow reports, results from operations, budgets, forecasts, business plans, tax returns, or any other documents reflecting financial status, assets, liabilities, income, cash flow, or results from operations from January 1, 2000 to the present.

Meshkin has only produced certain classes of documents (general ledgers) for certain of his

corporate entities (Bang Racing-NCTS, LLC, Bang Holdings, LLC, Artsmen, LLC, Bang, LLC,

Bang Properties, LLC, and Bang Racing, LLC).[1] Meshkin has failed to produce any of these

general ledgers for Nutzz.com or any other entity. Meshkin has also failed to produce financial

documents respecting his personal finances in response to the May 10 Order and the subsequent

June 12 Order—other than a single May 2006 bank statement.

Meshkin has also failed to produce copies of all settlement agreements with Nutzz.com or

any of the Bang Affiliates in accordance with Request No. 33, which reads as follows:

> **REQUEST NO. 33:** All documents constituting, concerning, or referring to any
> agreement settling, releasing, waiving, or otherwise addressing any claim or
> demand (whether asserted formally in a lawsuit or arbitration, or only informally
> in a communication) by or against you, Nutzz, or any of the Bang Affiliates.

Of particular interest to today's deposition of Alexander Meshkin are the settlement agreements

with Travis Kvapil and George Blacker and communications regarding the settlement agreement

with John Adalio, all of which Meshkin has failed to produce.

Meshkin has already impeded Plaintiff's ability to question him about the documents he

has failed to produce during his deposition—which is taking place today—June 16, 2006. The

fact that Meshkin has now failed to comply with multiple Orders of this Court demonstrates that

the only way to convince Meshkin to comply with this Court's Orders is to impose sanctions—

on both Meshkin and Meshkin's counsel. To that end, Plaintiff is seeking sanctions in the form

of a penalty of $35,000, to be paid immediately ($1000 for 35 days that have passed since May

12, 2006), plus $1,000 per day from today until such time as Meshkin produces all of the

---

[1] Plaintiff has received, as part of the production in the related lawsuit filed in the Chancery Court in and for New
Castle County, Delaware (the "Delaware Lawsuit"), C.A. No. 1231-N, certain bank statements for Bang Racing-
NCTS, LLC; Bang Holdings, LLC; Artsmen, LLC; Bang, LLC; Bang Properties, LLC; Bang Promotions; Bang
Technologies; Bang Racing, LLC; Key Age Ventures, and Nutzz.com. None of these bank statements provide
information after December 31, 2004 or before December 31, 2003. As part of that production, Plaintiff also
received what are labeled as profit and loss statements from January 2004 to July 2004 for Bang Racing, LLC.

HFD_541563_1

documents required by the May 10 Order and subsequent June 12 Order.  Plaintiff additionally

seeks its attorneys costs and fees associated with the making of this Motion, costs and fees

associated with making the original May 4, 2006 Emergency Motion to Compel Discovery, and

costs and fees associated with making the June 12 Emergency Motion Seeking Sanctions.

Plaintiff also seeks the entry of a specific finding that Meshkin is precluded from

introducing any evidence or argument in this case that would support claims that (a) Nutzz.com

or Bang Racing were solvent at any time relevant to this litigation; and (b) that Meshkin did in

fact sell his Internet company, itsnutzz.com, for millions of dollars in profit; and (c) that Meshkin

had financial resources, at any time relevant to this litigation, exceeding the $2000 represented

on the one bank account statement that he has produced.

Plaintiff seeks emergency treatment of this Motion because Meshkin's deposition is

taking place today—June 16, 2006, though it may be continued on another day, and Plaintiffs are

unable to adequately depose Meshkin without the documents that Meshkin has withheld in a

direct violation of clear Orders of this Court.

Vertrue's counsel has conferred with Meshkin's counsel in a good faith effort to resolve

by agreement the issues presented herein without the intervention of the Court, but has been

unable to reach such a resolution.  (See e-mail dated June 15, 2006, from counsel for Plaintiff to

counsel for Meshkin, attached hereto as Exhibit A.)

- 4 -

In support of its motion, Vertrue submits the accompanying memorandum of law.

THE PLAINTIFF,
VERTRUE INCORPORATED

BY_____

    John G. Stretton, Esq. (ct19902)
    William E. Murray, Esq. (ct19717)
    Edwards Angell Palmer & Dodge LLP
    90 State House Square, 9th Floor
    Hartford, CT 06103
    (860) 525-5065
    (860) 527-4198 (Fax)

    PRO HAC VICE
    Steven M. Cowley, Esq. (ct20505)
    Edwards Angell Palmer & Dodge LLP
    111 Huntington Avenue
    Boston, MA 02199
    (617) 239-0100

    Its Attorneys

HFD_541563_1

## CERTIFICATION OF SERVICE

This shall certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on the 16th day of June, 2006 to the following:

**David A. Felice**
Cozen O'Connor-DE
Chase Manhattan Centre
1201 North Market Street
Suite 1400
Wilmington, DE 19801
Phone: 302-295-2011

**Sean J. Bellew**
Cozen O'Connor-DE
Chase Manhattan Centre
1201 North Market Street
Suite 1400
Wilmington, DE 19801
Phone: 302-295-2026

**Kevin F. Berry**
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
Phone: 215-665-4611

**Michael P. Foley, Jr.**
1120 South Main St., P.O. Box 814
Cheshire, CT 06410-0814
Phone: 203-250-7212
Fax: 203-250-0363

**Russ A. Brinson**
Cozen O'Connor
301 South College Street, Suite 2100
Charlotte, NC 28202
Phone: 704-376-3400
Fax: 704-334-3351

_____
John G. Stretton

HFD_541563_1

# EXHIBIT A

**Steven Cowley**

06/15/2006 12:26 AM

To: "Felice, David A." <DFelice@cozen.com>
cc: EAndersonSpinney@eapdlaw.com, JCicero@EAPDLaw.com, "Berry,
    Kevin" <KBerry@cozen.com>, MDubnoff@eapdlaw.com, "Brinson,
    Russ" <RBrinson@cozen.com>, "Bellew, Sean"
    <SBellew@cozen.com>, WMurray@eapdlaw.com
Subject: Re: Vertrue v. Meshkin (D. Conn.)

Mr. Felice,

I recently learned that your office hand delivered a package of QuickBooks printouts (of the General
Ledger view) for the year ends 2000 through 2005. Thank you for sending them to the hotel.

Melissa Colley testified that she set up a Nutzz.com account on the companies' QuickBooks system. Why
is there no printout of any Nutzz.com QuickBooks data among any of the documents produced by Mr.
Meshkin?

Also, please identify the documents produced by Mr. Meshkin responsive to Vertrue's request no. 19 - i.e.,
documents concerning Surfbuzz.com.

Steven M. Cowley
617.951.2283  fax 888.325.9103

Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199 USA

Assistant: Muriel Randolph
        617.951.2240
        mrandolph@eapdlaw.com

www.eapdlaw.com

----- Forwarded by Steven Cowley/Boston/EALaw on 06/14/2006 11:53 PM -----

**Steven
Cowley**

06/14/2006
06:45 PM

To:    "Felice, David A." <DFelice@cozen.com>
cc:    EAndersonSpinney@eapdlaw.com, JCicero@EAPDLaw.com, "Berry, Kevin" <KBerry@cozen.com>,
       MDubnoff@eapdlaw.com, "Brinson, Russ" <RBrinson@cozen.com>, "Bellew, Sean" <SBellew@cozen.com>,
       WMurray@eapdlaw.com
Subject:    Re: Vertrue v. Meshkin (D. Conn.)Link

Mr. Felice,

Please explain why the companies' financial records, including bank statements, supporting transactional
documents (e.g., wire transfer requests, notices of insufficient funds, payroll records from ADP - or
otherwise - invoices, etc.) and Quickbooks data pre-dating mid-July 2004 and post-dating December 31,
2004 missing from the production originally ordered in response to request nos. 17 and 18 as a result of

Vertrue's motion to compel are not included in this supplemental production. Similarly, please explain why the Quickbooks data for Nutzz.com (which, as I explained to Mr. Brinson during the Colley deposition did not appear to have been produced along with the other mid-July through December 31, 2004 Quickbooks data) is omitted.

Also, the documents previously produced disclose that Mr. Meshkin maintained a Schwab account and at least one Keyage Ventures account during the relevant time period. Why are the records of those accounts omitted? Also, please confirm the steps Mr. Meshkin took to obtain responsive personal financial information from his accountant. I believe Ms. Colley identified him as a Mr. Teague, although I could be mistaken.


Steven M. Cowley
617.951.2283  fax 888.325.9103

Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199 USA

Assistant:  Muriel Randolph
            617.951.2240
            mrandolph@eapdlaw.com

www.eapdlaw.com


| | |
|---|---|
| **"Felice, David A."** <DFelice@cozen.com> | To:  <SCowley@eapdlaw.com>, <MDubnoff@eapdlaw.com>, <EAndersonSpinney@eapdlaw.com>, <JCicero@EAPDLaw.com>, <WMurray@eapdlaw.com> |
| | cc:    "Berry, Kevin" <KBerry@cozen.com>, "Bellew, Sean" <SBellew@cozen.com>, |
| 06/14/2006 05:00 PM | "Brinson, Russ" <RBrinson@cozen.com> |
| | Subject:    Vertrue v. Meshkin (D. Conn.) |


Counsel:

Attached is additional document production in the above-referenced case.

David


**David A. Felice**
Cozen O'Connor
1201 North Market Street
Wilmington, Delaware 19801
302-295-2011 (voice)
866-776-8911 (direct fax)

Notice: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service.

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.



meshkin.pdf

**Exhibit J**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VERTRUE INCORPORATED,            :
    Plaintiff,                          :
                          :
      -vs-                              :        Civil No.  3:05cv1809 (PCD)
                           :
ALEXANDER B. MESHKIN,            :
    Defendant.

### ORDER

Defendant's Certification dated June 14, 2006, and plaintiff's Motion for Sanctions [Doc. No. 91] dated June 16, 2006, prompts the following:

(1) Defendant shall, on or before June 30, 2006, deliver to plaintiff's counsel duly executed forms, satisfactory to the Internal Revenue Service, authorizing acquisition by plaintiff and its attorneys of defendant's income tax returns for 2000 through 2005, inclusive.  Plaintiff's cost of acquisition thereof shall be reimbursed by defendant with 7 days of proof thereof.

(2) The order of June 12, 2006 is purported to have been complied with, in regard of "Bang Associates" by the certification of compliance by production of copies of "all QuickBooks accounting files and over 3200 pages of bank statements, balance sheets, ledger accounts and other materials."  Nonetheless plaintiff asserts production was limited to "a single bank statement from May 2006 and IRS forms" and "general ledgers."  From a distance the Court is unable to be sure of the truth.  If, before June 30, 2006, plaintiff creates a record which unquestionably refutes defendant's full compliance, by an independent source, a default will enter.

(3) As defendant has not demonstrated compliance with plaintiff's March 17, 2001 First Request for Production, Request No. 16, pertaining to Nutzz, a default will enter.

(4) As defendant has not demonstrated compliance with plaintiff's March 17, 2001 First Request for Production, Request No. 18, pertaining to defendant's financial records, particularly

specified therein, a default will enter.

      5) As defendant has not demonstrated compliance with plaintiff's March 17, 2001 First Request for Production, Request No. 33, pertaining to documents pertaining to claims involving defendant and Travis Kvapil, George Blacker and John Adalio, as to which the prior court orders pertained inferentially and implicitly, a default will enter.

    If plaintiff can demonstrate that the foregoing noncompliance rendered defendant's deposition incomplete, on documentation of its costs and expenses related thereto, the Court will entertain a motion for further sanctions in the form of costs.

    If this case is to proceed further on its merits, absent a showing by defendant, on or before June 30, 2006, of production of documents demonstrative of (a) relevant solvency of Nutzz and/or Bang racing, (b) defendant's profit from his sale of "itsnutzz.com" and/or (c) defendant's relevant in time financial resources in excess of $2,000, defendant will be precluded, at trial, from making any claim, and/or offering evidence relevant to (a), (b) or (c) above.

    Any request for reconsideration of any aspect of the forgoing order, including the defaults entered, will not be considered unless supported by documentation from independent sources, under oath.

    SO ORDERED.

    Dated at New Haven, Connecticut this 19th day of June, 2006.

                           /s/
                       PETER C. DORSEY
              UNITED STATES DISTRICT JUDGE

2

# Exhibit K

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

VERTRUE INCORPORATED,              :    CIVIL ACTION NO.:
                                   :
          Plaintiff,               :    05-CV-1809-PCD
                                   :
v.                                 :
                                   :
ALEXANDER B. MESHKIN,              :
                                   :
          Defendant.               :
                                   :

DEPOSITION

OF

ALEXANDER B. MESHKIN

* * * * *

Taken By Plaintiff

Charlotte, North Carolina

June 16, 2006

* * * * *

Reported by:
LINDA D. CRANE, RPR
Registered Merit Reporter
Certified Realtime Reporter

Page 186

1  component. So I have no basis to give you a
2  delineation of the difference of the contract if
3  Nutzz.com was not a component.
4      Q.    Who got the money -- strike the question.
5          Were there other advertisers on the truck?
6      A.    Yes.
7      Q.    Who got the money from them?
8      A.    Mighty Motor Sports.
9      Q.    And if Nutzz.com didn't fill up space on
10  some portion of the truck, and advertising was sold
11  to someone else, who would have gotten the money?
12      A.    Can you rephrase that question?
13      Q.    If the spot on the truck where "Nutzz.com"
14  was shown was sold to some other advertiser, who would
15  have gotten that other advertiser's money?
16      A.    Mighty Motor Sports.
17      Q.    How much was Mighty Motor Sports selling
18  similar spots for on the truck to other advertisers?
19      A.    I don't know.
20      Q.    How much did Bang make under this contract?
21      A.    As I've already testified, I don't remember.
22  If the contract has not been produced, we'll make sure
23  it's produced, and you can look for yourself.
24      Q.    Has Bang prepared tax returns for 2005?
25      A.    I don't know.

Page 187

1      Q.    Who is responsible for making sure that gets
2  done?
3      A.    I don't know.
4      Q.    Other than you, who is involved in managing
5  any of the Bang entities today?
6      A.    We have service providers that provide us
7  services. So I don't know whose responsibility that
8  would be.
9      Q.    So it is the outside service providers'
10  responsibility, not anybody at the companies?
11      A.    We have outside service providers who
12  provide the services to support the management.
13      Q.    I understood. So, as far as you are
14  concerned, that absolves management of the
15  responsibility for making sure taxes get filed.
16          MR. BERRY:  Objection.
17          You can answer.
18      A.    That's not what I said.
19      Q.    Whether you said it or not, that's my
20  question. Does hiring some outside professional
21  absolve your responsibility for making sure taxes
22  get filed?
23          MR. BERRY:  Objection.
24          You can answer.
25      A.    I don't know.

Page 188

1      Q.    Do you think anybody at management should
2  take responsibility and make sure taxes get filed,
3  even if that outside service provider runs off to the
4  Caribbean for a life of leisure and ease?
5      A.    Can you rephrase that question and maybe
6  leave off the whole Caribbean part?
7      Q.    Why? Why is that your preference?
8          MR. BERRY:  Objection. Don't answer the
9  question. Rephrase the question or move on.
10      Q.    Should anybody at management of Bang have
11  responsibility for making sure taxes ultimately get
12  filed, irrespective of what happens to the outside
13  service provider?
14          MR. BERRY:  Objection.
15          You can answer if you understand the
16  question.
17      A.    I don't know.
18      Q.    Who do you believe should know the answer to
19  that question for the Bang entities?
20      A.    I don't know.
21      Q.    Who is taking responsibility for making sure
22  the outside service provider actually provides services
23  from the outside?
24      A.    I don't understand the question.
25      Q.    Who hired the outside service provider

Page 189

1  that's taking care of the taxes?
2      A.    May I speak with my counsel for a second?
3          (The witness and Mr. Berry left the room.)
4          (There was a recess.)
5      A.    Do you want to read it back?
6          MR. BERRY:  It was:  Who is preparing the
7  taxes?
8      Q.    (By Mr. Cowley)  I said, who is hired?
9      A.    I guess the company is hired, an accounting
10  firm.
11      Q.    Who at the company hired the accounting
12  firm?
13      A.    I signed the engagement letter.
14      Q.    On behalf of what company?
15      A.    The Bang companies.
16      Q.    All of them?
17      A.    Yes.
18      Q.    What's the name?
19      A.    I believe the name is the Santorra Group.
20      Q.    Where is it located?
21      A.    I believe they are in Philadelphia.
22          MR. BERRY:  I think they are in Wilmington,
23  Delaware.
24      Q.    When were they hired?
25      A.    I don't know, exactly. They have been

48 (Pages 186 to 189)

Page 190

1  working on numerous things for the businesses for
2  some time now.
3      Q.   Is this a group that someone filed the
4  expert report?
5      MR. BERRY:  Yes, the expert report, the
6  audit report of the paper trail of $1,250,000.
7  That Santorra Group is the group in question.
8      Q.   The same gentleman whose name I don't
9  remember, is that the person who is doing the tax
10 return analysis, or at least leading it?
11     A.   I don't know what gentleman you're referring
12 to.
13     MR. BERRY:  I don't know whether the
14 Santorra Group -- it is a big accounting firm.  They
15 have a bunch of people.  So I don't know whether he is
16 the tax guy or what.
17     Q.   Are you familiar with James Teague?
18     A.   Yes.
19     Q.   Was Mr. Teague an accountant for the
20 companies at any point in time?
21     A.   He provided accounting services for the
22 companies at a time in the past, yes.
23     Q.   What time did he provide those services?
24     A.   May have been in 2003.  But I know, in 2004,
25 he did.  May have started in 2003.  I'm not sure.

Page 191

1      Q.   What about 2005?
2      A.   No.
3      Q.   Did the Santorra Group provide any kind of
4  services to the companies in 2005?
5      A.   I believe so.
6      Q.   Beginning when in 2005?
7      A.   It would have been most likely late 2005.
8      Q.   Was Mr. Teague your personal accountant for
9  any period of time?
10     A.   No.
11     Q.   Who is your personal accountant?
12     A.   I don't have one currently.
13     Q.   Who was your most recent personal
14 accountant?
15     A.   It was a person who lived in Virginia.  And
16 I can't remember his last name right now.  His first
17 name was Sean.
18     Q.   Where in Virginia did Sean live?
19     A.   He lived in Reston, Virginia.
20     Q.   What period of time was Sean from Reston,
21 Virginia, your personal accountant?
22     A.   2001, 2002, 2003 time frame.
23     Q.   Did you have any personal accountant in
24 2004?
25     A.   I don't believe so.

Page 192

1      Q.   In May 2004, what was your personal net
2  worth?
3      A.   I don't remember.
4      Q.   Higher or lower than it is now?
5      A.   It would have depended how we valued Bang
6  at the time.  Hard for me to answer.  I am not an
7  evaluation expert.
8      Q.   Other than how you would have valued Bang
9  as of May 2004, compared to now, is there any other
10 material difference between your net worth then and
11 your net worth now, that you are aware of?
12     A.   I think it was higher then.
13     Q.   I appreciate that.  I asked a poor question.
14         One thing that's changed since May of 2004
15 and now is, you would have valued the Bang entities
16 higher then than you would value them right now;
17 correct?
18     A.   I don't know if I can say that.
19     Q.   Then why did you say that you think that
20 your personal net worth may have been higher in May
21 of 2004 than now?
22     A.   I'm just going on information from other
23 sources.  I believe you asked me to take out the
24 Bang entities.  That's kind of how I'm answering your
25 question.  If you don't want me to do that, then give

Page 193

1  me further questions.
2      Q.   I am trying to isolate it.  Obviously, you
3  can't talk with specificity.  I am just trying to get
4  as good a handle I can as to what you're thinking you
5  had back then in terms of assets going to your personal
6  net worth that is no longer part of your personal net
7  worth that you already described.  So with that
8  explanation, I'm going to ask it again.
9          Considering your personal net worth as of
10 May 2004, today, disregarding whatever change in value
11 the Bang entities may have, why do you think your
12 personal net worth may have been higher then than now?
13     A.   Based upon information from a business
14 associate in India that's involved with KeyAge and
15 those other companies; I can't remember the names.
16     Q.   Can you please explain what information
17 you're referring to that leads to that conclusion?
18     A.   Status of investments and other assets of
19 those companies.
20     Q.   So, based on what you were told by your
21 business associate in India, you think the KeyAge
22 entities that you have already identified had a
23 higher value then than now?
24     A.   Yes, as well as, I had more liquid assets
25 at the time.

49 (Pages 190 to 193)

**Exhibit L**

# EDWARDS ANGELL PALMER & DODGE LLP

111 Huntington Avenue  Boston, MA  02199   617.239.0100   *fax* 617.227.4420   eapdlaw.com

Elizabeth A. Spinney
617.951.2265
*fax* 888-325-9415
espinney@eapdlaw.com

August 2, 2006

**VIA FACSIMILE**

David A. Felice, Esq.
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801

> Re:    *Vertrue Incorporated v. Alexander B. Meshkin*
>        District of Connecticut, Civil Action No. 05-CV-1809-PCD

Dear Mr. Felice:

As you know, on June 27, 2006, Vertrue Incorporated served a subpoena on Santora CPA Group ("Santora Group") requesting certain documents as part of the above-referenced litigation. These documents were to be produced by July 7, 2006, but Vertrue has not yet received them.

Vertrue has since learned that you have instructed Santora CPA Group not to produce documents in response to its June 27, 2006 subpoena.  I am writing to call your attention to the fact that the documents requested had no relation to Santora Group's role as an expert in this case.  On the contrary, Santora Group was served with the subpoena in its capacity as a fact witness.  Vertrue has reason to believe that Santora Group is in possession of financial records of Alexander Meshkin, Nutzz.com, and its affiliated entities that may have been used, for example, to complete tax returns for these entities, and it is these documents that Vertrue has requested.  The requests were not seeking documents created only in Santora Group's capacity as an expert.

Vertrue now asks that you withdraw your instruction to Santora CPA Group to refrain from producing documents in response to its subpoena.  If you choose not to withdraw this instruction, we will seek a motion to compel with the court and any other appropriate relief.

Please inform us of your intentions in response to this letter.

Sincerely,

*Elizabeth A. Spinney*

Elizabeth A. Spinney

EDWARDS ANGELL PALMER&DODGE LLP

David A. Felice, Esq.
August 2, 2006
Page 2


cc:     Sean J. Bellew, Esq.
        Kevin F. Berry, Esq.
        Michael P. Foley, Jr., Esq.
        Russ A. Brinson, Esq.
        Steven M. Cowley, Esq.
        Mark B. Dubnoff, Esq.

- 2 -

**Exhibit M**

**Spinney, Elizabeth**

| | |
|---|---|
| **From:** | Felice, David A. [DFelice@cozen.com] |
| **Sent:** | Wednesday, August 02, 2006 5:32 PM |
| **To:** | Tilton, Brenda |
| **Cc:** | Spinney, Elizabeth |
| **Subject:** | RE: 8.2 ltr to Felice |

Thanks. Elizabeth, please disregard my voicemail. We will respond through a letter.

---------------------------------------------------

Notice: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service.
---------------------------------------------------

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.
---------------------------------------------------

From: Tilton, Brenda [mailto:BTilton@eapdlaw.com]
Sent: Wednesday, August 02, 2006 5:19 PM
To: Felice, David A.
Cc: Anderson Spinney, Elizabeth
Subject: FW: 8.2 ltr to Felice

David:

Per our discussion, attached please find the letter in pdf format.

Boston, Ft. Lauderdale, Hartford, New York, Providence, Short Hills, Stamford, West Palm Beach, Wilmington, London (Representative office)

Disclosure Under IRS Circular 230: Edwards Angell Palmer & Dodge LLP informs you that any tax advice contained in this communication, including any attachments, was not intended or written to be used, and cannot be used, for the purpose of avoiding federal tax related penalties or promoting, marketing or recommending to another party any transaction or matter addressed herein.

CONFIDENTIALITY NOTICE
This e-mail message from Edwards Angell Palmer & Dodge LLP is intended only for the individual or entity to which it is addressed. This e-mail may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying

1

of this communication is strictly prohibited. If you received this
e-mail by accident, please notify the sender immediately and destroy
this e-mail and all copies of it.

**Exhibit N**

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

VERTRUE INCORPORATED,           :
                                :
          Plaintiff,            :
                                :    M.A. 06-____
     v.                         :
                                :    (Pending in the United States District Court
ALEXANDER B. MESHKIN,           :    for the District of Connecticut – Docket
                                :    No. 3:05-CV-1809 (PCD))
          Defendant.            :

### DEFENDANT'S OBJECTION TO THE ISSUANCE OF A SUBPOENA

Pursuant to Federal Rules of Civil Procedure 26, 34 and 45, defendant Alexander Meshkin ("Meshkin") submits this limited objection to plaintiff Vertrue Incorporated's ("Vertrue") subpoena *duces tecum* issued to Meshkin's testifying expert Santora CPA Group ("SCG"). In support of this objection, Meshkin states as follows:

1.    Vertrue's subpoena is improper because it is: (i) overly broad; (ii) premature given Vertrue's failure to timely respond or produce documents in reply to Meshkin's interrogatories and requests for production; (iii) does not provide for reasonable compensation to be paid to SCG in aid of these expert disclosure efforts; and (iv) premature as a trial date has not been set in this action by the District of Connecticut and any document disclosures by SCG may be accomplished prior to the any deposition or the time identified under Rule 26(a)(2)(C).

### Facts

2.    Vertrue commenced this action by filing a complaint in the Superior Court of Connecticut. (D.I. 1) (Docket items referenced herein refer to the District of Connecticut docket for the above-captioned matter). On November 28, 2005, Meshkin timely removed that action to

the United States District Court for the District of Connecticut (the "Connecticut Action"). (D.I. 1).

3.　　On February 27, 2006, Meshkin filed a fully-briefed motion to dismiss or stay the Connecticut Action. (D.I. 39).

4.　　On April 19, 2006, the parties filed their Rule 26(f) Report with the District of Connecticut identifying June 16, 2006 as the deadline for Verture's expert reports and June 30, 2006 for Meshkin's expert reports. Presently, Vertrue has not served or otherwise identified any expert in the Connecticut Action. On June 7, 2006, Meshkin served Vertrue with the a copy of the SCG report and further identified it as such in court submissions. (D.I. 104, 105).

5.　　On April 27, 2006, the District of Connecticut denied Meshkin's motion to dismiss or stay. (D.I. 52).

6.　　On May 16, 2006, the District of Connecticut issued an electronic order approving and adopting in part the parties' Rule 26(f) Report. (D.I. 69). The District of Connecticut further identified that fact discovery was to be completed by June 30, 2006 and that dispositive motions be filed by July 31, 2006. (D.I. 69). No trial date or pretrial date was identified or set by the District of Connecticut.

### Argument

7.　　Vertrue's document requests are overly broad and should be limited as the subpoena may unintentionally encroach upon materials protected by the work product doctrine. The Third Circuit has held that, at least as to opinion work product, production of such materials should not be ordered. *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 594-96 (3d Cir. 1984); 8 Fed. Prac. Proc. § 2031. Accordingly, the discovery efforts must be appropriately limited.

8.     Vertrue's efforts to obtain SCG's file materials is premature given Vertrue's failure to produce any documents in response to document requests or substantively respond to Meshkin's interrogatories.     This is despite the fact that Vertrue was required to complete discovery by the June 30, 2006 discovery deadline.  Given appropriate responses and production by Vertrue, SCG may be required to review these materials and supplement its report.   To require compliance with the subpoena before Vertrue produces documents and responds to interrogatories would be inefficient and may lead to needless duplication of effort.

9.     Vertrue seeks expert disclosure without first providing SCG with a reasonable fee for its time and expense pursuant to Rule 26(b)(4)(C).[1]  Accordingly, SCG's duty to respond to the subpoena should be stayed until such time as Vertrue has tendered an appropriate fee.

10.     Finally, Vertrue's efforts to seek document production from a testifying expert is premature as Vertrue has not attempted to schedule SCG's deposition nor has the District of Connecticut established a trial date.   At such time as the parties mutually agree to the presentation of SCG for a deposition, any and all responsive, non-privileged documents will be delivered to counsel for Vertrue sufficiently in advance of the deposition or as required by Rule 26(a)(2)(C) if no deposition is scheduled.

\*     \*     \*

---

[1] Meshkin is unaware if the underlying subpoena was accompanied by the requisite appearance and mileage fee. Accordingly, this technical argument is specifically reserved.

Dated:  July 7, 2006

_David A. Felice_
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Ste. 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013

Of Counsel:
Michael P. Foley, Jr. (CT00172)
Michael P. Foley, Jr., P.C.
1120 S. Main Street
P.O. Box 814
Cheshire, CT  06410
Telephone: (203) 250-7212

4

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on July 7, 2006, I caused copies of the foregoing

to be served (not filed) on the following counsel of record, in the manner indicated:

**Via First Class Mail**
William E. Murray, Esquire
Edwards Angell Palmer & Dodge LLP
90 State House Square, 9th Floor
Hartford, CT 06103

**Via First Class Mail**
John G. Stretton, Esquire
Edwards Angell Palmer & Dodge LLP
90 State House Square, 9th Floor
Hartford, CT 06103

**Via First Class Mail**
Steven M. Cowley, Esquire
Edwards Angell Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199-7613

**Via First Class Mail**
Mark B. Dubnoff, Esquire
Edwards Angell Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199-7613

**Via Hand Delivery**
Joseph B. Cicero, Esquire
Edwards Angell Palmer & Dodge LLP
919 N. Market Street, 14th Floor
Wilmington, DE 19801

David A. Felice
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
E-mail: dfelice@cozen.com

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on August 2, 2006 I caused a true and correct copy of the foregoing (with the addition of Exhibit 1, that was not previously served) to be served upon the following parties in the manners indicated:

*Via ECF*
Steven M. Cowley, Esquire
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199

*Via ECF*
William E. Murray, Esquire
Edwards Angell Palmer & Dodge LLP
90 State House Square
Hartford, CT 06103

*Via ECF*
John G. Stretton, Esquire
Edwards Angell Palmer & Dodge LLP
Three Stamford Plaza
301 Tresser Boulevard, 7th Floor
Stamford, CT 06901

*Via ECF*
Mark Dubnoff, Esquire
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199

David A. Felice

David A. Felice (PHV0883)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
E-mail: dfelice@cozen.com

**Exhibit O**

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERTRUE INCORPORATED,<br>Plaintiff, | : |
| | : |
| -vs- | :   Civil No.  3:05cv1809 (PCD) |
| | : |
| ALEXANDER B. MESHKIN,<br>Defendant. | : |

## RULING ON MARYANN AND SHAHRAM MESHKIN'S MOTION FOR A PROTECTIVE ORDER

Non-parties Mary Ann and Shahram Meshkin (the "Meshkins") move, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, for a protective order addressed to the subpoena Plaintiff served on Wachovia Bank NA ("Wachovia") on or about May 2, 2006.[1] The Meshkins seek an order prohibiting the production of and inquiry into any and all documents or information in Wachovia's possession that relate to the Meshkin personal accounts or other financial records. For the reasons stated herein, the Meshkin's Motion for a Protective Order [Doc. No. 96] is **denied**.

## I.    BACKGROUND

There have been a large number of motions and rulings filed in this case and accordingly, it is assumed that the parties are familiar with the procedural history.  For purposes of this motion, the relevant background is as follows:  The Meshkins are the parents of Defendant, Alexander B. Meshkin.  Mary Ann Meshkin is the owner of One Angel Enterprises LLC ("One

---

[1]    The subpoena was initially addressed to Southtrust Bank ("Southtrust").  Southtrust merged with Wachovia in November 2004.  According to the Meshkins, a second version of the subpoena with a corrected address was forwarded to Wachovia a week after the initial subpoena, however, defense counsel never received the corrected second subpoena. (See Non-parties' Mot. Prot. Order 1 n.1 (citing Exhs. A & B to Mot. Prot. Order).)

Angel"). (Pl.'s Opp. 2 (citing Mary Ann Meshkin Dep. 157:6-159:1, Exh. A to Pl.'s Opp.).)

According to Plaintiff, Ms. Meshkin formed One Angel at Defendant's behest. (Id.)

 Melissa Colley is the former office manager of Bang Racing, and in that capacity, had

access to the financial books and records of Bang Racing and affiliated entities. (Id. (citing Tousi

Dep. 251:17-252:8, Exh. B to Pl.'s Opp.).) On March 10, 2004, Ms. Meshkin sent an email to

Ms. Colley requesting that she open an account for One Angel at Southtrust Bank (the "One

Angel Account"), and requested that Defendant be added as a signer on that account. (See Mary

Ann Meshkin and Colley email, Exh. C to Pl.'s Opp.) The Meshkins assert that they "have never

maintained an account with Southtrust." (Non-parties' Mot. Prot. Order 3.) Over the six months

following the establishment of the One Angel Account, Defendant had Ms. Colley move large

sums of money, ranging from $3,000 to $5,000, from Bang Racing's accounts into the One

Angel Account. (See Def.'s emails, Exh. D to Pl.'s Opp.)

 In addition to owning One Angel, Mary Ann Meshkin is also a ten-percent owner of

KeyAge Ventures, a holding company of which Defendant owns the remaining ninety percent.

(See Meshkin Dep. 65:2-12, Exh. E to Pl.'s Opp.) During the period covered by the emails

included in Plaintiff's Exhibit D, Defendant had Ms. Colley move several large sums—$12,000

each time—to KeyAge Ventures. (See Exh. D.)

 Plaintiff took the deposition of John Adalio, former Vice President of Sponsorship for

Bang Racing, on May 15, 2006. The transcript of that deposition, which is not yet available,

contains statements from Adalio asserting that Defendant caused sums of money to be transferred

to Mary Ann Meshkin for several months after the Bang Racing employees, including Adalio,

were no longer being paid. (See Pl.'s Opp. 3.)

2

On April 13, 2006, Plaintiff issued a subpoena to Wachovia requesting the production of

documents related to Defendant, Nutzz.com, LLC, Bang Racing, LLC, and affiliated entities.

(See Subpoena, Request Nos. 2, 3, 8-10, 17, Exh. A to Mot. Prot. Order.)  The subpoena also

seeks documents relating to Mary Ann Meshkin's financial records, specifically requesting:

> Request No. 8: All documents constituting, concerning, or referring to Mary Ann
> Meshkin's financial records, including, but not limited to, income statements, profit and
> loss statements, balance sheets, revenue data, expense data, cash flow reports, results
> from operations, budgets, forecasts, business plans, tax returns, or any other documents
> reflecting financial status, assets, liabilities, income, cash flow, or results from operations,
> budgets, forecasts, business plans, tax returns, or any other documents reflecting financial
> status, assets, liabilities, income, cash flow, or results from operations from January 1,
> 2000 to the present.
>
> Request No. 9: All documents that identify each bank account owned or held directly or
> indirectly, in the name of . . . Mary Ann Meshkin.
>
> Request No. 10: All documents identifying, constituting, or referring to any transaction in
> each bank account referred to in Request No. 9, between January 1, 2000 and the present
> including, but not limited to, all statements of activity in each such account and all other
> documents identifying or referring to each deposit, withdrawal, transfer, or other payment
> (whether electronic or otherwise) into or out of each such account and all documents
> created, obtained, or maintained in connection with each such transaction.

(Id.) Plaintiff asserts that on April 28, 2006, it gave notice to Defendant's counsel that Plaintiff

was going to subpoena certain financial records in the possession of Southtrust Bank, which

documents were due to be returned by May 17, 2006. (See Pl.'s Opp. 3.)  On May 3, 2006,

Wachovia mailed a letter to Mary Ann Meshkin alerting her to the issuance of the subpoena.

(See Exh. B to Mot. Prot. Order.)

## II.    STANDARD OF REVIEW

The scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure is very

broad, "encompassing any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case." Maresco v. Evans Chemetics, Div. of

W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992) (quoting Oppenheimer Fund, Inc. v.

Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)). "Parties may obtain

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

party . . . Relevant information need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In the Second Circuit, "this obviously broad rule is liberally construed." Daval Steel Products,

Div. of Francosteel Corp. v. M/V Fakredine, 951 F. 2d 1357, 1367 (2d Cir. 1991) (citing

Oppenheimer, 427 U.S. at 351); see also Lamoureux v. Genesis Pharm. Servs., 226 F.R.D. 154,

158 (D. Conn 2004). The Supreme Court has held that "discovery is not limited to issues raised

by the pleadings, for discovery itself is designed to help define and clarify the issues," nor is it

"limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation

that are not related to the merits." Oppenheimer, 427 U.S. at 351; but see In re Fontaine, 402 F.

Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so

liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which

does not presently appear germane on the theory that it might conceivably become so.'") (citation

omitted).

    The scope of discovery is not without bounds, and limitations are imposed where the

discovery is "unreasonably cumulative or duplicative," overly "burdensome . . . [or] expensive"

or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ.

P. 26(b)(2); see also Oppenheimer, 427 U.S. at 351-52 (holding that "discovery, like all matters

of procedure, has ultimate and necessary boundaries") (citations omitted). A party seeking

discovery has the initial burden such that "some threshold showing of relevance must be made

before parties are required to open wide the doors of discovery and to produce a variety of

information which does not reasonably bear upon the issues in the case." Rubin v. Hirschfeld,

No. 3:00cv1657, 2002 U.S. Dist. LEXIS 26798, at *3, 8 (D. Conn. Feb. 12, 2002) (citations

omitted).

     A court may enter a protective order pursuant to Rule 26(c) "which justice requires to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Fed. R. Civ. P. 26(c). When, however, the requested discovery is relevant to the

action, a party seeking a protective order bears the burden of showing "good cause." Dove v.

Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992); Fed. R. Civ. P. 26(c).

**III.    DISCUSSION**

     Plaintiff asserts that it served the subpoena in an attempt to establish Defendant's use of

the Meshkin's accounts to move, hide, and otherwise process asserts belonging to Defendant, any

of Defendant's corporate entities, and affiliates, and/or Plaintiff for the purposes of (1)

establishing Defendant's complicity in any and all of the wrongful acts described in the

Complaint by establishing, among other things, fraudulent intent, and (2) preventing the

continuing dilution and concealment of assets within Defendant's custody or control in order to

preserve Plaintiff's recovery. (See Pl.'s Opp. 1.)

     The evidence submitted by Plaintiff indicates that Defendant directed his mother, Mary

Ann Meshkin, to form an LLC, One Angel, and subsequently transferred some amount of funds

to that account. The evidence also shows that Defendant retained at least some degree of control

over the funds, as he was named as an additional signer on the account. Moreover, according to

5

Plaintiff, the testimony of Mr. Adalio will establish that Defendant continued to direct the

transfer of funds to the One Angel Account after Bang Racing stopped paying employee salaries.

Plaintiff is attempting to subpoena the bank records to show that Defendant used his family's

bank accounts to make extraordinary transfers from accounts owned by his business entities and

thus used his family to "process assets." (Pl.'s Opp. 4.) Such a showing would help Plaintiff

establish Defendant's fraudulent intent.

In contrast to Plaintiff's detailed showing of relevance, the Meshkins do not establish

good cause for the issuance of a protective order. The Meshkins assert only that the documents

at issue are "in no manner relevant" and that the requests are solely for the purpose of "annoying,

harassing, and embarrassing" the Meshkins. Without a further showing of harm, and in light of

the relevance of the subpoenaed information to the instant action, this Court cannot find good

cause for the issuance of the protective order.

## IV.    CONCLUSION

For the foregoing reasons, the Meshkin's Motion for a Protective Order [Doc. No. 96] is

**denied**.

SO ORDERED.

Dated at New Haven, Connecticut, July  27 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut

6

Exhibit P

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| VERTRUE INCORPORATED, | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Civil No.  3:05cv1809 (PCD) |
| | : | |
| ALEXANDER B. MESHKIN, | : | |
| Defendant. | : | |

## RULING ON DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Defendant moves, pursuant to Federal Rule of Civil Procedure 26(c), for an order protecting him from further disclosure of information related to his individual personal assets and net worth, and requiring Plaintiff to return to Defendant all information produced to Plaintiff by Defendant pertaining to his individual assets and net worth.  For the reasons stated herein, Defendant's Motion for a Protective Order [Doc. No. 105] is **denied**.

## I.     BACKGROUND

The facts relevant to this action were discussed at length in this Court's Ruling on Defendant's Motion to Dismiss, see Vertrue Inc. v. Meshkin, No. 3:05cv1809 (PCD), 2006 U.S. Dist. LEXIS 24844, at *1-13 (D. Conn. Apr. 27, 2006), and accordingly, only those facts relevant to this motion will be discussed here.

The instant action is the third of five separate proceedings.[1]  Plaintiff, in this proceeding,

---

[1]     A lawsuit filed in the Chancery Court in and for New Castle County, Delaware (the "Delaware Lawsuit") was the first action.  Subsequently, on August 4, 2005, Nutzz.com initiated an arbitration proceeding pursuant to Section 13 of the Agreement between Memberworks Incorporated (Vertrue's predecessor company) and Nutzz.com.  The instant action was initiated in this Court on November 28, 2005, with the filing of a Notice of Removal pursuant to 28 U.S.C. § 1441(b).  The fourth action is a Bill of Discovery brought pursuant to Practice Book § 13-9 (Docket No. FST-CV-05-400688-S).  The fifth and final action, filed in Delaware Chancery Court, is a petition to appoint a receiver to oversee Nutzz.com and Bang Racing, Vertrue Inc. v. Nutzz.com, LLC and Bang Racing, LLC, C.A. No. 1719-N.

asserts claims against Defendant in his personal capacity. Plaintiff asserts, *inter alia*, that

Defendant converted a $1.25 million advance (the "Advance") made by Plaintiff to Nutzz.com

pursuant to the terms of Plaintiff's Agreement with Nutzz.com (the "Agreement"). Plaintiff also

alleges that it relied upon representations by Defendant concerning his personal finances when it

made the decision to enter into the Agreement. In order to substantiate and prove these claims,

Plaintiff has requested information from Defendant pertaining to his personal finances.

## II.    STANDARD OF REVIEW

The scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure is very

broad, "encompassing any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case." Maresco v. Evans Chemetics, Div. of

W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992) (quoting Oppenheimer Fund, Inc. v.

Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)). "Parties may obtain

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

party . . . Relevant information need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In the Second Circuit, "this obviously broad rule is liberally construed." Daval Steel Products,

Div. of Francosteel Corp. v. M/V Fakredine, 951 F. 2d 1357, 1367 (2d Cir. 1991) (citing

Oppenheimer, 427 U.S. at 351); see also Lamoureux v. Genesis Pharm. Servs., 226 F.R.D. 154,

158 (D. Conn 2004).

The scope of discovery is not without bounds, however, and limitations are imposed

where the discovery is "unreasonably cumulative or duplicative," overly "burdensome . . . [or]

expensive," or "the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(2); see also Oppenheimer, 427 U.S. at 351-52 (holding that "discovery, like

all matters of procedure, has ultimate and necessary boundaries") (citations omitted). A party

seeking discovery has the initial burden such that "some threshold showing of relevance must be

made before parties are required to open wide the doors of discovery and to produce a variety of

information which does not reasonably bear upon the issues in the case." Rubin v. Hirschfeld,

No. 3:00cv1657, 2002 U.S. Dist. LEXIS 26798, at *3, 8 (D. Conn. Feb. 12, 2002) (citations

omitted).

A court may enter a protective order pursuant to Rule 26(c) "which justice requires to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Fed. R. Civ. P. 26(c). When, however, the requested discovery is relevant to the

action, a party seeking a protective order bears the burden of showing "good cause" for its

issuance. Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992); Fed. R. Civ. P. 26(c).

## III.    DISCUSSION

Defendant asserts that the deposition testimony of two Vertrue employees—i.e., James

Duffy, the Executive Vice President, and Carl Peru, the Vice-President of Product Marketing

during the relevant time period—raises questions about the viability of Plaintiff's claims that (1)

Defendant misrepresented his personal finances as a means to induce Plaintiff to enter into the

Agreement and (2) Plaintiff relied on Defendant's misrepresentations in entering into the

Agreement. Moreover, Defendant contends that an expert report demonstrates that the $1.25

million advance paid by Plaintiff to Nutzz.com went toward the payment of operating expenses

and did not go to Defendant personally. (See Def.'s Br. Supp. Mot. Prot. Order 10.)

Accordingly, Defendant argues that because the factual basis for Plaintiff's allegations of

3

misrepresentation have been "completely erode[d]," Plaintiff "can no longer establish the

relevance of discovery pertaining to [Defendant's] Personal Finances" and "this Court should not

continue to require [Defendant] to disclose information pertaining to his Personal Finances based

upon accusations, which again have proved to be without merit." (Id. at 7, 10.)

     Plaintiff's Complaint is replete with claims that (1) Defendant made misrepresentations to

Plaintiff's employees, (2) Defendant made those misrepresentations in an effort to induce

Plaintiff to enter into an agreement with one of his corporate entities, (3) Plaintiff would never

have entered into such an agreement had it been aware of the "true state" of Defendant's personal

finances, (4) Defendant's misrepresentations induced Plaintiff to pay Defendant's corporate

entity an advance of $1.25 million, which Defendant converted, and (5) both Bang Racing and

Nutzz.com, the companies controlled by Defendant and with which Plaintiff entered into the

Agreement, are Defendant's alter-egos. (See Compl. ¶¶ 1, 6, 12, 23, 26, 27-28, 32, 44, 47, 56.)

In order to substantiate those claims, Plaintiff included, in its First Requests for Production,

Request Number 18, which requests:

> All documents constituting, concerning or referring to [Meshkin's] financial records,
> including, but not limited to, income statements, profit and loss statements, balance
> sheets, revenue data, expense data, cash flow reports, results from operations,
> budgets, forecasts, business plans, tax returns, or any other documents reflecting
> financial status, assets, liabilities, income, cash flow, or results from operations from
> January 1, 2000 to the present.

(See Pl.'s First Requests for Prod., Ex. A at 8.) This Court, in response to motions to compel and

motions seeking sanctions filed by Plaintiff, has ordered Defendant to produce documents

responsive to Request Number 18 three times. (See May 10, 2006 Order at 10, Doc. No. 62; June

12, 2006 Order, Doc. No. 89; June 19, 2006 Order at 1-2, Doc. No. 93.) Despite these three

4

orders, Defendant continues to refuse to produce all of his financial information and seeks a

protective order concerning that information.

Defendant's personal financial information is relevant to Plaintiff's claims of fraud,

misrepresentation, conversion, and alter-ego liability. This Court has previously found that this

information is relevant and discoverable,[2] and Defendant cannot avoid that finding at this time

based on his self-serving assertions regarding the sufficiency of Plaintiff's evidence. At this

stage in the litigation, with discovery not yet completed,[3] Defendant's motion regarding the

sufficiency of Plaintiff's evidence is premature. Plaintiff is not obligated to prove its allegations

in order to obtain discovery with regard to information relevant to those allegations; it is only

required to show, as it has, that its requests are relevant to the claims at issue in this litigation.

Indeed, it is only through the discovery process that Plaintiff will be able to obtain information

necessary to prove its allegations. Defendant cites no authority, and this Court can find none, in

support of its assertion that Plaintiff must produce evidence in support of its claims in order to

obtain further discovery. Defendant cites Harris v. Wells, 137 F.R.D. 206, 209 (D. Conn. 1991),

for the proposition that discovery requests directed at personal financial information will be

limited to those accounts specifically alleged to be implicated in the cause of action. (See Def.'s

Reply 7.) Plaintiff has shown that Defendant's financial information is relevant to and

"implicated in" the causes of action asserted in this case.

---

[2]     In the May 10, 2006 Order, this Court found that Defendant's personal financial information is
"relevant to, or could lead to evidence relevant to, claims at issue in this litigation." (May 10, 2006
Order at 9-10.) Accordingly, Defendant was ordered to produce documents responsive to
Plaintiff's Request Number 18, supra.

[3]     Although the discovery deadline, set for June 30, 2006, has already passed, discovery is still
proceeding due to the large number of discovery motions filed in this case.

5

Defendant has also failed to show "good cause" for the issuance of a protective order with respect to his personal financial information. See Dove, 963 F.2d at 19; Fed. R. Civ. P. 26(c). As this Court has found that Defendant's personal financial information is relevant to the causes of action at issue in this lawsuit, Defendant's bald, unsupported assertions that discovery concerning his personal finances will expose him to "annoyance, oppression and undue burden" are not sufficient to demonstrate a need for the issuance of a protective order. (See Def.'s Br. Supp. Mot. Prot. Order 1, 9, 11.)

Defendant cannot avoid discovery with respect to his personal financial information by filing a summary judgment motion under the guise of a motion for a protective order. The Court will not weigh evidence and/or assess the viability of Plaintiff's claims at this stage, but will only determine whether the information at issue is relevant to the claims in this suit. Moreover, if Defendant is seeking reconsideration of this Court's Orders requiring Defendant to disclose his personal financial information, he has failed to show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," as is required on a motion for reconsideration. Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for a Protective Order [Doc. No. 105] is **denied**.

SO ORDERED.

Dated at New Haven, Connecticut, August _4_, 2006.

6

_____/s/_____
Peter C. Dorsey, U.S. District Judge
District of Connecticut

7