IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERTRUE INCORPORATED,<br><br>                Plaintiff,<br><br>v.<br><br>ALEXANDER B. MESHKIN,<br><br>                Defendant. | M.A. 06-00155 (KAJ)<br><br>(Pending in the United States District Court for the District of Connecticut—Docket No. 05-CV-1809-PCD) |

**PLAINTIFF VERTRUE INCORPORATED'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO ENFORCE A SUBPOENA AND IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH**

On August 15, 2006, Plaintiff Vertrue Incorporated ("Vertrue") initiated this action and simultaneously filed a motion to enforce a subpoena, along with its supporting memorandum (the "Opening Memorandum"). On August 29, 2006, Defendant Alexander B. Meshkin ("Meshkin") filed Defendant's Motion to Quash and Answering Brief in Support of Objection to the Issuance of a Subpoena (the "Answering Memorandum"). This is Vertrue's reply memorandum in further support of its motion to enforce the subpoena of the Santora CPA Group (the "Subpoena") and in opposition to Meshkin's motion to quash the Subpoena.

**ARGUMENT**

In its Answering Memorandum, Meshkin objects to the Subpoena and argues that the Subpoena should be quashed for three reasons – (1) the Subpoena is ineffective because it was not accompanied by an appearance fee, (2) the Subpoena is untimely, and (3) Vertrue's motion to enforce was never served on Santora CPA Group (the "Santora

Group"). For the reasons set forth below, the Subpoena should not be quashed and the Santora Group should be ordered to comply with the Subpoena.

## I.  THE SUBPOENA IS NOT PROCEDURALLY FLAWED

### A.  Only A Subpoena That Seeks Deposition Testimony Requires Appearance and Mileage Fees

The Subpoena does not seek the deposition testimony of the Santora Group, thus no statutory witness or mileage fees are required. The Subpoena merely requests that the Santora Group copy certain documents and produce them to Vertrue's counsel. Thus, to comply with the Subpoena, the Santora Group does not need to *appear* at or *travel* to Vertrue's counsel's office – it only needs to copy documents and ship them to counsel for Vertrue's Wilmington, Delaware office, which is approximately eight (8) miles from the Santora Group, located in Newark, Delaware.

Meshkin misstates the requirements of 28 U.S.C. § 1821 by arguing that "[p]ursuant to 28 U.S.C. § 1821, Vertrue was required to provide [the Santora Group] with a $40 appearance fee and mileage for delivery of documents to Vertrue's Wilmington office." (Ans. Mem. at 4, D.I. 5). Nowhere in 28 U.S.C. § 1821 does it require an appearance or mileage fee for the production of documents. Instead, 28 U.S.C. § 1821 provides, in relevant part:

> [A] witness in *attendance* at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the Unites States, shall be paid the fees and allowances provided by this section.
>
> \*\*\*
> A witness shall be paid an *attendance fee* of $40 for each day's *attendance*. A witness shall also be paid the *attendance fee* for the time necessarily occupied in going to an returning from the place of *attendance* at the beginning

> and end of such *attendance* or at any time during such *attendance*.
>
> \*\*\*
>
> A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed … *shall be paid to each witness who travels by privately owned vehicle*.

28 U.S.C. § 1821(a)-(c) (emphasis added). Neither 28 U.S.C. § 1821, nor Rule 45 require appearance or mileage fees for simply producing documents and not appearing for a deposition, hearing or trial. Because Vertrue simply requested that the Santora Group copy and produce the documents responsive to the Schedule A attached to the Subpoena, and not to appear for a deposition, hearing or trial, no appearance fee or mileage fee is necessary or required. Thus, the Subpoena is not procedurally flawed and therefore is valid.

    **B.**    **The Subpoena Was Issued In a Timely Manner Based On Vertrue's Discovery That The Santora Group Retains Meshkin's Personal Financial Records**

Meshkin argues that the Subpoena was not issued in a timely manner because the fact discovery cut-off in the underlying District of Connecticut action was June 30, 2006. (Ans. Mem. at 4, D.I. 5). However, the Court merely ordered that all discovery was to be completed by June 30, 2006. The Court did not indicate whether that means that all written discovery requests should be served by June 30 or whether all written discovery requests need to be responded to by June 30. That issue has never been presented to the District of Connecticut.

Meshkin fails to mention that the reason Vertrue sought a subpoena of the Santora Group so close to the June 30, 2006 date was precipitated by Meshkin's own

inappropriate conduct and delay tactics. Vertrue first sought Meshkin and his companies' financial records from Meshkin directly, but was informed by Meshkin that he did not have custody of such records. Meshkin even submitted a certification to the District of Connecticut that he had produced all of the responsive documents that he had access to. Meanwhile, Meshkin simply gave his financial documents to his counsel, who in turn provided them to the Santora Group to render an expert report." In reality, Meshkin has had custody and control of those records all along and could have, at any time, requested the return of those documents so that he could produce them to Vertrue. As stated in the Opening Memorandum, the District of Connecticut has repeatedly found that the financial records sought by Vertrue are relevant to the dispute. (*See* Op. Mem. at 14-15, D.I. 1). Moreover, the District of Connecticut has ordered Meshkin to produce such documents, yet Meshkin has failed to do so, in direct violation of those orders.

As a result of Meshkin's delay tactics, it was not until Meshkin's June 16, 2006 deposition that Vertrue discovered that the requested financial records were being held by the Santora Group. (Ex. "K" to the Opening Memorandum). Accordingly, on June 27, 2006, Vertrue issued the Subpoena seeking such financial records.

Finally, despite the fact that the Subpoena was issued in a timely manner, any challenge to the relevancy or the timeliness of the documents produced pursuant to the validly issued Subpoena can be presented to the District of Connecticut by way of a motion in limine or motion to strike and should not be considered by this Court in determining whether to compel the Santora Group to produce documents in response to the Subpoena.

### C. The Santora Group Is Being Advised By, And It Appears That It Is Being Represented By, Meshkin's Counsel

The conduct by both Cozen O' Connor and by the Santora Group, on a number of occasions, has led counsel for Vertrue to believe that Cozen O' Connor is representing the Santora Group. First, during a deposition of William A. Santora, an accountant with the Santora Group, which occurred pursuant to a related arbitration proceeding, Cozen O' Connor instructed Mr. Santora not to answer questions concerning anything other than his purported role as an expert witness and Mr. Santora complied with such advice. (Transcript of William A. Santora at 8, the relevant excerpts are attached hereto as Ex. "A") Second, according to a telephone conversation that counsel for Vertrue had with a Santora Group employee on or about August 1, 2006, the Santora Group had intended to comply with the Subpoena until Cozen O' Connor instructed it not to do so. During that conversation, the Santora Group employee informed counsel for Vertrue that the Santora Group had compiled the requested documents and was ready to send them to Vertrue, when it was informed not to do so by Cozen O' Connor. When counsel for Vertrue asked whether the Santora Group was represented by counsel, the Santora Group employee stated that it was represented by Cozen O' Connor.

The Santora Group has never objected to the Subpoena, however, the Santora Group did not hesitate to obey Cozen O' Connor's instruction not to produce documents in response to the Subpoena. Moreover, Cozen O' Connor purports to have filed its Answering Memorandum on behalf of Meshkin alone, but makes the argument that the Subpoena is overly broad and unduly burdensome, which is an argument that only the Santora Group can make. Cozen O' Connor is either representing the Santora Group, as Vertrue believed, or Meshkin lacks standing to make the argument that the Subpoena is

overly broad and that it would be unduly burdensome for the Santora Group to comply with the Subpoena.

Based on such conduct, and the Santora Group's own statement, Vertrue has acted in good faith in its belief that the Santora Group was being represented by Cozen O' Connor. Consequently, Vertrue served its motion to enforce solely on Cozen O' Connor.

It was not until the filing of Meshkin's Answering Memorandum that counsel for Vertrue was implicitly informed that the Santora Group was not being represented by Meshkin's counsel. Meshkin's counsel stated in its Answering Memorandum that Vertrue failed to serve its motion to enforce on the Santora Group and Meshkin's counsel did not supply a copy of such motion to the Santora Group. (Ans. Mem. at 4, D.I. 5) Accordingly, upon learning that Meshkin's counsel was not representing the Santora Group and had not provided the Santora Group with a copy of the motion to enforce, Vertrue's counsel promptly forwarded copies of the motion to enforce, the Opening Memorandum, and Meshkin's Answering Memorandum to the Santora Group. In addition, Vertrue's counsel, in its August 30, 2006 cover letter to the Santora Group, requested that the Santora Group promptly inform counsel for Vertrue if it intends to oppose Vertrue's motion to enforce the Subpoena. (Letter from J. Cicero to K. Skinner dated August 30, 2006, attached hereto as Ex. "B"). As of today, Vertrue has received no response to the August 30, 2006 letter.

## II. THE DOCUMENTS SOUGHT PURSUANT TO THE SUBPOENA ARE NARROWLY TAILORED TO THE DISPUTE AT ISSUE AND DO NOT RELATE TO THE SANTORA GROUP'S ROLE AS AN EXPERT WITNESS

As set forth in the Opening Memorandum, the documents sought pursuant to the Subpoena are relevant to the dispute in the District of Connecticut. (*See* Op. Mem. at 8-15, D.I. 1). The Subpoena does not seek "opinion work product" as argued by Meshkin, but seeks Meshkin's underlying financial documents, which are not subject to any applicable privilege or protection. Accordingly, the document requests set forth in the Subpoena are neither overly broad nor unduly burdensome for the Santora Group to produce. In fact, until instructed otherwise, the Santora Group intended to comply with the Subpoena and produce such documents on or before July 7, 2006. It is Vertrue's understanding that the Santora Group had already collected such documents and was ready to send them to Vertrue at the time of the instruction by Cozen O' Connor not to do so.

## III. MESHKIN'S OBJECTION TO THE SUBPOENA SHOULD BE DENIED WAS NOT TIMELY FILED AND MESHKIN LACKS STANDING TO OBJECT TO THE SUBPOENA

Meshkin's objection to the Subpoena is simply too late. Moreover, Meshkin lacks standing to object to the Subpoena. As stated in the Opening Memorandum, the Federal Rules of Civil Procedure provide that a requesting party may not be permitted to document production if an objection is made by a person commanded to produce documents, except pursuant to a court order. (*See* Op. Mem. at 15 (citing Fed. R. Civ. P. 45(c)(2))). Thus, any objection to the Subpoena must be made by the Santora Group, – the "person commanded to produce documents" pursuant to the Subpoena – not Meshkin. Such an objection must be served "within 14 days of the service of the subpoena or

before the time specified for compliance if such time is less than 14 days after service[.]" Fed. R. Civ. P. 45(c) (2)(B). Approximately two months have passed since the deadline for the Santora Group's response to the Subpoena, thus Meshkin's objection is not timely.

Meshkin's statement that "an administrative error" caused his failure to serve his objection on Vertrue's counsel is disingenuous. Based on the facts articulated in the Opening Memorandum, Meshkin has presented no evidence that he drafted an objection prior to the July 7 objection deadline. Counsel for Vertrue has asked Meshkin's counsel to explain the details surrounding the purported "administrative error" concerning the objection, but Meshkin's counsel refuses to do so.

## CONCLUSION

For the reasons stated above, and in the Opening Memorandum, Vertrue respectfully requests that (i) the Santora Group be ordered to respond to the Subpoena served upon it and produce all documents in response to Request Nos. 1-17 of the Subpoena immediately, or within three business days of the date of the order, (ii) Meshkin's motion to quash the Subpoena be denied, (iii) that this Court issue an order finding the Santora Group in contempt for failing to obey the Subpoena, and (iv) this Court issue an order finding Meshkin in contempt for improperly instructing the Santora Group (by way of its counsel) not to obey the Subpoena.

Given Meshkin's inappropriate conduct and delay tactics in the District of Connecticut, as well as the Santora Group's noncompliance with the Subpoena, Vertrue respectfully requests that any production of documents ordered by the Court pursuant to

the Subpoena include those documents which were in the custody of the Santora Group at the time the Subpoena was served.

DATED: September 6, 2006

        **EDWARDS ANGELL PALMER & DODGE LLP**

        */s/ Joseph B. Cicero*
Denise Seastone Kraft (DE Bar No. 2778)
Joseph B. Cicero (DE Bar No. 4388)
919 North Market Street, 15th Floor
Wilmington, DE 19801
302.777.7770
302.777.7263 (fax)

*Of Counsel*

Steven M. Cowley, Esq.
Mark B. Dubnoff, Esq.
**EDWARDS ANGELL PALMER & DODGE LLP**
111 Huntington Ave.
Boston, MA 02199
617.239.0100
617.227.4420 (fax)

*Attorneys for Plaintiff Vertrue Incorporated*

# Exhibit A

Santora

1

1    AMERICAN ARBITRATION ASSOCIATION

2              - - -

3   NUTZZ.COM, LLC            :
        Claimant and          :
4       Counter-Respondent:
            v                 :CASE NO.
5                             :12 180 Y 00453 05
    VERTRUE INCORPORATED      :
6       Respondent and        :
        Counter-Claimant      :
7   -----------------------
    VERTRUE INCORPORATED      :
8       Counter-Claimant      :
            v                 :
9   BANG RACING, LLC          :
        Counter-Respondent:
10             - - -
              AUGUST 15, 2006
11             - - -

12          Oral deposition in the

13   above-captioned matter, held at the law

14   offices of Cozen and O'Connor, 1900

15   Market Street, 5th Floor, Philadelphia,

16   Pennsylvania, beginning at approximately

17   10:05 a.m., before Nancy D. Ronayne, a

18   Professional Court Reporter and Notary

19   Public for the Commonwealth of

20   Pennsylvania.

21             - - -

22        ESQUIRE DEPOSITION SERVICES
                4 Penn Center
23   1600 John F. Kennedy Boulevard-12th Floor
          Philadelphia, Pennsylvania 19103
24              (215) 988-9191

2

1

2
    APPEARANCES:
3

```
                         Santora
 4
         COZEN and O'CONNOR
 5       BY:  KEVIN BERRY, ESQUIRE
         1900 Market Street
 6       5th Floor
         Philadelphia, Pennsylvania 19103
 7       (215) 665-2000
         Representing NUTZZ.COM, LLC
 8

 9
         EDWARDS ANGELL PALMER & DODGE, LLP
10       BY:  STEVEN M. COWLEY, ESQUIRE
         111 Huntington Avenue
11       Boston, MA 02199
         (617) 951-2283
12       Representing Vertrue Incorporated

13

14

15  ALSO PRESENT :   HEATH N. KAHRS, CPA
                         -  -  -
16

17

18

19

20

21

22

23

24
                                            3


 1                    -  -  -
                   I N D E X
 2                    -  -  -

 3
    WITNESS:
 4      WILLIAM A. SANTORA

 5                                    PAGE
         By Mr. Cowley                 5
 6       By Mr. Berry                 56

 7                    -  -  -
                   E X H I B I T S
 8                    -  -  -

 9  NO.           DESCRIPTION       PAGE
```

Santora

21  there?
22      A.    23 years.
23      Q.    Are you a certified public
24  accountant?

WILLIAM A. SANTORA                                6

1       A.    Yes.
2       Q.    Since when?
3       A.    1976.
4       Q.    Were you engaged to work as
5   an expert for Nutzz.com in its
6   Arbitration proceeding against Vertrue
7   Incorporated?
8       A.    Yes.
9       Q.    When were you first
10  contacted about that possible engagement?
11      A.    Approximately, April of
12  2006.
13      Q.    By whom were you contacted
14  regarding that possible engagement?
15      A.    David Felice.
16      Q.    Prior to Mr. Felice's
17  contacting you in approximately April
18  2006 regarding a possible engagement for
19  Nutzz.com in this proceeding, had you
20  ever provided any services to Nutzz.com
21  or any affiliated company?
22      A.    No.
23      Q.    Had you worked with Cozen
24  and O'Connor before?

WILLIAM A. SANTORA                                7

Santora

1    A.    It's possible in a tax
2  pension matter but not in a litigation
3  matter of any sort.
4    Q.    Had you ever worked as a
5  testifying expert in litigation
6  proceedings previously?
7    A.    Me personally?
8    Q.    Yes.
9    A.    Yes.
10    Q.    In any instance prior to
11  this have you provided testimony as an
12  expert auditor regarding the tracing of
13  funds?
14    A.    No.
15    Q.    The accounting service of
16  tracing funds from records, is that
17  referred to as forensic accounting?
18    A.    Yes.
19    Q.    Have you ever undertaken any
20  other engagements as a forensic
21  accountant prior to this one?
22    A.    Yes.
23    Q.    But not as a testifying
24  expert?

WILLIAM A. SANTORA                8

1    A.    It would have included
2  depositions, yes. All the cases got
3  settled, never went to court testimony.
4    Q.    Has the Santora CPA Group
5  been engaged to provide services --

```
                    Santora
 6         (A brief interruption
 7     occurred.)
 8  BY MR. COWLEY:
 9     Q.   Has the Santora CPA Group
10  been engaged to provide any other
11  services than your expert testimony in
12  this Arbitration proceeding for
13  Nutzz.com?
14     A.   Yes.  We've been asked to
15  prepare tax returns.
16     Q.   When was your firm asked to
17  do that?
18         MR. BERRY:  I'm going to
19     object at this point and instruct
20     the witness not to answer.  He's
21     here as an expert with respect to
22     his report in the Arbitration,
23     he's not here as a fact witness
24     and this is not a discovery
           WILLIAM A. SANTORA          9

 1     deposition.  This is testimony
 2     being offered in the Arbitration
 3     so instruct the witness not to
 4     answer.  You can ask him anything
 5     you like about his report but
 6     we're not here to conduct
 7     discovery.
 8         MR. COWLEY:  Well that would
 9     be up to Mr. Byrne.  Obviously any
10     bias or any other ruling he may
```

```
                    Santora
11      have for the company, any reason
12      why he may want the company to win
13      in order to get other services
14      paid for or locked up for future
15      services paid by his group goes to
16      his credibility and bias.  So I'm
17      happy to pursue the issue with Mr.
18      Byrne but we're going to have to
19      do that if you stand by your
20      instruction.
21           MR. BERRY:  Then pursue it
22      with Mr. Byrne.  Let's take a
23      break.
24           (A discussion off the record
            WILLIAM A. SANTORA              10


1       occurred.)
2  BY MR. COWLEY:
3       Q.   Mr. Santora, when were you
4  engaged to provide services as an expert
5  for Nutzz.com in this Arbitration
6  proceeding?
7       A.   Approximately, April 2006.
8       Q.   Shortly after you were first
9  contacted?
10      A.   I believe so.  I believe we
11 sent a formal written engagement letter,
12 I don't know what the exact date was.
13      Q.   Prior to starting work on
14 your report for this matter, did you make
15 any proposal to either Cozen and O'Connor
16 or Nutzz.com as to the scope of your
```

```
                        Santora

 3

 4           I HEREBY CERTIFY that the

 5   witness was duly sworn by me and that the

 6   deposition is a true record of the

 7   testimony given by the witness.

 8

 9

10
         Nancy D. Ronayne a
11       Professional Court Reporter and
         Notary Public
12       Dated:  August 16, 2006

13

14

15

16

17

18           (The foregoing certification

19   of this transcript does not apply to any

20   reproduction of the same by any means,

21   unless under the direct control and/or

22   supervision of the certifying reporter.)

23

24
                                          60
```

```
 1               LAWYER'S NOTES

 2   PAGE    LINE

 3   ____    ____    _____

 4   ____    ____    _____

 5   ____    ____    _____

 6   ____    ____    _____

 7   ____    ____    _____
```

# Exhibit B

# EDWARDS ANGELL PALMER & DODGE LLP

919 North Market Street   Wilmington, DE   19801   302.777.7770   *fax* 302.777.7263   eapdlaw.com

JOSEPH B. CICERO
302.425.7115
*fax* 888.325.9094
jcicero@eapdlaw.com

August 30, 2006

**<u>By Hand</u>**
Ms. Kathie Skinner
Santora CPA Group
Christiana Executive Campus
220 Continental Drive, Suite 112
Newark, DE 19713-4309

Re:   *Vertrue Incorporated v. Alexander B. Meshkin*
      M.A. 06-115-KAJ

Dear Ms. Skinner:

Enclosed please find copies of the following documents filed in the United States District Court for the District of Delaware concerning the enforcement of the Subpoena that we served upon Santora CPA Group on June 28, 2006 (the "Subpoena"):

(1)   Plaintiff Vertrue Incorporated's Motion to Enforce a Subpoena;

(2)   Plaintiff Vertrue Incorporated's Memorandum in Support of Its Motion to Enforce a Subpoena; and

(3)   Defendant's Motion to Quash and Answering Memorandum in Support of Objection to the Issuance of a Subpoena.

Please promptly inform us whether you intend to oppose our motion to enforce the Subpoena.

Very truly yours,

JOSEPH B. CICERO

JBC:cg
Enclosures
    cc: Sean J. Bellew, Esquire (*via hand*)

# CERTIFICATE OF SERVICE

I, Joseph B. Cicero, hereby certify that on September 6, 2006, a true and correct copy of the attached **PLAINTIFF VERTRUE INCORPORATED'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO ENFORCE A SUBPOENA AND IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH** was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Sean J. Bellew, Esquire
David A. Felice, Esquire
COZEN O'CONNOR
1201 North Market Street, Suite 1400
Wilmington, DE 19801

I hereby certify that on September 6, 2006, I sent a copy of the documents via Federal Express to the following non-registered participants:

Santora CPA Group
Christiana Executive Campus
220 Continental Drive, Suite 112
Newark, DE 19713-4309
Attn: Ms. Kathie Skinner

**EDWARDS ANGELL PALMER & DODGE LLP**

 */s/ Joseph B. Cicero*
Denise Seastone Kraft (DE I.D. 2778)
Joseph B. Cicero (DE I.D. 4388)
919 N. Market Street, 15th Floor
Wilmington, DE 19801
302.777.7770
302.777.7263 (fax)
dkraft@eapdlaw.com
jcicero@eapdlaw.com